# GIBBS LAW GROUP
### ——————— L L P ———————

January 29, 2021

Thomson Reuters America Corporation
c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

      **Re:**    **Thomson Reuters Litigation**

To the attention of Thomson Reuters America Corporation:

Please find enclosed the complaint and associated documents in *Brooks v. Thomson Reuters Corporation*. We are serving the complaint on Thomson Reuters America Corporation as the "general manager in this state" for Thomson Reuters Corporation. See Cal. Corp. Code § 2110; *Yamaha Motor Co. Ltd. v. Super. Ct.*, 174 Cal. App. 4th 264, 274-75 (2009).

Yours truly,

Jeff Kosbie

COPY

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

DEC 03 2020

CLERK OF THE SUPERIOR COURT
By _____

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
THOMSON REUTERS CORPORATION

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CAT BROOKS and RASHEED SHABAZZ individually and on behalf
of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, California 94612 | CASE NUMBER: *(Número del Caso):*<br>Rg20082848 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Andre M. Mura, GIBBS LAW GROUP LLP, 505 14th St., Ste 1110, Oakland, CA 94612, (510) 350-9700

| DATE:<br>*(Fecha)* DEC 03 2020 | Chad Finke | Clerk, by<br>*(Secretario)* TARA PIERCE | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Thomson Reuters America Corporation on behalf of the Thomson Reuters Corporation

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
      ☐ other *(specify):*

4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

COPY

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Andre M. Mura (SBN 298541)
Gibbs Law Group LLP
505 14th Street, Suite 1110, Oakland, California 94612

TELEPHONE NO.: (510) 350-9700    FAX NO.: (510) 350-9701
ATTORNEY FOR *(Name):* Plaintiffs Cat Brooks and Rasheed Shabazz

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: René C. Davidson Courthouse

CASE NAME:
Cat Brooks and Rasheed Shabazz v. Thomson Reuters Corporation

FILE BY FAX

FOR COURT USE ONLY

ENDORSED
FILED
ALAMEDA COUNTY
DEC 03 2020
CLERK OF THE SUPERIOR COURT
By ____ Deputy

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited ☐ Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | Rg20082878 |
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☑ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: December 3, 2020
Andre M. Mura
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| Brooks v. Thompson Reuters Corporation | |

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[X] Oakland, Rene C. Davidson Alameda County Courthouse (446)
[ ] Hayward Hall of Justice (447)
[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) |
|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 Auto tort (G)<br>Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD / WD Tort | Asbestos (04)<br>Product liability (24)<br>Medical malpractice (45)<br>Other PI/PD/WD tort (23) | [ ] 75 Asbestos (D)<br>[ ] 89 Product liability (<u>not</u> asbestos or toxic tort/environmental) (G)<br>[ ] 97 Medical malpractice (G)<br>[ ] 33 Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07)<br>Civil rights (08)<br>Defamation (13)<br>Fraud (16)<br>Intellectual property (19)<br>Professional negligence (25)<br>Other non-PI/PD/WD tort (35) | [X] 79 Bus tort / unfair bus. practice (G)<br>[ ] 80 Civil rights (G)<br>[ ] 84 Defamation (G)<br>[ ] 24 Fraud (G)<br>[ ] 87 Intellectual property (G)<br>[ ] 59 Professional negligence - non-medical (G)<br>[ ] 03 Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36)<br>Other employment (15) | [ ] 38 Wrongful termination (G)<br>[ ] 85 Other employment (G)<br>[ ] 53 Labor comm award confirmation<br>[ ] 54 Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06)<br>Collections (09)<br>Insurance coverage (18)<br>Other contract (37) | [ ] 04 Breach contract / Wrnty (G)<br>[ ] 81 Collections (G)<br>[ ] 86 Ins. coverage - non-complex (G)<br>[ ] 98 Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14)<br>Wrongful eviction (33)<br>Other real property (26) | [ ] 18 Eminent domain / Inv Cdm (G)<br>[ ] 17 Wrongful eviction (G)<br>[ ] 36 Other real property (G) |
| Unlawful Detainer | Commercial (31)<br>Residential (32)<br>Drugs (38) | [ ] 94 Unlawful Detainer - commercial   Is the deft. in possession<br>[ ] 47 Unlawful Detainer - residential   of the property?<br>[ ] 21 Unlawful detainer - drugs   [ ] Yes [ ] No |
| Judicial Review | Asset forfeiture (05)<br>Petition re: arbitration award (11)<br>Writ of Mandate (02)<br>Other judicial review (39) | [ ] 41 Asset forfeiture<br>[ ] 62 Pet. re: arbitration award<br>[ ] 49 Writ of mandate<br>Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No<br>[ ] 64 Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03)<br>Construction defect (10)<br>Claims involving mass tort (40)<br>Securities litigation (28)<br>Toxic tort / Environmental (30)<br>Ins covrg from cmplx case type (41) | [ ] 77 Antitrust / Trade regulation<br>[ ] 82 Construction defect<br>[ ] 78 Claims involving mass tort<br>[ ] 91 Securities litigation<br>[ ] 93 Toxic tort / Environmental<br>[ ] 95 Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 Enforcement of judgment<br>[ ] 08 Confession of judgment |
| Misc Complaint | RICO (27)<br>Partnership / Corp. governance (21)<br>Other complaint (42) | [ ] 90 RICO (G)<br>[ ] 88 Partnership / Corp. governance (G)<br>[ ] 68 All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 Change of name<br>[ ] 69 Other petition |

```
┌ Gibbs Law Group LLP              ┐   ┌ Thomson Reuters Corporation        ┐
  Attn: Mura, Andre M.
  505 14th Street
  Suite 1110
└ Oakland, CA  94612               ┘   └                                    ┘
```

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Brooks | No. <u>RG20082878</u> |
| Plaintiff/Petitioner(s) | |
| VS. | |
| | NOTICE OF HEARING |
| Thomson Reuters Corporation | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

Complex Determination Hearing
Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 02/03/2021    TIME: 09:00 AM    DEPARTMENT: 21
LOCATION:  Administration Building, Fourth Floor
           1221 Oak Street, Oakland

Case Management Conference:
DATE: 03/03/2021    TIME: 09:00 AM    DEPARTMENT: 21
LOCATION:  Administration Building, Fourth Floor
           1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 21 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6937. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 21.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions.  Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732.  No fee is charged for this service.  For further information, go to **Direct Calendar Departments** at

http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 21.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 21 by e-mail at Dept21@alameda.courts.ca.gov or by phone at (510) 267-6937.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  01/06/2021                     Chad Finke  Executive Officer / Clerk of the Superior Court

                                                 By    _____
                                                                                        Deputy Clerk

---

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 01/07/2021.

                                                 By    _____
                                                                                        Deputy Clerk

COPY

Eric H. Gibbs (State Bar No. 178658)
Andre M. Mura (State Bar No. 298541)
Amanda M. Karl (State Bar No. 301088)
Jeffrey B. Kosbie (State Bar No. 305424)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Fax: (510) 350-9701
*ehg@classlawgroup.com*
*amm@classlawgroup.com*
*amk@classlawgroup.com*
*jbk@classlawgroup.com*

Jennifer D. Bennett (State Bar No. 296726)
Neil K. Sawhney (State Bar No. 300130)
**GUPTA WESSLER PLLC**
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*
*neil@guptawessler.com*

Benjamin Elga (pro hac vice forthcoming)
Alice Buttrick (pro hac vice forthcoming)
**JUSTICE CATALYST LAW INC.**
81 Prospect St., 7th Floor
Brooklyn, NY 11201
(518) 732-6703
*belga@justicecatalyst.org*
*abuttrick@justicecatalyst.org*

Albert Fox Cahn (pro hac vice forthcoming)
**SURVEILLANCE TECHNOLOGY
OVERSIGHT PROJECT**
40 Rector Street, 9th Floor
New York, NY 10006
*albert@stopspying.org*

ENDORSED
FILED
ALAMEDA COUNTY

DEC 03 2020

CLERK OF THE SUPERIOR COURT
By *TANIA FU*
TANIA FU     Deputy

*Attorneys for Plaintiffs*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ALAMEDA

CAT BROOKS and RASHEED
SHABAZZ, individually and on behalf
of all others similarly situated,

           Plaintiffs,

         v.

THOMSON REUTERS CORPORATION,

           Defendant.

Case No. Rg20082848

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

**COMPLEX**

FILE BY FAX

1.     Thomson Reuters is best known for its news agency (Reuters) and its online legal-research service (Westlaw). But the company makes money in another, lesser-known way: It collects a vast quantity of photos, identifying information, and personal data from American consumers, including Californians, without their consent and sells that information to corporations, law enforcement, and government agencies. Those whose identities the company sells, however, receive no compensation. Most of them don't even know it is happening.

2.     Thomson Reuters sells this information through an online platform it calls CLEAR. CLEAR provides access to a database that aggregates both public and non-public information about millions of people and contains detailed cradle-to-grave dossiers on each person, including names, photographs, criminal history, relatives, associates, financial information, and employment information. The company advertises that CLEAR enables its users to access "both surface and deep web data to examine intelligence" about people "not found in public records or traditional search engines." This allows CLEAR users "to uncover" personal "facts hidden online," by scraping "real-time information" about individuals from social networks, blogs, and even chat rooms. The CLEAR database also includes information from third-party data brokers and law enforcement agencies that are not available to the general public, including live cell phone records, location data from billions of license plate detections, real-time booking information from thousands of facilities, and millions of historical arrest records and intake photos. This information is "fused and vetted by algorithm to form" what the *New York Times* described as "an ever-evolving, 360-degree view of U.S. residents' lives."[1]

3.     Because of CLEAR, Californians' identities are up for sale without their knowledge, let alone consent. Named plaintiff Cat Brooks, for example, is an activist, who has spent years fighting police violence, particularly in communities of color. Because of her work, Ms. Brooks is targeted by white supremacist groups. Concerned for her safety and that of her family, Ms. Brooks works hard to maintain ownership and control over her personal information. She even subscribes to a service that routinely scrubs her personal information from the internet. Yet,

---

[1] McKenzie Funk, *How ICE Picks Its Targets in the Surveillance Age*, N.Y. Times (Oct. 3, 2019) https://www.nytimes.com/2019/10/02/magazine/ice-surveillance-deportation.html.

CLEAR offers a "360-degree view" of her life: Her address, her cell phone number, and information about her relatives, neighbors, and associates, are all for sale without her consent.

4.   Ms. Brooks is not alone. Thomson Reuters sells detailed dossiers on Californians across the state, people who have no idea their personal information is being appropriated, aggregated, and sold over the internet. California's common law right of publicity has long protected the right of its residents to determine for themselves whether, how, and to what extent their personal information is disseminated. Similarly, California's Unfair Competition Law prohibits corporations from engaging in unlawful and unfair acts, which include appropriating a person's personal information and selling it without their consent. Yet that is precisely what Thomson Reuters is doing with CLEAR, depriving Californians of their autonomy, dignity, and ownership of their own identities in the process.

5.   This lawsuit seeks to remedy Thomson Reuters' repeated violations of the plaintiffs and class members' publicity rights and to enjoin the company from continuing to profit off their personal information without their consent.

## PARTIES

6.   Plaintiff Cat Brooks is a resident of Alameda County, California, whose name, photo, likeness, and other personal information Thomson Reuters has appropriated and sold without her consent.

7.   Plaintiff Rasheed Shabazz is a resident of Alameda County, California, whose name, photo, likeness, and other personal information Thomson Reuters has appropriated and sold without his consent.

8.   Defendant Thomson Reuters Corporation is a multinational media company headquartered in Toronto, Canada.

## JURISDICTION AND VENUE

9.   This Court has jurisdiction over this matter because Thomson Reuters is licensed to do business in California, regularly conducts business in California, and purposefully targets California residents for the collection and sale of personal information without consent. The

1    company also regularly collects information about California residents from California sources.

2    And it systematically sells CLEAR to California residents.

3        10.  Venue is appropriate in this Court under Code of Civil Procedure section 395(b)

4    because Thomson Reuters does not reside in this state and Plaintiffs reside in Alameda County,

5    California.

## FACTUAL ALLEGATIONS

**CLEAR aggregates billions of data points about individuals and sells this information**
**without obtaining consent or providing compensation.**

9        11.  Thomson Reuters collects and aggregates "billions of data points" about

10   individuals—including their photos, names, and personal identifying information—into

11   searchable dossiers about each person and sells these dossiers through its CLEAR platform for

12   substantial profits.[2]

13       12.  At no point during its process of collecting, packaging, and selling individual

14   information does Thomson Reuters ever ask individuals for their consent. In the vast majority

15   of cases, the individuals do not even know that Thomson Reuters has collected their personal

16   information and data—let alone that it is selling this information for profit.

17       13.  Thomson Reuters has never offered individuals compensation for the sale of their

18   photos, names, identifying information, or other personal data. And it provides no mechanism

19   by which individuals can seek compensation.

20       14.  The information aggregated and stored on the CLEAR database—which the

21   company collects from public records, government sources, internet searches, and third-party

22   data brokers—is highly personal and even confidential. For example, the CLEAR database

23   includes data from government agencies and corporations that is not available to the general

24   public, such as live cell phone records and license plate detections.

25       15.  Thomson Reuters also collects data from law enforcement, including real-time

26   booking images and information from local jails and corrections departments. According to its

27   ───────────────

28   [2]Thomson Reuters, *Thomson Reuters CLEAR*,
     https://legal.thomsonreuters.com/en/products/clear-investigation-software.

CLASS ACTION COMPLAINT

3

1   website, Thomson Reuters has acquired 90 million historical arrest records, including intake

2   photos. Taken together, Thomson Reuters estimates that CLEAR houses over 38 million images

3   gathered from over 2,000 agencies in over 40 states.[3]

4       16.  In addition, the company purchases and consolidates information held by third-

5   party data tracking firms, data brokers, and other companies that compile consumer and

6   location data—private firms that the *Wall Street Journal* once dubbed "Big Brother-in-Law."[4]

7   This information includes data from credit agencies, DMV records, cellphone registries, social-

8   media posts, property records, utility accounts, professional and fishing licenses, internet chat

9   rooms, court records, and bankruptcy filings. All of this information is then "fused and vetted

10  by algorithm to form an ever-evolving, 360-degree view of U.S. residents' lives."[5]

11      17.  Even with respect to public-record information, CLEAR gives users the ability to

12  search and analyze massive amounts of data that they would not otherwise be able to access

13  on their own—in almost real time. For example, CLEAR has "real-time access to address and

14  name-change data from credit reports and to motor-vehicle registrations from 43 U.S. states

15  plus the District of Columbia and Puerto Rico." And its "utility records, which come from more

16  than 80 electric, gas, water, telephone, cable and satellite television companies nationwide, are

17  updated daily." Likewise, "[i]ncarceration and arrest records, often paired with booking photos

18  that allow for facial-recognition-powered virtual lineups, arrive almost immediately from 2,100

19  state and local agencies."[6]

20      18.  On the page of its website describing CLEAR's corporate pricing plans, Thomson

21  Reuters explains that its "intermediate" and "comprehensive" plans permit users to access

22  "both surface and deep web data," which includes data that is not ascertainable via public

23  records or traditional search engine queries.[7] A marketing brochure similarly states that

24  ---

25  [3] Thomson Reuters, *CLEAR Plans and Pricing*,
    https://legal.thomsonreuters.com/en/products/clear-investigation-software/plans-pricing.
    [4] McKenzie Funk, *How ICE Picks Its Targets in the Surveillance Age*, N.Y. Times (Oct. 3, 2019)

26  https://www.nytimes.com/2019/10/02/magazine/ice-surveillance-deportation.html.
    [5] *Id.*

27  [6] *Id.*
    [7] Thomson Reuters CLEAR Plans and Pricing, https://legal.thomsonreuters.com/en/products/clear-

28  investigation-software/plans-pricing#corporate.

1   CLEAR's "Web Analytics" are capable of uncovering "facts hidden online" through its deep
2   web search technology.[8]

3       19.   In addition, corporate customers who purchase CLEAR's "comprehensive" plan
4   have access to not only individuals' own personal information, but computer-generated lists of
5   that subject's relatives and associates and their personal information.[9]

6   **CLEAR sells customers the ability to easily and quickly search for a specific individual's**
7   **personal and non-public information**

8       20.   Thomson Reuters advertises CLEAR as a "user-friendly platform," which offers
9   customers an "easier . . . search experience that brings together key proprietary and public
10  records into one intuitive, customizable environment." According to the company, CLEAR
11  allows users to "quickly search across thousands of data sets and get accurate results in less
12  time."

13      21.   CLEAR's products are widely used. The platform receives approximately 100,000
14  search queries each day.

15      22.   Users sign into the CLEAR platform through a portal similar to Thomson Reuters'
16  well-known Westlaw sign-in page.

17      23.   CLEAR offers users the ability to conduct numerous types of searches for a targeted
18  individual or entity, including a "person search" and a "risk inform" search.

19      **CLEAR's Person Search:**

20      24.   CLEAR prompts users conducting a "person search" to input information such as
21  an individual's name, address, contact information, social security number, date of birth, age
22  range, or driver's license number in order to locate a targeted individual.

23      25.   The directions for filling out the "age range" field direct the user to enter "1 to 3
24  digits," indicating that CLEAR permits searches for minors as well as adults.

25

26  [8] Thomson Reuters CLEAR Brochure, *available at:*
27  https://www.thomsonreuters.com/content/dam/openweb/documents/pdf/legal/fact-sheet/clear-brochure.pdf.
28  [9] Thomson Reuters, *CLEAR Plans and Pricing*, https://legal.thomsonreuters.com/en/products/clear-investigation-software/plans- pricing#corporate.

26. The "person search" results bring the user to a landing page with personal identifying information. A column on the side of the screen includes the target individual's full name, age, current address, and partial social security numbers; "vital statistics," such as date of birth, gender, and former names; and former addresses and phone numbers.

27. The "person search" results page also features a dashboard of additional tools allowing a user to dive deeper into the targeted individual's profile. The front page of the dashboard displays "possible quick analysis flags," which indicate whether, according to CLEAR's database, the individual's profile includes various putative risk factors, such as bankruptcies, arrests, a criminal record, or "associate[s] or relative[s]" with arrests or criminal records.

28. CLEAR's "web analytics" tool, available via the dashboard, permits the user to browse through images and profiles of the targeted person, as well as individuals with similar names. It also provides search hits for the targeted individual from websites. These results can be filtered by various metrics, including city, country, "FamilyRelation," "PersonAttributes," and "PersonRelationship."

29. The "person search" dashboard also offers a number of other tools, such as a "graphical display" tool that provides visual depictions of the targeted individual's legal history, as well as the individual's relationship to registered agents, relatives, and other people with whom the individual shares phone numbers; an "associate analytics" tool exploring the personal information of a targeted individual's purported family members and other "associates"; and a "map analytics" tool allowing a user to view all of the addresses associated with the targeted individual on a detailed map, which includes satellite imagery.

30. Users may also create a report from the results of the "person search," including detailed information not only about the targeted individual, but also that person's relatives, "associates," neighbors, addresses, properties, vehicles, and businesses in the report.

**CLEAR's Risk Inform Search:**

31. CLEAR's "risk inform" search creates a detailed report of the putative risks

1  associated with a targeted individual, summarizing a person's purported "risk" using a
2  numerical score.[10] A "risky" person has a high score, while a "safe" person has a low score.

3       32.  The age range field for the "risk inform" search directs users to enter "1 to 3 digits,"
4  again indicating that this tool may be used to profile minors as well as adults.

5       33.  The "risk inform" results include the same "vital statistics," address, contact
6  information, web analytics information, and photographs that CLEAR provides in a "person
7  search."

8       34.  In addition, the "risk inform" results include an automatically generated "risk
9  inform score."



24      35.  The potential "flags" identified as components of this score demonstrate the breadth
25  and sensitivity of the information included in the CLEAR database. For instance, under a list of
26  "custom" flags, which appear to be associated with a wide range of state criminal offenses:

---

[10] Thomson Reuters, *CLEAR Risk Inform*, https://legal.thomsonreuters.com/en/products/clear-investigation-software/clear-risk-inform.

a. CLEAR includes indicators for several types of conduct related to "Abortion," including "Abortional Act on Self";

b. Under the header "Breach of the Peace," CLEAR includes indicators for speech and protest-related activity, including "Anarchism," "Desecrating a Flag," and "Engaging in a Riot," and in subsequent sections, it also identifies "Indecent, Obscene, or Vulgar Language" and "Refusing to Aid a Police Officer";

c. CLEAR includes indicators for "Homosexual Act with a Man" and "Homosexual Act with a Woman";

d. Under the header "Weapons Offenses," CLEAR includes indicators for "Licensing – Registered Weapon" and "Possession of a Weapon"; and

e. CLEAR also includes flags for intrusive conduct under the header "Invasion of Privacy."[11]

36. Several of CLEAR's "risk inform" flags are automatically triggered if the targeted individual changes their name, as illustrated by the dossiers on both of the named plaintiffs described below. Members of groups that are more likely to change their names—such as women who marry, victims of domestic violence, trans people, and Muslim converts—are thereby more likely to be tagged as "risky" by CLEAR's "risk inform" product.

37. Clicking on any of the "risk inform" flags enables the user to see additional information about the alleged offense or trigger.

38. As with the "person search," CLEAR permits users to generate a report of the "risk inform" results that may include information about the targeted individual as well as their relatives, associates, and neighbors.

---

[11] Although it has been held unconstitutional to use several of the items identified under "Criminal Records" as the basis for a criminal charge, it is unclear whether CLEAR determines whether these "flags" are triggered strictly using criminal records and whether it takes account of whether charges have subsequently been sealed or expunged. Moreover, it is unlikely that CLEAR's algorithm discounts criminal charges in its database that predate changes in the criminal code (*e.g.*, a charge for private homosexual conduct that preceded the Supreme Court's ruling in *Lawrence v. Texas*, 539 U.S. 558 (2003)).

*Thomson Reuters has offered the named plaintiffs' personal and sensitive information for sale through CLEAR, without the plaintiffs' consent*

39. Neither of the named plaintiffs ever agreed to permit Thomson Reuters to collect, store, or sell their personal information. Thomson Reuters has never asked either of them for their consent, nor has it offered them compensation for selling their personal information.

40. Nevertheless, Thomson Reuters sells its customers access to extensive personal and sensitive information about both of the named plaintiffs on CLEAR.

**Cat Brooks:**

41. Named plaintiff Cat Brooks is a Black activist and actress. Ms. Brooks has been targeted by white supremacist groups as a result of her activism: She receives hateful emails and threats at her home. She also fears retaliation from law enforcement. Out of concern for her safety and that of her family, Ms. Brooks has taken active steps to remove her personal information from the internet, including subscribing to a service that routinely deletes identifying information.

42. Ms. Brooks did not give Thomson Reuters consent to include her identity and identifying information in the CLEAR database. Thomson Reuters neither asked Ms. Brooks for permission to sell her identifying information, nor paid Ms. Brooks for the right to sell it.

43. Nevertheless, CLEAR's database includes extensive information about Ms. Brooks. CLEAR's "individual report" on Ms. Brooks includes a trove of information, including a social security number that is only partially redacted, current address, cell phone number, prior addresses, and details about her current employer, her business, and licenses. It also identifies her neighbors, relatives, and "associates"—both current and past—and provides detailed information about them.

44. Ms. Brooks changed her name in connection with her activist work. CLEAR's dossier on Ms. Brooks also contains her prior name, as well as detailed information associated with that name. In addition, CLEAR's "risk inform" report on Ms. Brooks heavily penalizes her for changing her name: All of the risk factors it identifies for Ms. Brooks are associated with her

1   name change, including "Duplicate Personally Identifiable Information," "First Appearance in
2   Public Records content after 30," "SSN Matched to Multiple Individuals," and "Thinness of
3   File." As a result, Ms. Brooks is saddled with a high "risk inform" score, indicated in bold red.
4   CLEAR's "individual report" of information associated with Ms. Brooks' prior name is also
5   extensive.

6     45. CLEAR also provides photographs of Ms. Brooks.

7     46. At the bottom of a Thomson Reuters' webpage about CLEAR—only visible after
8   scrolling past two or more pages of text—there is a link in very small font that says: "For CA:
9   Do not sell my information."[12]

10     47. Clicking on the link sends visitors to a page that purports to allow California
11   residents to opt out of the sale of their "personal information" for a period of "at least twelve
12   (12) months."

13     48. Beyond its presence in tiny font at the very bottom of its webpages, Thomson
14   Reuters provides no notice to consumers that this link exists. Nor does the company enable
15   California consumers who happen to find out about the link to easily make use of it. [13]

16     49. Ms. Brooks clicked the "For CA: Do not sell my information" link, seeking to opt out
17   of the sale of her personal information via CLEAR. However, when she attempted to do so,
18   Thomson Reuters required that she provide a photograph of her government-issued
19   identification card as well as a separate picture of her face. Given that Thomson Reuters is
20   already selling her personal information without her consent, Ms. Brooks was not comfortable
21   providing further personal information to the company, and thus she could not complete the
22   company's process.

23   **Rasheed Shabazz:**

24     50. Named plaintiff Rasheed Shabazz is a Black Muslim journalist and activist. He is
25

26   [12] https://legal.thomsonreuters.com/en/products/clear-investigation-software.
27   [13] Several Thomson Reuters webpages also include a second link at the bottom of the page that say: "Do not sell
    my personal information." Clicking on one of these links brings up a pop-up window that states that the
28   personal information to which it refers is information collected by cookies stored on the visitor's browser "to
    collect information."

concerned about being targeted by people who disagree with his writing, his teaching, and his activism, as well as by people who simply dislike his identity. He does not want his personal information to be publicly available.

51.  Mr. Shabazz did not give Thomson Reuters consent to include his identity and identifying information in the CLEAR database. Thomson Reuters neither asked Mr. Shabazz for permission to sell his identifying information, nor paid Mr. Shabazz for the right to sell it.

52.  Mr. Shabazz does not want Thomson Reuters to profit from his identity. He also does not want Thomson Reuters to present the story of his life to others without his input.

53.  But CLEAR's "individual report" on Mr. Shabazz includes detailed information such as his current and prior addresses, employer information, phone numbers, a partially redacted social security number, his "associates," his neighbors—and their addresses and phone numbers.

54.  Because, in Mr. Shabazz's view, the last name he was given at birth was associated with the slave owners who held his ancestors in bondage, Mr. Shabazz legally changed his name to one he felt was a better representation of himself and his family. CLEAR includes detailed information associated with Mr. Shabazz's prior name, including the same partially redacted social security number, his race, and physical addresses, email addresses, and phone numbers. Some of this information is inaccurate: CLEAR's profile on Mr. Shabazz's prior name indicates that Mr. Shabazz was divorced, when he has never legally been married, and that he has been sued for failing to pay child support, when he has no children.

55.  Like Ms. Brooks, CLEAR's "risk inform" report penalizes Mr. Shabazz for changing his name: His "risk inform score" is based on flags indicating "First Appearance in Public Records after 30," "No relatives," and "SSN Matched to Multiple Individuals."

56.  CLEAR provides photographs of Mr. Shabazz, including a profile picture CLEAR has chosen for the account they sell.

57.  Mr. Shabazz also attempted to opt out of the sale of his personal information by clicking the "For CA" link provided at the bottom of Thomson Reuter's webpages. However,

1  when he attempted to do so, Thomson Reuters required that he provide a photograph of his
2  government-issued identification card as well as a separate picture of his face. Given that
3  Thomson Reuters was selling his personal information without his consent, Mr. Shabazz was
4  not comfortable providing further personal information to the company, and thus he could not
5  complete the company's process.

6  ***Thomson Reuters makes substantial profits from its sale of personal data and identifying***
7  ***information through CLEAR***

8      58.  Thomson Reuters markets the CLEAR platform to individuals, private corporations,
9  law enforcement, and other government agencies.

10      59.  Thomson Reuters stores and collects CLEAR data in one or more of its Strategic Data
11  Centers. To access this data, an individual can pay for a monthly subscription for one or more
12  of Thomson Reuters' CLEAR data "plans." A customer can also choose to pay per individual
13  search, demonstrating the value that each individual profile in CLEAR's database holds for
14  Thomson Reuters. CLEAR offers tailored subscription plans for law enforcement, government
15  agencies, and private corporations, respectively. Thomson Reuters charges individual users a
16  monthly rate for access to its many CLEAR programs.

17      60.  Thomson Reuters makes significant profits from the collection, aggregation, and
18  sale of individuals' names, photographs, likenesses, identifying information, and personal data
19  through its CLEAR products.

20      61.  Thomson Reuters charges users for each component of CLEAR's search
21  functionalities. It offers both flat rate and "pay-as-you-go" pricing models, with a minimum
22  contract term of twelve months.[14]

23      62.  In Thomson Reuter's "pay-as-you-go" pricing model, users pay per each component
24  of a search and per report. For instance, in one pricing schedule, Thomson Reuters indicated
25  that users would pay $5.00 for a basic "Person Search," with additional charges added for
26  additional information. According to this schedule, users also incur additional charges for a

27
---
[14] Thomson Reuters, *CLEAR Plans and Pricing*, https://legal.thomsonreuters.com/en/products/clear-
28  investigation-software/plans-pricing#corporate.

"Photo Line-Up Search" and a "Web Analytics Search." Thomson Reuters also charges separately to use CLEAR's "Risk Inform" product, up to $6.75 for a "premium" search. And users must also pay additional fees to generate reports from their searches: An "individual report" costs $15.00, with additional charges added to include "associates" or "Risk Inform" data in the report.[15]

63.   Government records offer another glimpse into the revenues that Thomson Reuters derives from its sale of CLEAR products. U.S. Immigration and Customs Enforcement ("ICE") has signed over $54 million in contracts with Thomson Reuters to access CLEAR for purposes of surveilling and tracking immigrants.

***Thomson Reuters is aware of the privacy concerns posed by its appropriation and sale of individuals' personal data without their consent***

64.   Thomson Reuters knows that its aggregation and sale of personal data without consent implicate significant privacy concerns.

65.   In an article posted on its website for "insights" on "legal" issues, Thomson Reuters acknowledges the negative privacy consequences that flow from the non-consensual sale of a person's personal data. As it explains, "[s]econdary uses of personal data"—that is, uses of a person's data for purposes the person didn't intend or consent to—"pose the most risk and unintended harm to people." Individuals are blindsided by these secondary uses because they rightfully assume that even if their personal information has been uploaded somewhere, that "doesn't mean permission has been given to share that information everywhere."[16]

66.   By the company's own admission, "the amount of digital data being collected and stored" by corporations that profit off of personal data has reached "unprecedented rates." Data analytics, a service which the company provides to its CLEAR customers, "has enormous power to reveal seemingly hidden patterns." According to Thomson Reuters, data analytics processes can be so invasive that their insights "can even predict behavior," thereby

---

[15] Thomson Reuters, *CLEAR Services Schedule A Commercial Subscriber's Accessing Enhanced CLEAR Services*, https://static.legalsolutions.thomsonreuters.com/static/agreement/schedule-a-clear.pdf.
[16] Thomson Reuters, *Big Data ethics: redefining values in the digital world*, https://legal.thomsonreuters.com/en/insights/articles/big-data-ethics-redefining-values-in-the-digital-world.

1   "threaten[ing] individual identity."[17]

2   67. Because CLEAR's database is privately owned, it is not subject to the privacy

3   protections that apply to government collection and storage of personal data. Commentators

4   have observed that government agencies like ICE and local law enforcement may be able to

5   avoid constitutional and statutory limitations by purchasing personal data from data brokers

6   and other private companies like Thomson Reuters.[18]

7   68. Despite Thomson Reuters' awareness that consent should be acquired before

8   sharing personal information, the company never asks the individuals whose information is

9   contained in the CLEAR database for their consent.

10   69. In fact, most individuals have no way of knowing that Thomson Reuters has bought,

11   collected, aggregated, or sold their personal data.

12                              **CLASS ACTION ALLEGATIONS**

13   70. Under Code of Civil Procedure section 382 and Rule of Court 3.760 *et seq.*, the

14   plaintiffs bring claims one, two, and three of this action on behalf of themselves and the

15   following proposed class:

16

17   > All persons residing in the state of California whose name, photographs, personal
>   identifying information, or other personal data is or was included in the CLEAR
18   > database during the limitations period.

19   71. The proposed class definition excludes any officers and directors of Thomson

20   Reuters; Class Counsel; and the judicial officer(s) presiding over this action and the members

21   of his/her immediate family and judicial staff.

22   72. The number of class members is unknown to the plaintiffs, but it likely includes

23   nearly all Californians. In light of Thomson Reuters' claims that the CLEAR database contains

24   "billions of data points," including more than 140 million booking records and over 38 million

25   images of individuals, the class is so numerous that joinder of all members is impractical.

26

27   ───────────────
[17] *Id.*
28   [18] Gilad Edelman, *Can the Government Buy Its Way Around the Fourth Amendment?*, Wired (Feb. 11, 2020),
https://www.wired.com/story/can-government-buy-way-around-fourth-amendment/.

1    73.   There are questions of law and fact common to the class, which predominate over

2    any questions affecting only individual class members. These questions include, but are not

3    limited to, the following:

4         a.   Whether Thomson Reuters' collection and sale of personal data through the CLEAR

5              platform violates California's common law right of publicity.

6         b.   Whether Thomson Reuters' collection and sale of personal data through the CLEAR

7              platform violates California's Unfair Competition Law, Cal. Bus. & Prof. § 17200, *et*

8              *seq.*

9         c.   Whether Thomson Reuters has a process for obtaining consent before collecting,

10             aggregating, and selling individuals' personal data in the CLEAR database.

11        d.   Whether Thomson Reuters' sale of personal data through the CLEAR platform

12             constitutes a misappropriation for commercial advantage under California law.

13        e.   Whether class members' names, photographs, and other identifying information are

14             directly connected to the commercial purpose of selling access to that information.

15        f.   The extent to which Thomson Reuters has profited from the non-consensual sale of

16             personal identifying information and data.

17   74.   These and other legal and factual questions are common to all class members. There

18   are no individual questions that will predominate over common questions.

19   75.   The plaintiffs will fairly and adequately protect the interests of the class because

20   their interests are aligned with, and not antagonistic to, those of the other members of the class.

21   In addition, the plaintiffs have retained counsel experienced in handling class claims and claims

22   involving unlawful business practices. Neither the plaintiffs nor their counsel have any

23   interests which might cause them not to vigorously pursue this claim.

24   76.   The plaintiffs' claims are typical of the claims of the members of the class. The

25   plaintiffs and the class members sustained damages arising out of the defendant's common

26   course of unlawful conduct. The damages and injuries of each class member were directly

27   caused by the defendant's wrongful conduct.

28

77.   There are no defenses of a unique nature that may be asserted against the plaintiffs individually, as distinguished from the other members of the class, and the relief sought is common to the class.

78.   A class action is a superior method for the fair and efficient adjudication of this controversy. Individual cases are not economically feasible given the amounts at issue and the difficulties in litigating such a case.

79.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, and a risk that any adjudications with respect to individual members of the class would, as a practical matter, either be dispositive of the interests of other members of the class not party to the adjudication or substantially impair or impede their ability to protect their interests.

80.   Class certification is also warranted for purposes of injunctive and declaratory relief because the defendant has acted or refused to act on grounds generally applicable to the class, so that final injunctive and declaratory relief are appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Common Law Right to Publicity/Misappropriation of Likeness

81.   Plaintiffs repeat and incorporate by reference each preceding paragraph as if fully stated herein.

82.   California's common-law right of publicity protects people from the unauthorized appropriation of their identity by another for commercial gain.

83.   Thomson Reuters has used the named plaintiffs' and class members' identities by collecting, aggregating, and selling their names, images, likenesses, and other personal identifying information through products linked to its CLEAR database.

84.   Thomson Reuters appropriated the named plaintiffs' and class members' identities for its own commercial and economic advantage.

85. At no time has Thomson Reuters sought consent from class members before appropriating and selling their personal data through its CLEAR products, nor does it have a process for doing so.

86. The class members received no compensation for Thomson Reuters' use of their identities.

87. Thomson Reuters' appropriation and sale of the plaintiffs' and class members' names, photographs, likenesses, and personal information without their consent injured the class members by violating their privacy. In particular, Thomson Reuters has prevented—and continues to prevent—the named plaintiffs and class members from retaining control over the dissemination of their personal information.

88. The named plaintiffs and the class members have also suffered economic injury because they were not compensated by Thomson Reuters for the use of their name, photographs, likeness, and other personal identifying information.

89. The named plaintiffs and class members are entitled to compensatory damages, restitution, declaratory relief, and injunctive relief.

**SECOND CAUSE OF ACTION**

**Unfair Competition Law, Cal. Bus. & Prof. § 17200, Monetary Relief**

90. Plaintiffs repeat and incorporate by reference each preceding paragraph as if fully stated herein.

91. California Business and Professions Code section 17200 *et seq.* ("UCL") prohibits "unlawful, unfair, or fraudulent business acts or practices."

92. By selling Californians' personal information and data without consent, as described above, Thomson Reuters has engaged in unlawful and unfair acts and practices prohibited by the UCL.

93. Thomson Reuters' conduct is unlawful under the UCL because it violates California's common-law right of publicity, as discussed in the first cause of action.

94. In addition, Thomson Reuter's conduct is unlawful under the UCL because it

1    violates California Civil Code section 3344(a).

2    95.  California Civil Code section 3344(a) provides that "[a]ny person who knowingly

3    uses another's name, voice, signature, photograph, or likeness, in any manner, on or in

4    products, merchandise, or goods, . . . without such person's prior consent . . . shall be liable for

5    any damages sustained by the person or persons injured as a result thereof."

6    96.  Thomson Reuters knowingly used and continues to use the names, photographs,

7    and other identifying information of the class members in its CLEAR database, and for the

8    purpose of selling access to products linked to the CLEAR database. Thomson Reuters' use of

9    this information is not an accident; it is central to these products.

10   97.  Thomson Reuters' appropriation of the class members' names, photographs, and

11   other identifying information was to the company's economic and commercial advantage. The

12   company has generated millions of dollars of revenue from CLEAR.

13   98.  At no time has Thomson Reuters affirmatively sought consent from class members

14   before appropriating and selling their personal data, nor does it have a process for doing so.

15   99.  The class members received no compensation for Thomson Reuters' use of their

16   names, images, likenesses, and other personal identifying information.

17   100. Thomson Reuters' use of class members' names, photographs, and other identifying

18   information is directly connected to its products' commercial purposes: Products linked to the

19   CLEAR database would be without value if the CLEAR database did not include class

20   members' names, photographs, and identifying information. Class members' names,

21   photographs, and identifying information are not ancillary to these products—they are the

22   product.

23   101. Indeed, Thomson Reuters' entire marketing strategy relies on emphasizing the vast

24   quantity of photographs, names, and other identifying information that is readily available to

25   potential subscribers of CLEAR. Thomson Reuters' appropriation and sale of the named

26   plaintiffs' and class members' names, photographs, likenesses, and personal information

27   without seeking permission or consent injured the class members by violating their right to

28

1   exercise control over the commercial use of their identities.

2   102. Thomson Reuters' conduct also constitutes unfair business practices under the UCL
3   because these practices offend established public policy and cause harm to the named plaintiffs
4   and class members, which cannot be reasonably avoided, and that outweighs any benefit to
5   consumers or competition. The conduct also is immoral, unethical, oppressive, unscrupulous,
6   and substantially injurious to consumers.

7   103. The named plaintiffs and class members have suffered economic injury as a result
8   of Thomson Reuters' unlawful and unfair business practices.

9   104. As a result of its unlawful and unfair business practices, Thomson Reuters has
10   reaped and continues to reap unfair and illegal profits at the expense of the plaintiffs and class
11   members. Thus, Thomson Reuters should be required to disgorge its illegal profits, and to pay
12   the plaintiffs and class members restitution in an amount according to proof at the time of trial.

13                              **THIRD CAUSE OF ACTION**

14                                  **Unjust Enrichment**

15   105. Plaintiffs repeat and incorporate by reference each preceding paragraph as if fully
16   stated herein.

17   106. Thomson Reuters has wrongfully and unlawfully sold the named plaintiffs' and the
18   class members' names, photographs, personal identifying information, and other personal data
19   without their consent for substantial profits.

20   107. The named plaintiffs' and the class members' personal information and data have
21   conferred an economic benefit on Thomson Reuters.

22   108. Thomson Reuters has been unjustly enriched at the expense of the named plaintiffs
23   and class members, and the company has unjustly retained the benefits of its unlawful and
24   wrongful conduct.

25   109. It would be inequitable and unjust for Thomson Reuters to be permitted to retain
26   any of the unlawful proceeds resulting from its unlawful and wrongful conduct.

27   110. The named plaintiffs and class members accordingly are entitled to equitable relief

28

including restitution and disgorgement of all revenues, earnings, and profits that Thomson Reuters obtained as a result of its unlawful and wrongful conduct.

## FOURTH CAUSE OF ACTION

### Unfair Competition Law, Cal. Bus. & Prof. § 17200, Public Injunctive Relief

111. Plaintiffs reallege claims in the second cause of action for purposes of this action.

112. California Business and Professions Code section 17200 *et seq.* ("UCL") prohibits "unlawful, unfair, or fraudulent business acts or practices."

113. By selling Californians' personal information and data without consent, as described above, Thomson Reuters has engaged in unlawful and unfair acts and practices prohibited by the UCL.

114. Thomson Reuters' conduct is unlawful under the UCL because it violates California Civil Code section 3344(a) and California's common-law right of publicity.

115. Thomson Reuters' conduct also constitutes unfair business practices under the UCL because these practices offend established public policy and cause harm to the named plaintiffs and class members, which cannot be reasonably avoided, and that outweighs any benefit to consumers or competition. The conduct also is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

116. California's Unfair Competition Law allows anyone to bring an action for public injunctive relief if they have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. § 17204.

117. Plaintiffs Brooks and Shabazz both lost money as a result of Thomson Reuters' unfair and unlawful practices in violation of the Unfair Competition Law. But for its violation of law, Thomson Reuters would have either paid Brooks and Shabazz for consent to sell their information or ceased the sale of their information.

118. Plaintiffs bring this fourth cause of action in a representative capacity, not on a class basis, seeking public injunctive relief to enjoin Thomson Reuter's continued violation of California's Unfair Competition Law.

## PRAYER FOR RELIEF

For all of these reasons, the plaintiffs request that this Court:

a. Certify this action as a class action for purposes of Claims One through Three;

b. Appoint plaintiffs Cat Brooks and Rasheed Shabazz as class representatives and appoint their attorneys as class counsel;

c. Award compensatory damages, declaratory relief, and injunctive relief;

d. Award restitution and disgorgement of the defendant's profits from its unlawful and unfair business practices and conduct;

e. Issue an order for public injunctive relief under the UCL, enjoining Thomson Reuters from selling class members' personal data without their consent, except for legally permissible uses;

f. Award costs and reasonable attorneys' fees; and

g. Grant such further relief that the Court deems necessary and proper.

## JURY DEMAND

119. Plaintiffs demand a trial by jury for all issues so triable under the law.

DATED: December 3, 2020                    Respectfully submitted,

Eric H. Gibbs (State Bar No. 178658)
Andre M. Mura (State Bar No. 298541)
Amanda M. Karl (State Bar No. 301088)
Jeffrey B. Kosbie (State Bar No. 305424)
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland CA 94612
(510) 350-9700
*ehg@classlawgroup.com*
*amm@classlawgroup.com*
*amk@classlawgroup.com*
*jbk@classlawgroup.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jennifer D. Bennett (State Bar No. 296726)
Neil K. Sawhney (State Bar No. 300130)
Gupta Wessler PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*
*neil@guptawessler.com*

Benjamin Elga (*pro hac vice* forthcoming)
Alice Buttrick (*pro hac vice* forthcoming)
Justice Catalyst Law, Inc.
81 Prospect St., 7th Floor
Brooklyn, NY 11201
(518) 732-6703
*belga@justicecatalyst.org*
*abuttrick@justicecatalyst.org*

Albert Fox Cahn (*pro hac vice* forthcoming)
Surveillance Technology
Oversight Project
40 Rector Street, 9th Floor
New York, NY 10006
*albert@stopspying.org*

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT



# Superior Court of California, County of Alameda
# Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial.  You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110;
>
> - Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
>
> - Agree to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?**  Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
> Or visit the court's website at http://www.alameda.courts.ca.gov/adr

## What Are The Advantages Of Using ADR?

- ***Faster*** –Litigation can take years to complete but ADR usually takes weeks or months.

- ***Cheaper*** – Parties can save on attorneys' fees and litigation costs.

- ***More control and flexibility*** – Parties choose the ADR process appropriate for their case.

- ***Cooperative and less stressful*** – In mediation, parties cooperate to find a mutually agreeable resolution.

- ***Preserve Relationships*** – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

## What Is The Disadvantage Of Using ADR?

- ***You may go to court anyway*** – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

## What ADR Options Are Available?

- ***Mediation*** – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  - **Court Mediation Program**:  Mediators do not charge fees for the first two hours of mediation.  If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o  **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  o  **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  o  **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA  94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA  94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA  94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*)<br><br><br>            TELEPHONE NO.:                    FAX NO. (*Optional*):<br>    E-MAIL ADDRESS (*Optional*):<br>        ATTORNEY FOR (*Name*): | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | CASE NUMBER: |

**INSTRUCTIONS:  All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1.   Date complaint filed: _____.  An **Initial Case Management Conference** is scheduled for:

   Date:                              Time:                              Department:

2.   Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

   ☐ Court mediation          ☐ Judicial arbitration
   ☐ Private mediation        ☐ Private arbitration

3.   All parties agree to complete ADR within 90 days and certify that:

   a.   No party to the case has requested a complex civil litigation determination hearing;
   b.   All parties have been served and intend to submit to the jurisdiction of the court;
   c.   All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d.   Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e.   Case management statements are submitted with this stipulation;
   f.   All parties will attend ADR conferences; and,
   g.   The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
        (TYPE OR PRINT NAME)                              (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____
        (TYPE OR PRINT NAME)                     (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

**ALA ADR-001**

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF DEFENDANT)

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:　　　　　　　FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:　　　　　　　Time:　　　　　　Dept.:　　　　　Div.:　　　　　Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

    ☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:          f. Fax number:
e. E-mail address:             g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

| | CM-110 |
|---|---|
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER: |

**11. Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
   ☐ Bankruptcy ☐ Other *(specify):*
   Status:

**13. Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
       (1) Name of case:
       (2) Name of court:
       (3) Case number:
       (4) Status:
       ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of
   action *(specify moving party, type of motion, and reasons):*

**15. Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*
      <u>Party</u>                  <u>Description</u>                  <u>Date</u>

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are
      anticipated *(specify):*

| | CM-110 |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

THE SUPERIOR COURT OF CALIFORNIA

# COUNTY OF ALAMEDA

 Select Language ▼    Español  |  Tiếng Việt  |  ਪੰਜਾਬੀ  |  简体中文  |  繁體中文

Log In

*DomainWeb*

*your resource for case filing information*

**Buy Credits**  Checkout (0 item(s))
0 Credit(s)

**DomainWeb**    **How This Site Works**    **FAQ**

---

## Case Details

**Case Number: RG20082878**        **Title: Brooks VS Thomson Reuters Corporation**

| Case Summary | Register of Action | Participants | Tentative Rulings |
| Future Hearings | Minutes | | |

**Date**        **Action**

| Date | Action |
|------|--------|
| 1/27/2021 | This Tentative Ruling is made by Judge Winifred Y. Smith<br>COMPLEX DETERMINATION<br><br>The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to one of the three complex judges and an initial case management order will be issued.<br><br>COMPLEX CASE FEES<br><br>Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)<br><br>PROCEDURES<br><br>Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.<br><br>SERVICE OF THIS ORDER<br><br>Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. |

Page: 1 of 1

Back to Search Results

Feedback      Use and Privacy Policy      System Requirements      Contact Us      ® 2021 - Superior Court of

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Eric H. Gibbs (SBN 178658)<br>Gibbs Law Group LLP<br>505 14th Street, Suite 1110, Oakland, California 94612<br><br>TELEPHONE NO.: (510) 350-9700       FAX NO. *(Optional):* (510) 350-9701<br>E-MAIL ADDRESS *(Optional):* ehg@classlawgroup.com<br>ATTORNEY FOR *(Name):* Cat Brooks and Rasheed Shabazz | *FOR COURT USE ONLY* |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, California 94612<br>BRANCH NAME: René C. Davidson Courthouse |

| | |
|---|---|
| PLAINTIFF/PETITIONER: Cat Brooks and Rasheed Shabazz<br>DEFENDANT/RESPONDENT: Thomson Reuters Corporation | CASE NUMBER: |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [ X ] summons
   b. [ X ] complaint
   c. [ X ] Alternative Dispute Resolution (ADR) package
   d. [ X ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [   ] cross-complaint
   f. [ X ] other *(specify documents):* Notice of hearing; tentative ruling on complex case designation

3. a. Party served *(specify name of party as shown on documents served):*

   b. [   ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:

5. I served the party *(check proper box)*
   a. [   ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*       (2) at *(time):*
   b. [   ] **by substituted service.** on *(date):*       at *(time):*       I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [   ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [   ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [   ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [   ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*       from *(city):*       or [   ] a declaration of mailing is attached.

      (5) [   ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

POS-010

| PLAINTIFF/PETITIONER: Cat Brooks and Rasheed Shabazz | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Thomson Reuters Corporation | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

     (1) on *(date):*      (2) from *(city):*

     (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

     (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

       ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   a. ☐ as an individual defendant.

   b. ☐ as the person sued under the fictitious name of *(specify):*

   c. ☐ as occupant.

   d. ☐ On behalf of *(specify):*

       under the following Code of Civil Procedure section:

         ☐ 416.10 (corporation)        ☐ 415.95 (business organization, form unknown)

         ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)

         ☐ 416.30 (joint stock company/association)        ☐ 416.70 (ward or conservatee)

         ☐ 416.40 (association or partnership)        ☐ 416.90 (authorized person)

         ☐ 416.50 (public entity)        ☐ 415.46 (occupant)

                                           ☐ other:

7. **Person who served papers**

   a. Name:

   b. Address:

   c. Telephone number:

   d. **The fee** for service was: $

   e. I am:

     (1) ☐ not a registered California process server.

     (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

     (3) ☐ a registered California process server:

         ☐ owner    ☐ employee    ☐ independent contractor.

       (ii)   Registration No.:

       (iii)   County:

8. ☐ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     **or**

9. ☐ **I am a California sheriff or marshal and I** certify that the foregoing is true and correct.

Date:

▶

_____      _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      (SIGNATURE)