1
2
3
4
5
6

Susan D. Fahringer, Bar No. 21567
SFahringer@perkinscoie.com
Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna M. Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Gabriella Gallego, Bar No. 324226
GGallego@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

7

Attorneys for Defendant
Thomson Reuters Corporation

8

9

# UNITED STATES DISTRICT COURT

10

## NORTHERN DISTRICT OF CALIFORNIA

11

### SAN FRANCISCO DIVISION

12

13
14
15
16
17
18
19
20
21

CAT BROOKS and RASHEED
SHABAZZ, individually and on behalf of
all others similarly situated,

                    Plaintiffs,

        v.

THOMSON REUTERS CORPORATION,

                    Defendant.

Case No. 3:21-cv-01418-EMC

**NOTICE OF DEFENDANT'S MOTION TO
DISMISS PURSUANT TO FRCP 12(b)(6),
AND MOTION TO STRIKE PURSUANT
TO CALIFORNIA CODE OF CIVIL
PROCEDURE § 425.16, AND
MEMORANDUM IN SUPPORT**

Date:        June 3, 2021
Time:        1:30 p.m.
Place:       Courtroom 5, 17th Floor
Judge:      Hon. Edward M. Chen

22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.  NOTICE OF MOTION AND MOTION ................................................................................. 1

II.  STATEMENT OF ISSUES .............................................................................................. 1

III.  INTRODUCTION ........................................................................................................ 2

IV.  BACKGROUND .......................................................................................................... 3

    A.  Thomson Reuters and the CLEAR Research Platform ............................................... 3

    B.  Plaintiffs ................................................................................................................. 5

V.  ARGUMENT .............................................................................................................. 6

    A.  Legal Standard Under Federal Rule of Civil Procedure 12(b)(6) ............................... 6

    B.  Plaintiffs Fail to Plead Facts Establishing Essential Elements of Their Claims ..................................................................................................................... 7

        1.  Plaintiffs have not stated a common law publicity claim ........................... 7

            a.  Plaintiffs have not alleged the "use" or "appropriation" of their identities necessary to establish a common law publicity claim ............................................................................ 7

            b.  Plaintiffs' right of publicity claim is barred by the First Amendment ...................................................................................... 9

                (i)  There is a strong public interest in the information made available through CLEAR ..................................... 10

                (ii)  Plaintiffs fail to allege a substantial competing interest sufficient to overcome the public interest in access to information available in CLEAR ...................... 12

                (iii)  The injunction that Plaintiffs seek would be an impermissible prior restraint ............................................. 14

        2.  Plaintiffs have not stated a claim for violation of the UCL ..................... 14

            a.  Plaintiffs have not established an "unlawful" act or practice ....... 14

            b.  Plaintiffs have not established an "unfair" practice ..................... 15

                (i)  Thomson Reuters' conduct is not "unfair" because it is expressly permitted by the CCPA .............................. 15

                (ii)  Thomson Reuters' conduct is not "unfair" under any of the tests employed by California courts ....................... 16

1

**TABLE OF CONTENTS**
(continued)

2

Page

3          c.       Plaintiffs' UCL claim fails because they have not pled an
                    inadequate remedy at law.................................................................. 18

4       3.       Plaintiffs have not stated a claim for unjust enrichment........................... 18

5    C.    Plaintiffs' Claims Are Barred by the Communications Decency Act.................. 19

6       1.       Thomson Reuters provides an "interactive computer service"................. 19

7       2.       Plaintiffs seek to hold Thomson Reuters liable as a "publisher" or
                    "speaker"............................................................................................ 20

8       3.       Thomson Reuters is not the "information content provider" with
                    respect to the information content at issue.............................................. 21

9    D.    The Court Should Strike the Complaint Under California's Anti-SLAPP
            Statute............................................................................................................ 23

10       1.       Publishing the CLEAR profiles is protected activity............................... 24

11       2.       Plaintiffs cannot show a probability of prevailing at trial....................... 25

12 VI.    CONCLUSION............................................................................................................ 25

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. United States*,
509 U.S. 544 (1993) .................................................................................................14

*Aligo v. Time-Life Books, Inc.*,
No. C 94-20707 JW, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ...........................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................6, 7

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988), *as amended* (May 11, 1990) ....................................6

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ..............................................................................................25

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ..........................20, 21

*Barrett v. Rosenthal*,
40 Cal. 4th 33 (2006) ..............................................................................................24

*Barry v. State Bar of Cal.*,
2 Cal. 5th 318 (2017) ..............................................................................................23

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) .................................................................................................13

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ................................................................................22

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) ..................................................................................24

*Browne v. Avvo, Inc.*,
525 F. Supp. 2d 1249 (W.D. Wash. 2007) ..............................................................12

*Callahan v. Ancestry.com Inc.*,
No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...............20, 21, 23

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) ....................................................................................................................20

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...........................................................................19, 21

*Carlisle v. Fawcett Publ'ns, Inc.*,
201 Cal. App. 2d 733 (1962) ..................................................................................10

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3   CASES (CONT.)

4   *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*,
    354 S.W.3d 234 (Mo. Ct. App. 2011)......................................................................................12

5

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
6       20 Cal. 4th 163 (1999) ...........................................................................................................15

7   *Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975).........................................................................................................10, 13

8

*Cross v. Facebook, Inc.*,
9       14 Cal. App. 5th 190 (2017) ....................................................................................................7

10  *DC Comics v. Pac. Pictures Corp.*,
    706 F.3d 1009 (9th Cir. 2013)................................................................................................24

11

*Dora v. Frontline Video, Inc.*,
12      15 Cal. App. 4th 536 (1993) ............................................................................................13, 15

13  *Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001)..................................................................................................15

14

*Dreamstime.com, LLC v. Google, LLC*,
15      No. C 18-01910 WHA, 2019 WL 2372280 (N.D. Cal. June 5, 2019)....................................11

16  *Dunkin v. Boskey*,
    82 Cal. App. 4th 171 (2000) ...................................................................................................18

17

*Dyroff v. Ultimate Software Group, Inc.*,
18      934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020)....................................19

19  *Eastwood v. Super. Ct. for Cty. of L.A.*,
    149 Cal. App. 3d 409 (1983)..............................................................................................7, 10

20

*Ebeid v. Facebook, Inc.*,
21      No. 18-CV-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ....................................21

22  *Exeltis USA Inc. v. First Databank, Inc.*,
    No. 17-CV-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017)..................................25

23

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
24      521 F.3d 1157 (9th Cir. 2008)...........................................................................................19, 22

25  *Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ..................................................................................................9

26

*Fraley v. Facebook, Inc.*,
27      830 F. Supp. 2d 785 (N.D. Cal. 2011) .....................................................................................8

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

CASES (CONT.)

*Gardiner v. Walmart Inc.*,
No. 20-cv-04618-JSW (N.D. Cal. Mar. 5, 2021), ECF No. 43 ................................16

*Gates v. Discovery Communications, Inc.*,
34 Cal. 4th 679 (2004) ...........................................................................................13

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ...........................................................................9, 10, 12

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) ..................................................................23

*Good Gov't Grp. of Seal Beach, Inc. v. Super. Ct.*,
22 Cal. 3d 672 (1978) .............................................................................................23

*Huynh v. Quora, Inc.*,
— F. Supp. 3d —, No. 5:18-cv-07597-BLF, 2020 WL 7495097 (N.D. Cal.
Dec. 21, 2020) .........................................................................................................18

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ..............................................................16, 17

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................8, 9

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................................3

*In re: Zoom Video Commc'ns Inc. Priv. Litig.*,
No. 20-CV-02155-LHK, 2021 WL 930623 (N.D. Cal. Mar. 11, 2021) ............20, 22

*Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
175 F.3d 848 (10th Cir. 1999)..................................................................................12

*Julian v. TTE Tech., Inc.*,
No. 20-cv-02857-EMC, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) .................18

*Jurin v. Google Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010)....................................................................21

*Kwikset Corp. v. Super. Ct. of Orange Cnty.*,
51 Cal. 4th 310 (2011) ............................................................................................14

*La Park La Brea A LLC v. Airbnb, Inc.*,
285 F. Supp. 3d 1097 (C.D. Cal. 2017) ...................................................................21

*Loo v. Toyota Motor Sales, USA, Inc.*,
No. 19-cv-00750-VAP, 2019 WL 7753448 (C.D. Cal. Dec. 20, 2019)...................18

-v-

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

3

CASES (CONT.)

4

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................18

5

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007).................................................................................17

6

7

*Lugosi v. Universal Pictures*,
    25 Cal. 3d 813 (1979) .............................................................................................7

8

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013)................................................................................24

9

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017)..................................................................................9

10

11

*McCann v. Lucky Money, Inc.*,
    129 Cal. App. 4th 1382 (2005) ..............................................................................16

12

*Michaels v. Internet Entm't Grp., Inc.*,
    5 F. Supp. 2d 823 (C.D. Cal. 1998)...........................................................................8

13

14

*Mortg. Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*,
    999 A.2d 184 (N.H. 2010) .....................................................................................14

15

16

*New Kids On The Block v. News Am. Publ'g, Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992)..........................11, 24

17

*Okla. Publ'g Co. v. Dist. Ct. In & For Okla. Cnty.*,
    430 U.S. 308 (1977)..............................................................................................13

18

19

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995)................................................................................12

20

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007)................................................................................21

21

22

*Perfect 10, Inc. v. Google, Inc.*,
    No. CV 04-9484 AHM (SHx), 2010 WL 9479060 (C.D. Cal. July 30, 2010) ,
    *aff'd*, 653 F.3d 976 (9th Cir. 2011) .........................................................................7

23

24

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ......................................................................8

25

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1222 (N.D. Cal. 2014) ......................................................................8

26

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018), *as amended*, 897 F.3d 1224 (9th Cir. 2018) ...........................25

27

28

# TABLE OF AUTHORITIES
### (continued)

Page(s)

CASES (CONT.)

*Reynolds v. Binance Holdings Ltd.*,
 481 F. Supp. 3d 997 (N.D. Cal. 2020) ...................................................................5

*Rojas-Lozano v. Google, Inc.*,
 159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...............................................................17

*Simmons v. Allstate Ins.*,
 92 Cal. App. 4th 1068 (2001) ..............................................................................23

*Smith v. Daily Mail Publ'g Co.*,
 443 U.S. 97 (1979) ........................................................................................12, 13

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020)................................................................................18

*Stayart v. Google Inc.*,
 783 F. Supp. 2d 1055 (E.D. Wis. 2011), *aff'd*, 710 F.3d 719 (7th Cir. 2013) .........................22

*The Fla. Star v. B.J.F.*,
 491 U.S. 524 (1989)..............................................................................................13

*United States v. Alvarez*,
  617 F.3d 1198 (9th Cir. 2010)..............................................................................11

*Wilbanks v. Wolk*,
 121 Cal. App. 4th 883 (2004) ..............................................................................24

*Zeran v. Am. Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997).................................................................................19

STATUTES

47 U.S.C. § 230...................................................................................19, 20, 21, 25

Cal. Civ. Code § 1798.115....................................................................................15

Cal. Civ. Code § 1798.120....................................................................................15

Cal. Civ. Code § 1798.150....................................................................................16

Cal. Civ. Code § 3344...........................................................................................15

Cal. Civ. Proc. Code § 425.16.............................................................................. 24

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**OTHER AUTHORITIES**

Privacy Torts § 6:9 (2020) .................................................................................................10

Restatement (Second) of Torts § 652C cmt. d (1977) .................................................8, 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 3, 2021 at 1:30 p.m. or as soon thereafter as this Motion may be heard in this Court, Defendant Thomson Reuters Corporation ("Thomson Reuters"), by and through its counsel of record, will and does move the Court for an Order dismissing the Complaint with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and for an Order striking the Complaint with prejudice pursuant to Cal. Civ. Proc. Code § 425.16(b)(1). This Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, the pleadings and papers on file in this action, any argument and evidence to be presented at hearing, and any other matters that may properly come before the Court.

## II.   STATEMENT OF ISSUES

1.      Whether Plaintiffs have failed to establish the "use" or "appropriation" of their identities that is required to state a claim for violation of the common law right of publicity.

2.      Whether Plaintiffs have failed to establish that their private economic and non-economic interests in their names and likenesses outweigh the public interest in the dissemination of information available in Thomson Reuters' CLEAR database.

3.      Whether Plaintiffs have failed to allege facts showing that Thomson Reuters engaged in unlawful or unfair business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

4.      Whether Plaintiffs' claim for unjust enrichment should be dismissed because it is not a valid claim under California law.

5.      Whether Plaintiffs' claims seeking equitable relief should be dismissed because Plaintiffs have failed to allege facts showing that they lack an adequate remedy at law.

6.      Whether the Communications Decency Act ("CDA"), 28 U.S.C. § 230, bars Plaintiffs' claims because they seek to hold Thomson Reuters, the provider of an interactive computer service, liable as a publisher or speaker of third-party content.

7.      Whether the Complaint should be stricken and attorneys' fees and costs awarded under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, because Plaintiffs' claims

-1-

1    arise from Thomson Reuters' exercise of free speech and Plaintiffs cannot show the claims are

2    legally sufficient and factually substantiated.

3                          **III.    INTRODUCTION**

4          Thomson Reuters is a leading provider of worldwide news and business information

5    services, delivering highly specialized information-enabled software and tools for legal, tax,

6    accounting, and compliance professionals. One of the products that Thomson Reuters offers to

7    authorized customers is a subscription-based, online platform referred to as "CLEAR." CLEAR

8    helps streamline investigative research by collecting and aggregating information from sources

9    such as the internet, public records, and third-parties, and makes it easy for authorized customers

10   to locate and search that information in a reliable and accurate way.

11         Plaintiffs Cat Brooks and Rasheed Shabazz ("Plaintiffs") allege that Thomson Reuters,

12   through its CLEAR product, offers access to information about them without compensating them

13   or obtaining their consent. They assert claims for violation of their common law right of publicity,

14   violation of the UCL, and unjust enrichment. Plaintiffs' claims fail for multiple reasons, each of

15   which independently justifies dismissal.

16         ***First,*** Plaintiffs have not alleged facts establishing the essential elements of any of their

17   claims. Their common law right of publicity claim fails because the claim requires a showing that

18   Thomson Reuters used and appropriated Plaintiffs' names or likenesses, but Plaintiffs have

19   instead alleged merely the display of their names, information, and photographs in search results

20   generated by CLEAR, which does not qualify as either use or appropriation under common law.

21   This claim also fails because Thomson Reuters' speech is protected by the First Amendment to

22   the U.S. Constitution, and Plaintiffs' private interests do not outweigh the public interest in the

23   dissemination of the information available through CLEAR.

24         Plaintiffs' claims for violation of the UCL fail because Plaintiffs have not alleged facts

25   showing that Thomson Reuters' conduct is "unlawful" or "unfair." Nor can they, because the

26   California Consumer Protection Act ("CCPA"), Cal. Civ. Code § 1796.100, *et seq.*, permits the

27   conduct at issue here—the alleged collection, disclosure, and sale of personal information—

28   subject to certain requirements, which Plaintiffs do not allege Thomson Reuters failed to meet.

*See* Compl. ¶¶ 49, 57. The UCL claims also should be dismissed because any relief under the UCL is inherently equitable in nature, but Plaintiffs have not alleged that they lack an adequate remedy at law.

Plaintiffs' unjust enrichment claim fails because that is a form of relief, not a claim, under California law, and because Plaintiffs have not shown they lack an adequate remedy at law.

**Second**, even if Plaintiffs had pled all essential elements of their claims, the claims still would fail because they seek to impose liability on Thomson Reuters for conduct that is protected by Section 230 of the CDA. The CDA provides a safe harbor that immunizes providers of an interactive computer service against claims that treat the provider as a publisher or speaker of content provided by another. Thomson Reuters is entitled to that protection here: it provides an interactive computer service, and Plaintiffs' claims treat it as the publisher or speaker of content supplied by third parties.

In addition, because the Complaint seeks to restrain constitutionally protected speech in a public forum about a matter of public interest and Plaintiffs are unlikely to succeed on the merits, the Court should strike the Complaint under California's anti-SLAPP statute.

## IV.    BACKGROUND

### A.    Thomson Reuters and the CLEAR Research Platform

Thomson Reuters, based in Toronto, Canada, is "best known for its news agency (Reuters) and its online legal-research service (Westlaw)." Compl. ¶¶ 1, 8.[1] Thomson Reuters' CLEAR product is a research platform that serves as a "records resource" that brings key content on individuals, assets, and businesses together into a single working environment to allow more streamlined and efficient searches of that content.[2] The content made available through the

---

[1] For purposes of this Motion, Thomson Reuters will treat the allegations in the Complaint as true but does not admit that they are accurate. While it is not relevant to this Motion, Westlaw and CLEAR are products offered by Thomson Reuters' subsidiary, West Publishing Corporation.

[2] *The Smarter Way to Get Your Investigative Facts Straight*, Thomas Reuters, https://www.thomsonreuters.com/content/dam/openweb/documents/pdf/legal/fact-sheet/clear-brochure.pdf (last visited Apr. 5, 2021), cited at Compl. ¶ 20 and n.8. By repeatedly citing to the Thomson Reuters website and quoting from many of its pages, the Complaint incorporates the entire site by reference, and the Court may consider it in deciding this Motion. *See In re Google*

CLEAR platform is not created by Thomson Reuters; rather, Thomson Reuters "collects," "purchases," and "consolidates" the data "from public records, government sources, Internet searches, and third-party data brokers." *Id.* ¶¶ 14, 16.

CLEAR is used for a variety of purposes, including to prevent money laundering, to verify and "know your vendor," to facilitate commercial lending, and to prevent healthcare and insurance fraud.[3] CLEAR is also used to find absent parents and to protect victims of human trafficking and sexual exploitation.[4] CLEAR is available only to "authorized businesses and government organizations for their legitimate internal business uses," whose "use must comply with applicable laws."[5]

The Complaint focuses on two search tools made available through CLEAR: "Person Search" and "Risk Inform." *See, e.g.*, *id.* ¶ 23. Person Search allows authorized, credentialed subscribers[6] to search the CLEAR database using "information such as an individual's name, address, contact information, social security number, date of birth, age range, or driver's license number." *Id.* ¶ 24. "Risk Inform" enables such subscribers to customize their searches to find public records that are relevant to their assessments of risks relating to businesses and individuals.[7] To do this, subscribers "establish [their] own risk level by assigning certain scores

_____

*Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (doctrine of incorporation by reference "permits a court to consider a document 'if the Plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim'") (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

[3] *See Locate, Identify, and Connect the Facts You Need*, Thomas Reuters, https://legal.thomsonreuters.com/en/products/clear-investigation-software (last visited Apr. 5, 2021) (use cases), cited at Compl. ¶ 11, n.2.

[4] *See Online Investigation Software CLEAR Case Studies*, Thomas Reuters, https://legal.thomsonreuters.com/en/products/clear-investigation-software/case-studies (last visited Apr. 5, 2021).

[5] *See Public Records Privacy Statement*, Thomas Reuters, https://legal.thomsonreuters.com/en/legal-notices/privacy-records (last visited Apr. 5, 2021) ("Public Records Products [like CLEAR] are not accessible by the general public. They are only available to authorized, credentialed customers.").

[6] *Id.*

[7] *Electronic Risk Assessment CLEAR Risk Inform*, https://legal.thomsonreuters.com/en/products/clear-investigation-software/clear-risk-inform (last visited Apr. 5, 2021), cited at Compl. ¶ 31 n.10 (with Risk Inform, "Thomson Reuters has simplified and organized criminal records across all state and federal criminal jurisdictions," and

-4-

for various risk factors," which allows subscribers to "quickly review risk indicators such as arrests, bankruptcies, redundant SSNs, synthetic identity, and more."[8]

**B.    Plaintiffs**

Ms. Brooks is an actor and Mr. Shabazz is a journalist. *Id.* ¶¶ 41, 50. Both are self-described "activist[s]," *see id.* ¶¶ 6, 7, and substantial information about them is readily available online.[9] Plaintiffs allege that Thomson Reuters "sold" access to information about them through CLEAR, *id.*, including their current and former names, their partially redacted Social Security Numbers, and their addresses, phone numbers, businesses, licenses, employers, and associates, *id.* ¶¶ 43, 53.

Plaintiffs have not alleged that CLEAR has been used in any illegitimate way with respect to either of them. Rather, they allege that Thomson Reuters did not pay them "for the right to sell [their] information," *id.* ¶¶ 42, 51, and that they do not want information about them made available through CLEAR. But Plaintiffs do not allege having taken any steps to expunge the public records that CLEAR allegedly "aggregate[s]." *Id.* ¶¶ 14, 41-49, 50-57. And Plaintiffs admit that Thomson Reuters made a link available on its website that would have allowed them to opt out of the sale of their personal information. Plaintiffs saw and clicked on this link, but chose not to complete the opt-out process because it required them to verify their identities by scanning their driver's licenses and uploading photos of themselves. *Id.* ¶¶ 49, 57. Plaintiffs allege that they did not want to provide that information to Thomson Reuters even though their claims are based on the allegation that Thomson Reuters has this (or substantially similar) information already, and

---

"CLEAR Risk Inform lets you automate and configure your risk analysis to fit the unique requirements of your organization").

[8] *See supra* note 3, cited at Compl. ¶ 11, n.2.

[9] Searching Google for "Cat Brooks Oakland" and "Rasheed Shabazz Oakland" reveals several websites with photos and other personal information about Plaintiffs and their professional and personal lives—including a Wikipedia page dedicated to Ms. Brooks, which indicates that she ran for mayor of Oakland in 2018. *See Cat Brooks*, Wikipedia, https://en.wikipedia.org/wiki/Cat_Brooks (last visited Apr. 5, 2021). The court may "take judicial notice of the fact that the internet, Wikipedia, and journal articles are available to the public," even if "it may not take judicial notice of the truth of the matters asserted therein." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1002 (N.D. Cal. 2020) (quoting *Bruce v. Chaiken*, No. 15-cv-00960-TLN-KJN, 2019 WL 645044, at *1 (E.D. Cal. Feb. 15, 2019)).

Thomson Reuters' privacy statement makes clear that "[p]ersonal information that we may collect from individuals through their use of our products and services is never added to our Public Records Products."[10]

Plaintiffs each allege that a Risk Inform report "penalizes" them for changing their names, but they do not allege who ran the reports, how they were penalized, or that anything at all happened to them as a result. *Id.* ¶¶ 44, 55. Mr. Shabazz alleges that some of the information made available about him is inaccurate, *id.* ¶ 54, but he does not allege that any inaccuracy affected or prejudiced him in any way, nor that he used processes available on Thomson Reuters' website to correct inaccurate information.[11] Plaintiffs allege that they "lost money" because "[b]ut for its violation of law, Thomson Reuters would have either paid Ms. Brooks and Mr. Shabazz for consent to sell their information or ceased the sale of their information." *Id.* ¶ 117. They also allege that they lost privacy and the "right to control the dissemination of their information." *Id.* ¶¶ 87 (privacy), 101 (control).

## V.    ARGUMENT

Plaintiffs have not pled facts establishing essential elements of any of their claims, and even if they had done so, their claims would be barred by the CDA. Each of these fatal flaws independently justifies dismissal. In addition, the Complaint should be stricken under California's anti-SLAPP statute.

### A.    Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests the legal adequacy of a complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *as amended* (May 11, 1990). A complaint must contain enough factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

---

[10] *See supra* note 5 (privacy policy).
[11] *Id.* ("If you believe that information we have associated with you in our Public Records Products is incorrect, you are encouraged to submit a correction request via the Public Records Data Subject Portal.").

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555 (2007)).

**B.     Plaintiffs Fail to Plead Facts Establishing Essential Elements of Their Claims**

> **1.     Plaintiffs have not stated a common law publicity claim**
>
> > **a.     Plaintiffs have not alleged the "use" or "appropriation" of their identities necessary to establish a common law publicity claim**

The common law right of publicity does not prohibit the mere publication of facts about a person. Rather, it protects the "commercially exploitable opportunities" that result from "the *reaction* of the public to [a] name and likeness." *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 823 (1979) (emphasis added). To state a claim for violation of this right, a plaintiff must establish "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Super. Ct. for Cty. of L.A.*, 149 Cal. App. 3d 409, 417 (1983). Failure to establish any of these elements is fatal to the claim. Here, Plaintiffs fail to establish at least the first two.

The display of a plaintiff's name or likeness in third-party content, without more, does not qualify as "use" of a person's identity for purposes of a right of publicity claim, even if the defendant profits from it. For example, in *Perfect 10, Inc. v. Google, Inc.*, the court held that Google did not "use" models' identities when it displayed thumbnails of their photos from third-party websites in response to search queries. No. CV 04-9484 AHM (SHx), 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010) (dismissing right of publicity claims), *aff'd*, 653 F.3d 976 (9th Cir. 2011). And in *Cross v. Facebook, Inc.*, the court held that Facebook did not "use" the plaintiff's identity by placing ads near a user-created Facebook page that included the name and likeness of the plaintiff. 14 Cal. App. 5th 190, 209 (2017) (affirming dismissal of right of publicity claims).

The result should be the same here. The gravamen of Plaintiffs' right of publicity claim is that their names and likenesses, as they appear in various third-party sources, are available on the CLEAR platform (along with the names and likenesses of millions of other people). Compl. ¶¶ 2, 82. As in *Perfect 10*, Thomson Reuters' Person Search tool merely locates and provides access to

information from other third-party sources. *Id.* ¶ 83. And as in *Cross*, the Risk Inform tool merely constitutes Thomson Reuters' placement of its own content adjacent to that third-party content. *Id.* These facts are insufficient to establish "use" for purposes of a right of publicity claim.[12]

"Appropriation" requires that a defendant take "advantage of [a plaintiff's] reputation, prestige, or other value associated with [him or her], *for purposes of* publicity." Restatement (Second) of Torts § 652C cmt. d (1977) (emphasis added). This would involve, for example, exploiting a person's name and likeness for promotional purposes or to imply endorsement. *See, e.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1216 (N.D. Cal. 2014) (finding appropriation where "reminder emails" sent to an individual's personal contacts were designed to imply endorsement); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 791 (N.D. Cal. 2011) (finding appropriation where "sponsored stories" used a person's name and likeness to imply endorsement). Alternatively, appropriation could involve exploiting someone's prestige or reputation, such as by using a celebrity's status as a sex symbol to sell adult video subscriptions. *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 837 (C.D. Cal. 1998) (finding claim to be well-pled where an adult entertainment company ran radio advertisements that named Pamela Anderson and Bret Michaels).

Appropriation therefore requires more than an allegation that a defendant sold information about a person, even if that data includes a plaintiff's "names, image[], and likeness[]," as Plaintiffs allege here. For example, in *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, the plaintiffs alleged that Facebook violated their common law right of publicity because it profited from disclosing their personal information to app developers. 402 F. Supp. 3d 767, 776, 780 (N.D. Cal. 2019). The court dismissed this claim because "[t]he allegations about

---

[12] If including Plaintiffs' names and likenesses within CLEAR *were* "use," it would be incidental use, which "does not give rise to liability." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1254 (N.D. Cal. 2014) (quoting *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009)); *see also Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 WL 715605, at *3 (N.D. Cal. Dec. 19, 1994) (granting motion to dismiss where infomercial displayed photo of a police officer responding to a Vietnam War protest because the photo was featured on "one of dozens of Rolling Stone covers used in the program and [was] insignificant to the commercial purpose of selling the music anthology").

-8-

how Facebook shared the plaintiffs' information with third parties is categorically different from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to promote a product or service." *Id.* at 803. The court dismissed the claim with prejudice because the factual scenario was so "categorically different" from a misappropriation scenario that the court "[could not] conceive of a way that the plaintiffs could successfully allege this claim." *Id.* (citing *Comedy III Prods. Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (2001), *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 415 (9th Cir. 1996), and *Perkins*, 53 F. Supp. 3d at 1217).

Similarly, here, Plaintiffs' common law right of publicity claim should be dismissed with prejudice because the scenario described by Plaintiffs is "categorically different" from one where a defendant uses a plaintiff's name and likeness to take "advantage of [the plaintiff's] reputation, prestige, or other value associated with [him or her], *for purposes of* publicity." Restatement (Second) of Torts § 652C cmt. d (1977) (emphasis added). Unlike the defendants in *Perkins*, *Fraley*, and *Michaels*, Thomson Reuters has neither suggested that Plaintiffs endorse CLEAR nor plausibly exploited Plaintiffs' reputation or prestige in any way. Simply presenting factual information about Plaintiffs to subscribers is not appropriation within the meaning of the common law right of publicity.

Finally, to the extent that Plaintiffs' common law right of publicity claim is based on the distribution of photographs, it must also be dismissed as "preempted by section 301 of the Copyright Act." *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918-19 (1996).

**b.      Plaintiffs' right of publicity claim is barred by the First Amendment**

Even if Plaintiffs had established all elements of a right of publicity claim, the claim would still fail because Thomson Reuters' speech about Plaintiffs is protected by the First Amendment. "The common law right [of publicity] does not provide relief for every publication of a person's name or likeness." *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001). Rather, "[t]he First Amendment requires that the right to be protected from unauthorized publicity be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guarant[ees] of freedom of

-9-

speech and of the press." *Id.* at 409-10 (internal quotation marks and citations omitted). To do this, "a court must first consider the nature of the precise information conveyed and the context of the communication to determine the public interest in the expression. The public interest must then be weighed against the plaintiffs' economic interests in cases of this sort and the plaintiffs' noneconomic interests if the publicity right relied on is rooted in privacy." *Id.* at 410.

Here, the public interest in the dissemination of news and information about Plaintiffs, and the public interest in the freedom to express an opinion, outstrips Plaintiffs' alleged economic and noneconomic interests.

**(i)     There is a strong public interest in the information made available through CLEAR**

The dissemination of news and information about current and historical events is quintessential First Amendment-protected speech. *Carlisle v. Fawcett Publ'ns, Inc.*, 201 Cal. App. 2d 733, 746 (1962). Recognizing the strong public interest in protecting this speech, a news-reporting privilege applies where, as here, a plaintiff seeks to impose restraints on the publication of truthful facts about individuals who have placed themselves in the public eye. *Id.* at 746-47 ("Certainly, the accomplishments . . . of those who have achieved a marked reputation or notoriety by appearing before the public such as actors and actresses, professional athletes, [or] public officers . . . may legitimately be mentioned and discussed in print or on radio or television."). This privilege extends both to the "current" facts alleged in the Complaint, such as Plaintiffs' current names, addresses, and associates, *id.* at 745, and to "historical" facts, such as Plaintiffs' previous names and addresses, *Gionfriddo*, 94 Cal. App. 4th at 411 ("[T]he public interest is not limited to current events; the public is also entitled to be informed and entertained about our history."); *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("[A] public benefit is performed by the reporting of the true contents of [public] records by the media.").

Indeed, this privilege extends not only to news about public figures, such as Plaintiffs—one of whom is an actor, the other a journalist, and both of whom are activists, *see* Compl. ¶¶ 41, 50—but also to news about private individuals. *See Eastwood*, 149 Cal. App. 3d at 421; *see also* Privacy Torts § 6:9 (2020) ("[T]he newsworthiness-public interest privilege . . . has been freely

-10-

1  defined to extend to an almost limitless variety of matters about private individuals which are of

2  interest to the viewing, reading or listening public.") (collecting cases). When evaluating whether

3  the First Amendment bars a right of publicity claim, courts consider first and foremost the

4  "purpose" of the alleged use of the plaintiff's name or likeness. *New Kids On The Block v. News*

5  *Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992).

6  "If the purpose is 'informative or cultural' the use is immune; 'if it serves no such function but

7  merely exploits the individual portrayed, immunity will not be granted.'" *Id.* (quoting Peter L.

8  Felcher & Edward L. Rubin, *Privacy, Publicity and the Portrayal of Real People by the Media*,

9  88 Yale L.J. 1577, 1596 (1979)).

10  Here, the Complaint establishes that the purpose for Thomson Reuters' CLEAR service is

11  to inform. *See, e.g.*, Compl. ¶¶ 1, 2, 11, 24 (repeatedly referencing "data points" and various

12  forms of factual "information," and incorporating documents that demonstrate that CLEAR is

13  used to prevent money laundering, to verify and "know your vendor," to facilitate commercial

14  lending, to prevent healthcare and insurance fraud,[13] to protect victims of human trafficking and

15  sexual exploitation, and to find absent parents[14]). There certainly is no plausible allegation that,

16  by providing a tool to search and analyze third-party information about Plaintiffs, Thomson

17  Reuters is "exploit[ing]" either Plaintiff to garner attention for itself or its services, suggest an

18  endorsement, or otherwise. *See also Dreamstime.com, LLC v. Google, LLC*, No. C 18-01910

19  WHA, 2019 WL 2372280, at *2 (N.D. Cal. June 5, 2019) ("[T]he First Amendment protects as

20  speech the results produced by an Internet search engine.") (citations omitted).[15]

21

22  _____

23  [13] *See supra* note 3 (use cases), cited at Compl. ¶ 11, n.2.

24  [14] *See supra* note 4.

[15] The First Amendment also protects speech where innocent mistakes are made as to the facts.
*Compare, e.g.*, *United States v. Alvarez*, 617 F.3d 1198, 1206-07 (9th Cir. 2010) ("[T]he [U.S.

25  Supreme] Court has consistently held that when a speaker publishes a false statement of fact
about a matter of public concern, such a statement can be *punished* only upon some showing of

26  *malice* (as opposed to mere negligence), because the malice requirement avoids the potential for
punishing speakers who simply make innocent errors.") (footnote omitted), *with* Compl. ¶ 54

27  (alleging that some of the information made available about him is inaccurate without alleging
any malice *or* negligence by Thomson Reuters).

28

-11-

The First Amendment likewise protects opinions. *Partington v. Bugliosi*, 56 F.3d 1147, 1152 (9th Cir. 1995). Thus, to the extent that the Plaintiffs' Risk Inform scores "do not imply the assertion of an objective fact" and "are not capable of being proved true or false," *id.* at 1153, they are non-actionable opinions. *See, e.g.*, *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 853 (10th Cir. 1999) (holding that statements by a credit rating service about the creditworthiness of bonds were protected by the First Amendment); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1252 (W.D. Wash. 2007) (Avvo's ratings and classifications of attorneys were protected speech); *see also Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 242-43 (Mo. Ct. App. 2011) (noting that "[a]lthough one may disagree with [the Better Business Bureau's] evaluation of the underlying objective facts [that inform its rating of a business], the rating itself cannot be proved true or false . . . [and thus], the rating is protected as opinion under the First Amendment").

   **(ii)**  **Plaintiffs fail to allege a substantial competing interest sufficient to overcome the public interest in access to information available in CLEAR**

As a general matter, "state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979). Thus, "[P]laintiffs can only prevail if they demonstrate a substantial competing interest." *Gionfriddo*, 94 Cal. App. 4th at 414. They have not. **First**, Plaintiffs fail to allege significant economic interests in their names and likenesses. They claim that Thomson Reuters did not pay them "for the right to sell [their] information," Compl. ¶¶ 42 (Brooks), 51 (Shabazz), but have not alleged facts to plausibly suggest a significant value associated with any missing payment. To the contrary, a single Person Search report on CLEAR is sold for just $5. *Id.* ¶ 62. Nor do Plaintiffs allege that Thomson Reuters' inclusion of their names and likenesses in CLEAR diminishes their ability to capitalize on their own publicity or otherwise profit from their own names and likenesses through endorsements or otherwise. *See Gionfriddo*, 94 Cal. App. 4th at 415 ("Plaintiffs never suggest how [the defendant's] actions impair their economic interests.").

  **Second**, Plaintiffs claim non-economic privacy interests, but admit that information available on CLEAR is, at least in large part, also available in public records. Compl. ¶¶ 2, 14, 16.

-12-

As the Supreme Court has recognized, "interests in privacy fade when the information involved already appears on the public record." *Cox*, 420 U.S. at 494-95. As an actor and a journalist engaged in activism, Compl. ¶¶ 41, 50, Plaintiffs' privacy interests are diminished further still. *See Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 543-44 (1993) (dismissing publicity claims despite the fact that Plaintiff "spent a good deal of energy avoiding the limelight" because "a person may by his or her own activities or by the force of circumstances become a public personage and thereby relinquish a part of their right of privacy").

Indeed, had Plaintiffs brought a claim for invasion of privacy rather than a right of publicity claim, it would plainly be barred under *Cox* and its progeny. As described in *Gates v. Discovery Communications, Inc.*, the Supreme Court has repeatedly confronted the tension between the media's First Amendment rights to report on current events and information in the public record and the privacy interests of the individuals subject to the reporting. 34 Cal. 4th 679, 696 (2004). In those cases, the Supreme Court has considered the privacy interests of minors facing murder convictions, sex crime victims, and individuals who were illegally phone-tapped—and in no case has the Supreme Court determined that individual privacy interests surpass the free speech rights of the press to disseminate information to the public. *See Cox*, 420 U.S. 469 (17-year-old sex crime victim); *Okla. Publ'g Co. v. Dist. Ct. In & For Okla. Cnty.*, 430 U.S. 308 (1977) (11-year-old murder defendant); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) (14-year-old assailant in classmate shooting); *The Fla. Star v. B.J.F.*, 491 U.S. 524 (1989) (sex crime victim); *Bartnicki v. Vopper*, 532 U.S. 514 (2001) (victim of illegal interception of cell phone conversation). Plaintiffs here, despite alleging potentially well-founded fears surrounding how their personal information might be abused in the hands of bad actors, simply do not possess legally-established privacy interests sufficient to overcome the countervailing interests, enshrined in the First Amendment, in the dissemination of truthful information.

Finally, the alternative methods of relief available to Plaintiffs further diminish their privacy interests. Plaintiffs could take steps to stop the "sale" of their own information through CLEAR by clicking a link on Thomson Reuters' website, *see* Compl. ¶¶ 49, 57; they could move to seal the court records relating to their name changes; or they could seek to expunge public

-13-

records that appear in CLEAR. Although some of these actions would prevent anyone from accessing Plaintiffs' information—not just CLEAR's subscribers—Plaintiffs have undertaken none of them.

### (iii)   The injunction that Plaintiffs seek would be an impermissible prior restraint

Plaintiffs seek a permanent injunction banning Thomson Reuters from "selling" their personal data without consent by making it available through CLEAR, Compl. at 21 (Prayer for Relief), but permanent injunctions that prohibit speech are "classic examples" of prior restraints, *Alexander v. United States*, 509 U.S. 544, 550 (1993). Indeed, "[e]ven when confidential information has allegedly been obtained unlawfully by the publisher, courts have invalidated prior restraints." *Mortg. Specialists, Inc. v. Implode-Explode Heavy Indus., Inc*., 999 A.2d 184, 196 (N.H. 2010). The constitutional protection against prior restraints is even more clearly present where, as here, the information is not "confidential" and was obtained lawfully.

*         *         *

Because Plaintiffs have neither satisfied the elements of a right of publicity claim nor alleged private interests that outweigh the strong public interest in Thomson Reuters engaging in constitutionally protected speech, their right of publicity claim must be dismissed.

### 2.   Plaintiffs have not stated a claim for violation of the UCL

The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200). Here, Plaintiffs allege that Thomson Reuters engaged in unlawful and unfair (but not fraudulent) business practices. Compl. ¶¶ 90-104 (monetary relief), 111-18 (injunctive relief). Yet Plaintiffs have not alleged facts establishing the unlawful or unfair act or practice necessary to state a claim, nor have they shown that they lack an adequate remedy at law as required to seek equitable relief.

### a.   Plaintiffs have not established an "unlawful" act or practice

Plaintiffs allege, as predicate "unlawful" acts, violation of (1) their common law right of publicity, and (2) the statutory right of publicity under California Civil Code Section 3344(a).

-14-

Compl. ¶¶ 93, 94-110. But Plaintiffs have not established a violation of the common law right of publicity for the reasons discussed above in section V.B.1.a. This failure also dooms their effort to establish a Section 3344(a) claim, because such a claim requires a plaintiff to prove "all the elements of the common law cause of action" in *addition* to "a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (citing *Eastwood*, 149 Cal. App. 3d at 417). The Section 3344(a) claim also fails because the "use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign" is expressly permitted under the statute. Cal. Civ. Code § 3344(d). As explained in section V.B.1.b, that permissible use applies here: CLEAR permits credentialed subscribers access to factual information about Plaintiffs—both of whom are in the public eye due to their roles as activists, actors, and journalists. *See* Compl. ¶¶ 41, 50. The alleged conduct thus falls within the "public affairs" exception. *See, e.g.*, *Dora*, 15 Cal. App. 4th at 545.

### b.    Plaintiffs have not established an "unfair" practice

Plaintiffs also base their UCL claims on the allegation that "selling Californians' personal information without consent" constitutes an "unfair" business practice. Compl. ¶ 92. Thomson Reuters' conduct is not "unfair" because it is expressly permitted by statute and because it does not meet any of the tests for "unfair" conduct used by California courts.

### (i)    Thomson Reuters' conduct is not unfair because it is expressly permitted by the CCPA

Plaintiffs base their UCL claim on the alleged sale of personal information without the subject's advance consent. *See* Compl. ¶¶ 92, 98, 101, 113, 117. But "[s]pecific legislation may limit the judiciary's power to declare [business] conduct unfair. If the Legislature has permitted certain conduct . . . courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Here, the legislature has permitted the sale of personal information if there is a mechanism to opt out of such sale. Cal. Civ. Code §§ 1798.115(c), 1798.120 (imposing notice but not consent requirements on the collection, disclosure, and sale of personal information). And Plaintiffs concede that Thomson Reuters made

the required opt-out mechanism available to them. *See, e.g.*, Compl. ¶¶ 46-47, 57 (describing "do not sell my information" link). Accordingly, Plaintiffs have not alleged any unfair conduct.

This case is similar to *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382 (2005). There, the plaintiffs pursued UCL claims for conduct that was regulated by California's Money Transmission Law, Cal. Fin. Code § 1800, *et seq.*, which lacked a private right of action. *See id.* at 1395. But the court dismissed the claim, holding that "[t]he fact that California's comprehensive regulation of Defendants' practices does not label the challenged practices unfair is a . . . defense to any such claim." *Id.* The result here should be the same: because the CCPA regulates the very conduct on which Plaintiffs base their claim and does not label it unfair, and because the CCPA lacks a private right of action for violations of these requirements,[16] Plaintiffs cannot base their UCL claim on the alleged sale of their personal information without consent.

### (ii)     Thomson Reuters' conduct is not "unfair" under any of the tests employed by California courts

Even if the CCPA did not permit the very conduct on which Plaintiffs base their UCL claim, the claim also fails under the tests that California courts use to make that determination. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (describing "balancing," "tethering," and "FTC" tests).

The "balancing test" requires a court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim, and the plaintiff must also allege "immoral, unethical, oppressive, unscrupulous, or substantially injurious" conduct or demonstrate that the defendant's conduct violated an "established public policy." *Id*. at 990. Plaintiffs fail to show any of these factors here. They allege that their information is made more accessible through CLEAR, but the only harms they identify are failing to pay them and making information that is already available to third parties more readily available. Plaintiffs further allege that they were

---

[16] *See* Cal. Civ. Code §§ 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law."), 1798.150(a) (private right of action limited to certain data breaches); *see also, e.g.*, Order Granting Motion to Dismiss and Denying Motion to Strike Class Allegations, *Gardiner v. Walmart Inc.*, No. 20-cv-04618-JSW (N.D. Cal. Mar. 5, 2021), ECF No. 43 (dismissing UCL claim where Plaintiff conceded that CCPA claim "cannot serve as [a] predicate for . . . UCL claim").

"penalized" by a Risk Inform report, but this conclusory allegation is too vague to establish harm. And none of these alleged harms outweigh the utility of Thomson Reuters' conduct, which is substantial. *See supra* § V.B.1.b(i)-(ii); *see also, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1106, 1118 (N.D. Cal. 2016) (holding that plaintiff failed to allege immoral and oppressive conduct where plaintiff alleged that Google used "CAPTCHA" human-user confirmations to "'crowd sourc[e]' the transcription of words that a computer cannot decipher . . . [because] the harm—if any—of typing a single word without knowledge of how Google profits from such conduct does not outweigh the benefit," which included the benefit to users of free Google services). Finally, Plaintiffs do not allege that Thomson Reuters' conduct—providing tools to facilitate searching third-party content—is immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct or that it violated an established public policy. Indeed, they likely *cannot* do so since that tools provide an opt-out mechanism consistent with the CCPA.

The "tethering test" requires that the alleged unfairness be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. Plaintiffs have identified no public policy requiring businesses like Thomson Reuters to obtain consent before making third-party content more readily accessible, nor could they, because the CCPA confirms that the legislature preferred an "opt out" approach over an "advance consent" one. Finally, Plaintiffs have not pled "some actual or threatened impact on competition," because that requires an impact not on them but on Thomson Reuters' competitors. *See Lozano v. AT & T Wireless Servs.*, *Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (recognizing that the "threatened impact on competition" showing is "limited to actions based on unfairness to competitors").

Under the "FTC test," "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *In re Anthem, Inc.*, 162 F. Supp. 3d at 989. As explained above, any alleged injury is minimal, it is outweighed by countervailing First Amendment concerns and the public's interest in the benefits of CLEAR (such as protecting victims of human trafficking and sexual exploitation and finding absent

-17-

parents), and Plaintiffs could reasonably have avoided it by using Thomson Reuters' "do not sell" link or taking other steps to seal or expunge records.

### c.   Plaintiffs' UCL claim fails because they have not pled an inadequate remedy at law

A UCL claim is "equitable in nature." *See Huynh v. Quora, Inc.*, — F. Supp. 3d — , No. 5:18-cv-07597-BLF, 2020 WL 7495097, at *19 (N.D. Cal. Dec. 21, 2020) (citation omitted). A court cannot grant equitable remedies unless "a plain, adequate and complete remedy at law [is] wanting." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020) (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945)); *see also Julian v. TTE Tech., Inc.*, No. 20-cv-02857-EMC, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020) (Chen, J.) ("[A] plaintiff 'must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL.'") (quoting *Sonner*, 971 F.3d. at 844). Plaintiffs here have not alleged that they lack an adequate remedy at law. On the contrary: they seek compensatory damages. *See* Compl. ¶¶ 89; *id.* at 21 (Prayer for Relief); *see also id.* ¶¶ 39, 86, 88, 99 (alleging that Thomson Reuters failed to compensate Plaintiffs for their personal information).

Since Plaintiffs also seek monetary damages for violation of their common law right of publicity, *see id.* ¶ 89, and therefore have an adequate remedy at law with respect to the violation of that right, restitution under the UCL is inappropriate and the UCL claims should be dismissed. *See, e.g.*, *Sonner*, 971 F.3d at 840; *Loo v. Toyota Motor Sales*, *USA, Inc.*, No. 19-cv-00750-VAP (ADSx), 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019).

### 3.   Plaintiffs have not stated a claim for unjust enrichment

Plaintiffs assert a claim for unjust enrichment, Compl. ¶¶ 105-10, but it is well-established that unjust enrichment "is not a cause of action" but rather a request for relief in the form of restitution. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases). Further, unjust enrichment is an equitable remedy, *see Dunkin v. Boskey*, 82 Cal. App. 4th 171, 195 (2000), but Plaintiffs have not pled facts showing that legal remedies are inadequate, *see supra* section V.B.2.c. Accordingly, Plaintiffs' claim for unjust enrichment should be dismissed with prejudice because amendment would be futile.

1

**C.      Plaintiffs' Claims Are Barred by the Communications Decency Act**

2          Even if Plaintiffs had pled facts establishing the essential elements of their claims (they

3   did not), their claims would be barred by the CDA. The CDA was enacted to promote the

4   continued development of interactive computer services and other interactive media, which

5   "represent an extraordinary advance in the availability of educational and informational resources

6   to our citizens." 47 U.S.C. § 230(a)(1). To further this purpose, Section 230 of the CDA ensures

7   that "[n]o provider or user of an interactive computer service shall be treated as the publisher or

8   speaker of any information provided by another information content provider" and provides that

9   "[n]o cause of action may be brought and no liability may be imposed under any State or local

10  law that is inconsistent with this section." 47 U.S.C. § 230(c)(1), (e)(3). Courts apply CDA

11  immunity broadly to protect covered entities "not merely from ultimate liability, but from having

12  to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v.*

13  *Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008). Courts in this circuit take an

14  "expansive" view of the protections and immunity that Section 230 confers on companies such as

15  Thomson Reuters, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003),

16  because early and robust protection is critical to avoid the "obvious chilling effect" on speech that

17  intermediary liability would impose on Internet platforms, *Zeran v. Am. Online, Inc.*, 129 F.3d

18  327, 331 (4th Cir. 1997).

19          Section 230 of the CDA immunizes (1) the provider of an interactive computer service,

20  (2) against claims that treat the provider as a "publisher" or "speaker," where (3) the "information

21  [was] provided by another 'information content provider.'" 47 U.S.C. § 230 (c)(1). These

22  elements are satisfied here.

23          **1.      Thomson Reuters provides an "interactive computer service"**

24          An "interactive computer service," a term that is generally interpreted "expansively,"

25  *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140

26  S. Ct. 2761 (2020), is (1) "any information service, system, or access software provider" that

27  (2) "provides or enables computer access by multiple users to a computer server." 47 U.S.C.

28  § 230(f)(2). An "access software provider," in turn, is "a provider of software . . . or enabling

-19-

tools that . . . filter, screen, allow, or disallow content; . . . pick, choose, analyze, or digest content; or . . . transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id.* § 230(f)(4).

Thomson Reuters provides *software* such as CLEAR and *enabling tools* such as Risk Inform and Person Search that "give[] users the ability to search and analyze massive amounts of data" and "display," "search," and "organize" content. *See* Compl. ¶¶ 17 (CLEAR), 24, 33 (Person Search and Risk Inform). Thomson Reuters is therefore an "access software provider." *See* 47 U.S.C. § 230(f)(4); *see also Callahan v. Ancestry.com Inc.*, No. 20-cv-08437-LB, 2021 WL 783524, at *6 (N.D. Cal. Mar. 1, 2021) (holding that defendant that made available yearbook records from third parties was interactive computer service provider). Thomson Reuters also "provides or enables computer access by multiple users to a computer server," 47 U.S.C. § 230(f)(2), through its CLEAR platform, which allegedly "receives approximately 100,000 search queries each day" from a wide variety of "individuals, private corporations, law enforcement, and other government agencies." Compl. ¶¶ 21, 58. Thomson Reuters therefore qualifies as an "interactive computer service" provider, and the first prong of the Section 230 analysis is satisfied. *See In re: Zoom Video Commc'ns Inc. Priv. Litig.*, No. 20-CV-02155-LHK, 2021 WL 930623, at *7 (N.D. Cal. Mar. 11, 2021) (Zoom video service provider was interactive computer service); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016) (website operator was interactive computer service where it provided computer access to multiple users), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

    **2.**    **Plaintiffs seek to hold Thomson Reuters liable as a "publisher" or "speaker"**

To determine whether Plaintiffs seek to hold Thomson Reuters liable as a publisher or speaker, "[w]hat matters is not the name of the cause of action—[but] whether the cause of action inherently requires the court to treat the defendant as [a] publisher or speaker." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009), *as amended* (Sept. 28, 2009). "[C]ourts must ask whether the duty that the Plaintiff alleges the defendant violated derives from the defendant's

1   status or conduct as a 'publisher or speaker.'" *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F.

2   Supp. 3d 1097, 1107 (C.D. Cal. 2017).[17]

3        Here, Plaintiffs seek to hold Thomson Reuters liable for disseminating their personal

4   information through CLEAR and for perceived harms resulting from its publication of personal

5   details about them. This is a paradigmatic example of attempting to hold an entity liable as a

6   publisher or speaker. *See, e.g.*, *Barnes*, 570 F.3d at 1102 (alternatively defining a publisher as

7   "the reproducer of a work intended for public consumption") (quoting WEBSTER'S THIRD NEW

8   INTERNATIONAL DICTIONARY 1837 (Philip Babcock Gove ed., 1986)). And courts regularly apply

9   the CDA to bar the types of claims at issue here. *See Carafano*, 339 F.3d at 1125 (Section 230

10   barred misappropriation of right of publicity claim); *Ancestry.com*, 2021 WL 783524, at *6

11   (misappropriation of right of publicity claims and related UCL claims); *Ebeid v. Facebook, Inc.*,

12   No. 18-CV-07030-PJH, 2019 WL 2059662, at *3 (N.D. Cal. May 9, 2019) (UCL claim); *Jurin v.*

13   *Google Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (unjust enrichment claim). The

14   second prong of the analysis under Section 230 is therefore satisfied.

15        **3.      Thomson Reuters is not the "information content provider" with respect to
                    the information content at issue**

16        Under Section 230, "[t]he term 'information content provider' means any person or entity

17   that is responsible, in whole or in part, for the creation or development of information provided

18   through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Here, the

19   "information content" at issue is the "name[s], photographs, personal identifying information,

20   [and] other personal data . . . included in the CLEAR database." *See* Compl. ¶ 70 (class

21   definition). That information content was created and developed by entities *other than* Thomson

22   Reuters. As Plaintiffs acknowledge, Thomson Reuters only "collects and aggregates," Compl.

23   ¶ 11, information originating from other sources such as "social networks," "third-party data

24

25   _____

26   [17] None of the narrowly-drawn exceptions to Section 230 immunity apply here. *See* 47 U.S.C.
     § 230(e)(1), (2), (4) (excepting prosecutions under a "Federal criminal statute," claims "pertaining
27   to intellectual property," and claims involving certain statutes); *see also Perfect 10, Inc. v. CCBill
     LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) ("In the absence of a definition from Congress . . . the
28   term 'intellectual property' . . . mean[s] 'federal intellectual property.'").

providers," and "law enforcement agencies," *id.* ¶ 2; *see also id.* ¶ 14 (alleging that "[t]he information aggregated and stored on the CLEAR database [is] collect[ed] from public records, government sources, Internet searches, and third-party data brokers"); *id.* ¶¶ 16-17 (alleging that Thomson Reuters "purchases and consolidates information held by third-party data tracking firms, data brokers, and other companies that compile consumer and location data").

Most critically, Plaintiffs seek to hold Thomson Reuters responsible for providing and selling information without their consent specifically because of the content of that information: because the content (supplied by third parties) includes their names and likenesses and other personal details. Given that Plaintiffs' claims "(1) challenge the harmfulness of content provided by another; and (2) derive[ ] from the defendant's status or conduct as a publisher or speaker of that content," CDA immunity applies. *See In re: Zoom Video Commc'ns*, 2021 WL 930623, at *7 ("Plaintiffs cannot hold Zoom liable for injuries stemming from the heinousness of third-party content") (internal quotation marks omitted).

Indeed, for the same reason that search engines are immune under the CDA from claims resulting from the content their search engines surface, Thomson Reuters is immune from claims resulting from the content that results when a subscriber conducts a Person Search or Risk Inform search through the CLEAR platform. *See Stayart v. Google Inc*., 783 F. Supp. 2d 1055, 1056 (E.D. Wis. 2011) ("The [CDA] effectively immunizes search engines like Yahoo and Google from claims that they displayed information created by third parties which presents an individual in an unfavorable light."), *aff'd*, 710 F.3d 719 (7th Cir. 2013); *see also Roommates.Com*, 521 F.3d at 1169 ("[P]roviding neutral tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception.").

Nor does it matter that Thomson Reuters allegedly "creates" a "dossier" or "profile" based on the third-party content in its database. *See, e.g.*, Compl. ¶¶ 43, 53. The CDA's "exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message." *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003). Plaintiffs do not allege that CLEAR's profiles altered the "basic form and message" of the underlying third-

party records. Rather, they allege that CLEAR "uncover[s]" factual information contained in third-party records, such as information about their name changes and other personal details, and makes it available to third parties. Compl. ¶ 2. Because Thomson Reuters is not the information content provider, CDA immunity applies. *See also Ancestry.com*, 2021 WL 783524, at *6 (holding that Ancestry.com was not an information content provider even though it added to third-party content estimated information, such as age, and interactive buttons); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197-98 (N.D. Cal. 2009) (holding that Google did not become an information content provider by providing a keyword search tool).[18]

Because Plaintiffs seek to impose liability on Thomson Reuters as the provider of an interactive computer service (CLEAR) for publishing third-party content, Section 230 of the CDA bars their claims, and the claims must be dismissed.

**D.      The Court Should Strike the Complaint Under California's Anti-SLAPP Statute**

In California, the summary resolution of First Amendment cases is favored because of the burden that litigation places on free speech. *See Good Gov't Grp. of Seal Beach, Inc. v. Super. Ct.*, 22 Cal. 3d 672, 684-85 (1978). Section 425.16 of the California Code of Civil Procedure (California's "anti-SLAPP" statute) therefore provides "a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously," *Simmons v. Allstate Ins.*, 92 Cal. App. 4th 1068, 1073 (2001), and generally (i.e., subject to exceptions not applicable here) gives prevailing defendants the right to attorneys' fees and costs. *See Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 320 (2017) ("Unless the plaintiff establishes a probability of prevailing on the claim, the court must grant the motion and ordinarily must also award . . . fees and costs.").

California's anti-SLAPP statute involves a two-step, burden-shifting test in which the defendant must first show that the action arises from any act "in furtherance of the person's right

---

[18] The Risk Inform tool merely enables subscribers to customize searches to find public records that are relevant to their assessments of risks relating to businesses and individuals, so Risk Inform results likewise constitute third-party content. *See supra* note 7, cited at Compl. ¶ 31 n.10. But to the extent that such content constitutes Thomson Reuters' own speech, it is non-actionable opinion protected by the First Amendment. *See supra* § V.B.1.b(i).

1    of petition or free speech." Cal. Civ. Proc. Code § 425.16(b)(1). If the defendant does so, the

2    "burden then shifts to the Plaintiff . . . to establish a reasonable probability that it will prevail on

3    its claim in order for that claim to survive dismissal." *Makaeff v. Trump Univ., LLC*, 715 F.3d

4    254, 261 (9th Cir. 2013). This special motion is available in federal court proceedings. *See, e.g.*,

5    *DC Comics v. Pac. Pictures Corp*., 706 F.3d 1009, 1015 (9th Cir. 2013). Qualifying activities

6    include "any written or oral statement or writing made in a place open to the public or a public

7    forum in connection with an issue of public interest" and "any other conduct in furtherance of the

8    exercise of the constitutional right of petition or the constitutional right of free speech in

9    connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3),

10   (e)(4). "The defendant need not show that Plaintiff's suit was brought with the intention to chill

11   defendant's speech; the Plaintiff's intentions are ultimately beside the point." *Bosley Med. Inst.,*

12   *Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (quotations marks and citations omitted).

13       **1.      Publishing the CLEAR profiles is protected activity**

14       The conduct at issue clearly falls within the scope of Section 425.16. First, it is well

15   established that "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the

16   anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006); *see also Wilbanks v.*

17   *Wolk*, 121 Cal. App. 4th 883, 897 (2004) (website is a public forum even if the operator limits

18   access). Plaintiffs' allegations that Thomson Reuters unlawfully collected, aggregated, and sold

19   their information through the online CLEAR platform thus implicates speech in a public forum.

20   Moreover, by making information available to subscribers through the CLEAR platform,

21   Thomson Reuters is otherwise engaged in "conduct in furtherance of the exercise of the . . .

22   constitutional right of free speech." Cal. Civ. Proc. Code § 425.16(e)(4); *see, e.g.*, *New Kids On*

23   *The Block*, 745 F. Supp. at 1546 ("gathering [of] information for dissemination to the public" is

24   "a protected First Amendment activity").

25       Second, as discussed above in section V.B.1.b., Plaintiffs' claims arise from conduct in

26   connection with an issue of public interest because Thomson Reuters' CLEAR platform provides

27   access to current and historical factual information. Indeed, the public value in facilitating

28   widespread availability of the type of information that Thomson Reuters provides through the

-24-

1    CLEAR platform was recognized by Congress in enacting the CDA. *See* 47 U.S.C. § 230(a)(1)

2    (recognizing that the "rapidly developing array of Internet and other interactive computer services

3    available to individual Americans represent an extraordinary advance in the availability of

4    educational and informational resources to our citizens"). And widespread use brings the content

5    at issue even further into the public interest. *See* Compl. ¶¶ 21, 58 (CLEAR "platform receives

6    approximately 100,000 search queries each day" from a wide variety of subscribers); *Exeltis USA*

7    *Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2017 WL 6539909, at *12 (N.D. Cal. Dec.

8    21, 2017) (complaint's description of defendant's database as "industry's most widely used

9    database" is sufficient to prove public interest).

10           **2.      Plaintiffs cannot show a probability of prevailing at trial**

11           Because this case seeks to inhibit speech in connection with an issue of public interest,

12    Thomson Reuters has met its burden, and Plaintiffs must demonstrate their claims are "legally

13    sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). Where, as

14    here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district

15    court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a

16    claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890

17    F.3d 828, 834 (9th Cir. 2018), *as amended*, 897 F.3d 1224 (9th Cir. 2018).

18           As discussed above, Plaintiffs' claims should be dismissed under Rule 12(b)(6) because

19    (1) they fail to allege plausible claims for right of publicity and unfair competition under state

20    law; (2) unjust enrichment is not a cause of action; and (3) their claims are barred by the CDA.

21    Consequently, Plaintiffs cannot demonstrate that these claims are "legally sufficient and factually

22    substantiated," and the claims should be stricken under the anti-SLAPP statute.

23                                  **VI.      CONCLUSION**

24           For the foregoing reasons, Thomson Reuters' Motion to Dismiss and Motion to Strike

25    should be granted.

26

27

28

1

2

DATED:  April 5, 2021

**PERKINS COIE LLP**

3

By: */s/ Susan D. Fahringer*

4

Susan D. Fahringer, Bar No. 21567
SFahringer@perkinscoie.com

5

Attorneys for Defendant

6

Thomson Reuters Corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-