UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAT BROOKS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THOMSON REUTERS CORPORATION,<br><br>    Defendant. | Case No. 21-cv-01418-EMC   (KAW)<br><br>**ORDER REGARDING 9/22/2022 DISCOVERY LETTER**<br><br>[Discovery Letter No. 2]<br><br>Re: Dkt. No. 109 |

The instant case concerns the operation of CLEAR, an online platform that "provides access to a database that aggregates both public and non-public information about millions of people . . ." (Compl. ¶ 1.)  The parties previously filed a discovery letter concerning Plaintiffs' access to CLEAR. (Dkt. No. 95.)  Following a telephone conference with the Court, the parties agreed to certain parameters of Plaintiffs' access to CLEAR. (Discovery Letter at 1, Dkt. No. 109; *see also* Dkt. No. 101.)  On September 22, 2022, the parties filed the instant discovery letter regarding certain issues regarding Plaintiffs' access.[1]  (Discovery Letter at 1.)

### A.  Terms of Service

First, the parties dispute whether CLEAR's customer terms of service should apply to Plaintiffs' use.  These terms include provisions such as requiring that information gathered from CLEAR be used "only one time" and for "internal business purposes," and that users "assist" Defendant with any litigation related to the access. (Discovery Letter at 1.)  Plaintiffs propose that

---

[1] Plaintiffs subsequently requested oral argument or leave to file a declaration as to Defendant's assertion that Plaintiffs' experts used CLEAR for over a year. (Dkt. No. 111.)  Defendant did not oppose the request, but requested leave to file its own declaration in response. (Dkt. No. 112.)  It is unclear why prior access by Plaintiffs' experts of CLEAR is relevant to resolving the parties' dispute, given that the parties have already agreed to give Plaintiffs access.  The disputes at issue are not dependent on prior access.  Accordingly, the Court finds that a hearing (or declarations) on this tangential issue is not necessary pursuant to Civil Local Rule 7-1(b).

1    the terms should only apply "to the extent not inconsistent with this agreement, the Protective
2    Order (or any other court order), or the purpose of Plaintiffs' use of CLEAR for civil discovery in
3    this case." (*Id.*)  Defendant, in turn, agrees that the terms should not apply if "superseded by the
4    parties' agreement or any order entered in this case," but disagrees as to a carveout based on "the
5    purpose of Plaintiffs' use of CLEAR for civil discovery in this case." (*Id.* at 4.)

6          The Court finds that Plaintiffs fail to explain how a carveout based on "the purpose of
7    Plaintiffs' use of CLEAR for civil discovery in this case" would work, and why it is necessary.
8    Plaintiffs argue that terms such as requiring information be used only one time or for internal
9    business purposes would apply without this carveout, but it is unclear why that is when the parties
10   have agreed to certain parameters for Plaintiffs' use in this case, including "the purpose of
11   Plaintiffs' use." (Discovery Letter at 1.)  Rather, Plaintiffs' proposed carveout is vague and likely
12   to cause disputes between the parties.

13         Accordingly, the Court finds that the terms of service shall apply unless inconsistent with
14   the parties' agreements and any order entered in this case.  The parties are, of course, free to agree
15   to other terms.

16         **B.**    **Screen Recordings**

17         Second, the parties dispute whether Plaintiffs shall be required to screen record their usage
18   of CLEAR, and automatically produce such recordings to Defendant. (Discovery Letter at 2, 4.)
19   Plaintiffs argue that such requirements will infringe on Plaintiffs' protected attorney work product,
20   as Plaintiffs are trying to determine how CLEAR functions and what information about putative
21   class members is available. (*Id.* at 2.)

22         The Court will require that Plaintiffs screen record their usage of CLEAR.  Defendant
23   explains that, like Google, "when CLEAR users input search queries to access content through
24   CLEAR, search results display on screen.  Users can click on those results and take additional
25   steps to create custom reports for download." (Discovery Letter at 4.)  Thus, "*CLEAR users*
26   *actively shape search results and reports as they use CLEAR*, and the steps they take to do so are
27   essential to understanding those results." (*Id.* (original emphasis).)  While Plaintiffs state that they
28   will produce any CLEAR reports they generate, Defendant represents that "[n]ot all of these steps

are automatically logged or readily apparent from any final report, and the data searchable through CLEAR is constantly changing." (*Id.* at 2, 4.)

Based on these representations, it appears that absent a recording, there is a risk that how Plaintiffs achieve search results may not be fully ascertainable, particularly if the data searchable through CLEAR changes and there is an absence of certain information from the CLEAR reports. Moreover, the Court notes that Plaintiffs acknowledge that any use of CLEAR that they provide to testifying experts would be subject to discovery, which may include how Plaintiffs achieved certain results. (Discovery Letter at 2.) Thus, the Court will require a screen recording.

The Court, however, finds that automatic production of the screen recordings is not warranted, and would create an unreasonable risk that protected attorney work product will be disclosed. The attorney work product doctrine "protects from discovery 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *Anderson v. Seaworld Parks & Entm't, Inc.*, 329 F.R.D. 628, 635 (N.D. Cal. 2019) (quoting Fed. R. Civ. P. 26(b)(3)). "Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

Again, Defendant has represented that "CLEAR users actively shape search results and reports as they use CLEAR." (Discovery Letter at 4 (emphasis omitted).) In other words, the process through which Plaintiffs search on CLEAR may reflect what an attorney believes is relevant in preparation for the instant litigation, including the choice of search terms and queries, which results are chosen, and which additional steps to take. *Compare with United States v. Segal*, No. 02-CR-112, 2004 WL 830428, at *8 (N.D. Ill. Apr. 16, 2004) (finding that the attorney work product applied because search terms used to gather cases from Lexis Nexis "provide a window into the attorney's thinking"). Such information is akin to an attorney "sift[ing through] what he considers to be the relevant from the irrelevant facts." *Hickman*, 329 U.S. at 511.

Production may be warranted if the screen recording is used by an expert. *See Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS PSG, 2011 WL 2293224 (N.D. Cal.

3

June 8, 2011) (rejecting production of recording immediately after the inspection, and finding it more appropriate for the expert to include the recording with an expert report). At this juncture, however, it is premature to require the production of all screen recordings without a showing of substantial need.

### C. Logs

Third, the parties dispute whether Defendant may automatically access usage logs. Defendant explains that it "logs some information about CLEAR searches in the ordinary course," and that such logs are "directly relevant and important to understanding the search results and to ensuring compliance with the parties' agreement on access to CLEAR." (Discovery Letter at 4.) Plaintiff again objects on the grounds of attorney work product.

Again, the Court finds that automatic access of the usage logs creates an unreasonable risk that protected attorney work product will be disclosed. It is unclear what these logs contain, but there appears to be a risk that they include information about the search terms and steps taken to create custom reports. As discussed above, this process could implicate attorney work product.

In the alternative, Defendant argues that work product is waived because "the logs are, by definition, already in the hands of [Defendant]," as the logs are generated by Plaintiffs' use of Defendant's database. (Discovery Letter at 5.) The Court rejects this argument. This would be the equivalent of saying that every attorney's Westlaw searches are not attorney work product because they were conducted on a legal database not owned by that attorney.

Defendant also argues that work product privilege is qualified, and overcome on a showing of substantial need. (Discovery Letter at 5.) While true, Defendant has not made that showing. Rather, the only argument Defendant has made on this point is that the Court should not bar Defendant's counsel from reviewing Defendant's own business record logs. (*Id.*) This is not a showing of substantial need. In any case, as with the screen recordings, this ruling does not preclude Defendant from later demonstrating that there is a substantial need.

### D. Number of Transactions

Finally, the parties dispute the number of searches Plaintiffs may have. Plaintiffs seek 500 searches (with the right to seek additional searches if needed), while Defendant propose 50

4

1  transactions (searches and reports). (Discovery Letter at 3, 5.)

2      The Court finds that 500 searches is appropriate, particularly when the parties had already agreed to a 3-week period of access. Defendant argues that it is not proper to allow Plaintiffs to conduct searches of 500 people, or to require Defendant to conduct an investigation of 500 reports. (Discovery Letter at 5.) Based on Defendant's own description of CLEAR, however, one search does not necessarily mean one report that Plaintiffs will use in this case. As with Google or word searches of legal databases, multiple search terms may be needed before obtaining the relevant search result. Moreover, Defendant itself explains that when using CLEAR, users shape search results and reports by inputting search queries, clicking on particular results, and taking additional steps to create custom reports. (*Id.* at 4.) Thus, it may take multiple searches and transactions to generate a single report. The Court therefore declines to further limit Plaintiffs' use of CLEAR -- which, again, has already been limited to three weeks -- in such a way that may render Plaintiffs' use meaningless.

### E. Proposed Order

As a final note, Plaintiffs state that "[o]n the issue of the permissible use that Plaintiffs would designate for their use of the platform, Plaintiffs are submitting a proposed order, which Defendant will not oppose once the parties' dispute is resolved." (Discovery Letter at 1; *see also* Dkt. No. 110.) This proposed order must be re-submitted as a stipulation and proposed order, rather than a standalone proposed order. The Court will not sign the standalone proposed order.

This order disposes of Docket No. 109.

IT IS SO ORDERED.

Dated: November 3, 2022

_____
KANDIS A. WESTMORE
United States Magistrate Judge

5