# EXHIBIT 7

Susan D. Fahringer, Bar No. 21567
SFahringer@perkinscoie.com
Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Erin K. Earl, *pro hac vice*
EEarl@perkinscoie.com
Anna M. Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendant
Thomson Reuters Corporation

Gabriella Gallego, Bar No. 324226
GGallego@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CAT BROOKS and RASHEED SHABAZZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMSON REUTERS CORPORATION,<br><br>Defendant. | Case No. 3:21-cv-01418-EMC<br><br>**DEFENDANT THOMSON REUTERS CORPORATION'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT** |

**PROPOUNDING PARTY:** Plaintiffs Cat Brooks and Rasheed Shabazz

**RESPONDING PARTY:** Defendant Thomson Reuters Corporation

**SET NO:** One

Thomson Reuters Corporation ("Thomson Reuters"), by its counsel, hereby responds pursuant to Rule 33 of the Federal Rules of Civil Procedure to Plaintiffs' First Set of Interrogatories to Defendant ("Interrogatories"). Thomson Reuters' responses and objections ("Responses") are based on information currently available to Thomson Reuters as discovery is not complete and Thomson Reuters' investigation is ongoing. Thomson Reuters reserves the right to supplement or amend these Responses should additional information become available through the discovery process or otherwise.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Thomson Reuters objects to all "Definitions" and "Instructions" to the extent they seek to impose obligations exceeding or differing from the requirements of the Federal Rules of Civil Procedure and Local Rules.

2.      Thomson Reuters objects to the definition of "Identify" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably tailored to Plaintiffs' legitimate discovery needs, including in that it purports to require "all names and identifiers" that Thomson Reuters has used to refer to "categories of content" and "all data points that currently or previously have fallen within each category."

3.      Thomson Reuters objects to the definition of "Californians," which does not align to California residency and requires a legal conclusion as to "class period," on the grounds that it is vague and not proportional to the needs of the case.

### GENERAL OBJECTIONS

1.      Thomson Reuters objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the attorney work-product doctrine, or similar protections available under federal or state statutory, constitutional, or common law.

2.      Thomson Reuters objects to the Interrogatories to the extent they seek information that is not in Thomson Reuters' possession, custody, or control.

3.      Thomson Reuters objects to the Interrogatories to the extent they seek information regarding "CLEAR" without defining that term. Thomson Reuters understands "CLEAR" to refer

to the software product that is referred to as such throughout the Complaint, including in its

paragraphs 2–3, 11, and 14–15.

**RESPONSES AND OBJECTIONS**

<u>**INTERROGATORY NO. 1:**</u>

Identify all categories of content (e.g., arrest records, DMV records, relatives and

associates analysis), whether public or proprietary, relating to Californians that have been queried

or were available to be queried using CLEAR at any point between January 1, 2015, and the

present.

<u>**RESPONSE TO INTERROGATORY NO. 1:**</u>

Subject to and without waiving the objections set forth below, Thomson Reuters' answer

to this Interrogatory is set forth in Attachment A in its entirety, including in particular its

discussion of the information available through CLEAR and of the treatment of information

available through CLEAR.

Thomson Reuters objects to this Interrogatory as not proportionate to the needs of the

case. CLEAR is not designed to retrieve the information sought by this Interrogatory, and the

manual investigation that Thomson Reuters would need to undertake to provide any further

answer to this Interrogatory is unduly burdensome and not proportional to the needs of the case in

light of (a) the importance of the issues at stake in the action; (b) the amount in controversy;

(c) the parties' relative access to relevant information; (d) the parties' resources; and (e) the

importance of such discovery in resolving the issues. This Interrogatory also is overly broad and

unduly burdensome and seeks information that is irrelevant and not proportional to the needs of

the case because it purports to require Thomson Reuters to provide information regarding "each"

category of content regardless of its relevance. The limitation "relating to Californians that have

been queried or were available to be queried using CLEAR at any point between January 1, 2015,

and the present" is also so broad and vague as to make this Interrogatory unanswerable as

phrased.

Thomson Reuters further objects to this Interrogatory on the following grounds:

1. The undefined phrase "categories of content" is inherently vague and ambiguous, making it impossible for Thomson Reuters to respond to this Interrogatory as written.

2. Thomson Reuters objects to the definition of "Identify" on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably tailored to Plaintiffs' legitimate discovery needs in that it purports to require "all names and identifiers" that Thomson Reuters has used to refer to "categories of content" and "all data points that currently or previously have fallen within each category."

3. Thomson Reuters objects to the definition of "Californians" because it does not align to California residency and requires a legal conclusion as to "class period" and so is both as vague and not proportional to the needs of the case.

4. Thomson Reuters also objects on the grounds set forth in its General Objection Nos. 1 (regarding attorney-client and work product privilege) and 3 (regarding the absence of any definition for "CLEAR").

**INTERROGATORY NO. 2:**

For each category of content responsive to Interrogatory No. 1, list the data sources corresponding to each category from which You have obtained or have had the ability to obtain data.

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving the objections set forth below, Thomson Reuters' answer to this Interrogatory is set forth in Attachment A in its entirety, including in particular its discussion of the information available through CLEAR and of the treatment of information available through CLEAR.

Thomson Reuters incorporates its answer and objections to Interrogatory No. 1, and further objects to providing any further answer to this Interrogatory on the following grounds:

1. To the extent this Interrogatory seeks prospective data sources from which Thomson Reuters has "the ability to obtain data" but from which it has not actually obtained data, the Interrogatory seeks information that is not relevant to any

1    party's claims or defenses and is not proportional to the needs of this case for that

2    reason as well.

3        2.    The undefined phrase "data sources" is inherently vague and ambiguous, making it

4            impossible for Thomson Reuters to answer this Interrogatory as written.

5    **INTERROGATORY NO. 3:**

6        For each category of content responsive to Interrogatory No. 1, identify all purposes for

7    which a user has accessed information through CLEAR, whether or not permitted by the Terms of

8    Use or Terms of Service, delineated by categories of content responsive to Interrogatory No. 1

9    and categories of customer responsive to RFP 10 (Your response to RFP 10 stated You would

10   produce documents "sufficient to show the categories of CLEAR customers—for example, law

11   firms, businesses, and government agencies…").

12   **RESPONSE TO INTERROGATORY NO. 3:**

13       Subject to and without waiving the objections set forth below, Thomson Reuters' answer

14   to this Interrogatory is set forth in Attachment A in its entirety, including in particular its

15   discussion of the restrictions limiting which entities may use CLEAR, of the purposes for which

16   CLEAR may be used, and of the proactive program to ensure CLEAR is used appropriately.

17       Thomson Reuters incorporates its answer and objections to Interrogatory No. 1, and

18   further objects to providing any further answer to this Interrogatory on the following grounds:

19       1.    The "purposes for which a user has accessed information through CLEAR" seeks

20            information outside Thomson Reuters' possession, custody, and control and which

21            are instead in the custody and control of the CLEAR customer alone.

22       2.    The phrase "identify all purposes" is vague and incomprehensible given Plaintiff's

23            definition of "Identify," such that answering the Interrogatory as phrased is

24            impossible.

25   **INTERROGATORY NO. 4:**

26       For each category of content responsive to Interrogatory No. 1, state the number of

27   Californians for whom CLEAR has had information available to provide in response to a CLEAR

28   query.

1   **RESPONSE TO INTERROGATORY NO. 4:**

2       Subject to and without waiving the objections set forth below, Thomson Reuters' answer

3   to this Interrogatory is set forth in Attachment A in its entirety, including in particular its

4   discussion of the information available through CLEAR.

5       Thomson Reuters incorporates its answer and objections to Interrogatory No. 1, and

6   further objects to providing any further answer to this Interrogatory on the following grounds:

7       1.   Thomson Reuters has previously confirmed that it will stipulate that the number of

8            "persons residing in the state of California whose name, photographs, personal

9            identifying information, or other personal data is or was included in the CLEAR

10           database during the limitations period," Compl. ¶ 70, is greater than 40.

11           Consequently, the information sought by this Interrogatory is not relevant to any

12           claims or defenses of any party.

13      2.   This Interrogatory seeks information that is irrelevant because Plaintiffs'

14           remaining claims challenge only the "selling" of information, not the mere

15           availability of information through CLEAR.

16  **INTERROGATORY NO. 5:**

17      For each category of content responsive to Interrogatory No. 1, state the number of

18  Californians for whom CLEAR has disseminated information in response to a CLEAR query.

19  **RESPONSE TO INTERROGATORY NO. 5:**

20      Subject to and without waiving the objections set forth below, Thomson Reuters' answer

21  to this Interrogatory is set forth in Attachment A in its entirety, including in particular its

22  discussion of the information available through CLEAR and of the treatment of information

23  available through CLEAR.

24      Thomson Reuters incorporates its answer and objections to Interrogatory No. 1, and

25  further objects to providing any further answer to this Interrogatory on the following grounds:

26      1.   Thomson Reuters has previously confirmed that it will stipulate that the number of

27           "persons residing in the state of California whose name, photographs, personal

28           identifying information, or other personal data is or was included in the CLEAR

1    database during the limitations period," Compl. ¶ 70, is greater than 40.

2    Consequently, the information sought by this Interrogatory is not relevant to any

3    claims or defenses of any party.

4    2.    This Interrogatory seeks information that is irrelevant because Plaintiffs'

5    remaining claims challenge only the "selling" of information, not the mere

6    dissemination of information through CLEAR.

7    **INTERROGATORY NO. 6:**

8    Identify each category of content responsive to Interrogatory No. 1 to which You refer in

9    having described CLEAR as containing "proprietary data," "proprietary databases," or

10   "proprietary records," (for example, at Bates Number TR-BROOKS013851, You describe

11   CLEAR as containing an "unparalleled collection of public and proprietary records," and at Bates

12   Number TR-BROOKS-000218 You refer to "proprietary databases" and "proprietary data"

13   available through CLEAR).

14   **RESPONSE TO INTERROGATORY NO. 6:**

15   Thomson Reuters incorporates its objections and answer to Interrogatory No. 1.

16   Subject to and without waiving the objections set forth in answer to Interrogatory No. 1

17   and below, Thomson Reuters answers that "proprietary" generally refers to information that

18   Thomson Reuters has licensed from third parties and that are not public records (e.g., court

19   filings) or records that are publicly available (e.g., via public websites, telephone directories,

20   etc.). In further answer to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d),

21   Thomson Reuters directs Plaintiffs to third-party licensing agreements between Thomson Reuters

22   and third-party licensors.

23   Thomson Reuters objects to providing any further answer to this Interrogatory on the

24   grounds that the phrase "to which You refer in having described CLEAR as containing

25   'proprietary data,' 'proprietary databases,' or 'proprietary records'" is vague and overbroad to the

26   extent it purports to ask about Thomson Reuters' use of the term "proprietary" without context

27   (and in fact, that term is not used in the document appearing at Bates Number TR-BROOKS-

28

000218), and, as phrased, this Interrogatory is unduly burdensome and not proportional to the needs of the case.

**INTERROGATORY NO. 7:**

Explain what You mean when you describe data or records as "proprietary" (for example, does the data include primary source research, is it organized in a unique way, has it been linked with other data, or any other process, characteristic, quality, or type that would qualify that data as "proprietary").

**RESPONSE TO INTERROGATORY NO. 7:**

Thomson Reuters incorporates its objections and answers to Interrogatories Nos. 1 and 6.

**INTERROGATORY NO. 8:**

For each category of content responsive to Interrogatory No. 1, identify the frequency with which that data is updated (for example, You describe utility records as being updated daily at Bates Number TR-BROOKS001116), including whether that data is updated in real time (such as You describe for incarceration and arrest records at Bates Number TR-BROOKS001884), and whether that data can be accessed through a live gateway (such as You describe for access to vehicle registration data at Bates Number TR-BROOKS002730).

**RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiving the objections set forth below, Thomson Reuters' answer to this Interrogatory is set forth in Attachment A in its entirety, including in particular its discussion of the information available through CLEAR and of the treatment of information available through CLEAR.

Thomson Reuters incorporates its answer and objections to Interrogatory No 1.

**INTERROGATORY NO. 9:**

For each category of content responsive to Interrogatory No. 1, identify where the data is housed, stored, or otherwise located prior to a query, how You access that data once a query is received, and how You disseminate that data in response to a query, delineated by categories responsive to Interrogatory No.1.

**RESPONSE TO INTERROGATORY NO. 9:**

Thomson Reuters incorporates its answer and objections to Interrogatory No. 1. Subject to and without waiving such objections, Thomson Reuters' answer to this Interrogatory is set forth in Attachment A in its entirety, including in particular its discussion of the information available through CLEAR and of the treatment of information available through CLEAR.

**INTERROGATORY NO. 10:**

Describe all methods Thomson Reuters has used to determine the accuracy of data within CLEAR, delineated by categories responsive to Interrogatory No. 1.

**RESPONSE TO INTERROGATORY NO. 10:**

Thomson Reuters incorporates its answer and objections to Interrogatory No. 1. Subject to and without waiving such objections, Thomson Reuters' answer to this Interrogatory is set forth in Attachment A in its entirety, including in particular its discussion of the information available through CLEAR and of the treatment of information available through CLEAR.

**INTERROGATORY NO. 11:**

Explain why this case is not amenable to class certification.

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving the objections set forth below, Thomson Reuters answers that Plaintiffs cannot demonstrate the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class. Nor can Plaintiffs demonstrate that Thomson Reuters has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, considering, among other issues, the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or

against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. Thomson Reuters also incorporates the answer set forth in Attachment A in its entirety, and objects to providing further answer to this Interrogatory on the grounds that it calls for contentions, claims, or legal conclusions regarding issues or potential issues in this litigation. Regardless of whether this Interrogatory may be proper at some other time in the lawsuit, it is premature, and it is further objectionable because it seeks Thomson Reuters' reasoning and the theories of its contentions, and therefore seeks information protected by the attorney work product doctrine. Further, it is the plaintiff's burden to affirmatively demonstrate that class certification is appropriate, which plaintiffs have not yet done, so Thomson Reuters' answer to this Interrogatory depends on information in the possession of plaintiffs.

**INTERROGATORY NO. 12:**

State all facts upon which You base any denial of a material allegation and each special or affirmative defense.

**RESPONSE TO INTERROGATORY NO. 12:**

Thomson Reuters incorporates Attachment A in its entirety.  In addition, all documents produced in this case are consistent with, and therefore may form the basis for, Thomson Reuters' defense of Plaintiffs' claims. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Thomson Reuters refers Plaintiffs to the documents that the parties have produced in this case. Thomson Reuters incorporates its objections and answers to the foregoing Interrogatories, and objects to providing further answer to this Interrogatory on the grounds that it is compound, overbroad, unduly burdensome, seeks attorney work product, and is a premature contention interrogatory. Thomson Reuters further objects to this Interrogatory as requiring a legal conclusion as to which allegations are "material" to plaintiffs' claims.

**INTERROGATORY NO. 13:**

For each fiscal quarter between Q1 2015 and the present, state the total number of CLEAR searches run and, among those, the total number relating to natural persons for whom CLEAR has listed a California address within the class period.

**RESPONSE TO INTERROGATORY NO. 13:**

Thomson Reuters incorporates its objections and answers to Interrogatories Nos. 1-5, 8, and 10. Thomson Reuters further objects to this Interrogatory as compound and not proportional to the needs of the case. Thomson Reuters also objects to the term "class period" as vague, undefined, and as requiring a legal conclusion.

Subject to and without waiving these objections, in further answer to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), Thomson Reuters will produce documents reflecting search inquiries performed on CLEAR since 2015 for the individuals named Cat Brooks and Rasheed Shabazz.

**INTERROGATORY NO. 14:**

For each fiscal quarter between Q1 2015 and the present, identify the total number of persons and entities who have had records or other data accessible through CLEAR and, among those, the total number of Californians.

**RESPONSE TO INTERROGATORY NO. 14:**

Thomson Reuters incorporates its answers and objections to Interrogatories Nos. 1-5, 8, 10, and 13. Thomson Reuters objects to providing further answer to this Interrogatory on the grounds set forth in the answers and objections to Interrogatories Nos. 1-5, 8, 10, and 13, and because it is compound, vague, and not proportional to the needs of the case.

**INTERROGATORY NO. 15:**

For each fiscal quarter between Q1 2015 and the present, identify the total number of data points accessible through CLEAR for all persons and entities who have had records or other data accessible through CLEAR within the class period, and, among those, the total number of data points accessible for all Californians.

**RESPONSE TO INTERROGATORY NO. 15:**

Thomson Reuters incorporates its objections and answers to Interrogatories Nos. 1-5, 8, 10, 13, and 14. Thomson Reuters objects to providing further answer to this Interrogatory on the grounds set forth in the answers to Interrogatories Nos. 1-5, 8, 10, 13, and 14, and because this

Interrogatory is vague in its use of the terms "data point" and "data points accessible through CLEAR," is not proportional to the needs of the case, and is compound.

**INTERROGATORY NO. 16:**

For each fiscal quarter between Q1 2015 and the present, state the gross and net revenues You have generated from CLEAR, delineated by each of the ways that You collect revenue from CLEAR (for example, revenue attributable to per-search charges, revenue attributable to subscription plans, revenue attributable to custom pricing packages, revenue attributable to standard package arrangements including CLEAR, or any other means by which CLEAR generates revenue).

**RESPONSE TO INTERROGATORY NO. 16:**

Thomson Reuters understands this Interrogatory to seek revenue and operating income (EBITDA or earnings before interest, taxes, depreciation, and amortization) for CLEAR since 2015. Thomson Reuters further understands that Plaintiffs seek that revenue data broken down based on CLEAR pricing models.

Subject to that interpretation and without waiving the objections set forth below, in answer to this Interrogatory, pursuant to Federal Rule of Civil Procedure 33(d), Thomson Reuters refers Plaintiffs to TR-BROOKS017074, which provides financial data for CLEAR on an annual basis. To the extent that this Interrogatory seeks this information broken down by fiscal quarter, Thomson Reuters objects to this Interrogatory as seeking information that is not relevant to any party's claim or defense such that this request is unduly burdensome and not proportional to the needs of the case. To the extent this Interrogatory seeks revenue broken down based on each and every "means" by which CLEAR generates revenue, Thomson Reuters objects to this Interrogatory as seeking information that is not relevant to any party's claim or defense such that this request is unduly burdensome and not proportional to the needs of the case.

Should Plaintiffs continue to seek additional financial data, Thomson Reuters invites Plaintiffs to meet and confer on that subject.

1

<u>**INTERROGATORY NO. 17:**</u>

2

For each fiscal quarter between Q1 2015 and the present, state the gross and net revenues

3

You have generated from searches of Californians.

4

<u>**RESPONSE TO INTERROGATORY NO. 17:**</u>

5

Thomson Reuters incorporates its objections and answers to Interrogatories Nos. 1-5, 8,

6

10, 13, and 14-16. Thomson Reuters objects to providing further answer to this Interrogatory on

7

the grounds set forth in the answers and objections to the foregoing Interrogatories, and on the

8

grounds that this Interrogatory is compound and not proportional to the needs of the case.

9

<u>**INTERROGATORY NO. 18:**</u>

10

For each fiscal quarter between Q1 2015 and the present, state the gross and net revenues

11

You have generated from CLEAR, excluding per-search charges, attributed to CLEAR's ability

12

to query records relating to Californians, and identify how those revenues were calculated.

13

<u>**RESPONSE TO INTERROGATORY NO. 18:**</u>

14

Thomson Reuters incorporates its objections and answers to Interrogatories Nos. 1-5, 8,

15

10, 13, and 14-17. Thomson Reuters objects to providing further answer to this Interrogatory on

16

the grounds set forth in the answers and objections to the foregoing Interrogatories, and on the

17

grounds that this Interrogatory is compound and not proportional to the needs of the case.

18

19

Dated:  April 4, 2022                             **PERKINS COIE LLP**

20

21

By: */s/ Susan D. Fahringer*
        _____
        Susan D. Fahringer, Bar No. 21567

22

        SFahringer@perkinscoie.com

23

        Attorneys for Defendant

24

        Thomson Reuters Corporation

25

26

27

28

## Attachment A

The following information is provided in further answer to Plaintiffs' First Interrogatories to Thomson Reuters, Interrogatories Nos. 1-16.

CLEAR enables authorized, credentialed entities ("subscribers" or "customers") to search and access information from records that have been licensed or otherwise acquired from third-party sources that represent they are authorized to provide the information.

**Restrictions limiting which entities may use CLEAR**

CLEAR is available only to business and government entities. Before an authorized subscriber may conduct any search of information available through CLEAR, the subscriber must first agree and warrant that it will (1) use CLEAR data only for its own internal business or government purpose; (2) strictly limit access, use, and distribution of CLEAR data to the limited permissible purpose(s) for which it was retrieved; (3) not disclose CLEAR data to anyone except as necessary to carry out the specific permissible purpose(s) for which it was retrieved; and (4) immediately report to Thomson Reuters any misuse, abuse, or compromise of CLEAR data. A subscriber must also go through a credentialing process through which Thomson Reuters validates the subscriber's professed identity, which may entail a physical onsite inspection. CLEAR is not available for use by consumers (as opposed to business or government entities) and certain types of entities and use cases are prohibited outright from using CLEAR regardless of whether they have a permissible purpose under the applicable statutes. Prohibited entities include, for example, payday lenders, pawn shops, weapons dealers, genealogical or heir research firms, foreign companies, condo or homeowners associations, and dating services.

1

CONFIDENTIAL

**Purposes for which CLEAR may be used**

All CLEAR subscribers must attest to and certify a permissible purpose under the Gramm-Leach-Bliley Act ("GLBA") for every search they conduct. To search and access *any* CLEAR record, the subscriber must certify that the search is being conducted pursuant to at least one of the following GLBA permissible purposes:

- For use by a person holding a legal or beneficial interest relating to the consumer

- For use in complying with federal, state, or local laws, rules, and other applicable legal requirements

- For use as necessary to effect, administer, or enforce a transaction that a consumer requests or authorizes

- For use in complying with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by Federal, State, or local authority

- For use to protect against or to prevent actual or potential fraud, unauthorized transactions, claims, or other liability

- For use by a Law Enforcement Agency, self-regulatory organization or for an investigation on a matter related to public safety

- With the consent or at the direction of the consumer

- To persons acting in a fiduciary or representative capacity on behalf of the consumer

2

CONFIDENTIAL

- For required institutional risk control or for resolving consumer disputes or inquiries

In addition, before it may search and access records subject to the Driver's Privacy Protection Act ("DPPA"), a CLEAR subscriber first must certify that the search is conducted for at least one of the following permissible purposes:

- For official use by a Court, Law Enforcement Agency or other Government agency

- To verify or correct information provided to you by a person in order to prevent fraud, pursue legal remedies or recover a debt

- For use in connection with a civil, criminal, or arbitral legal proceeding or legal research

- For use in connection with an insurance claims investigation or insurance antifraud activities

In addition, before it may search and access voter registration records, a CLEAR subscriber must first certify at least one of the following permissible purposes:

- For use in connection with a permissible election-related purpose

- For use in connection with a non-commercial purpose

There are other restrictions on use of CLEAR as well. For example, CLEAR may *not* be used for creating mailing lists, soliciting clients, or any other marketing efforts, and CLEAR may *not* be used for any purpose authorized under the FCRA. This would include, for example, pre-

3

CONFIDENTIAL

and post-employment screening, consumer credit, housing, including ongoing eligibility, insurance, or eligibility for government benefits.

Thomson Reuters customers have used CLEAR for the following purposes:

- Helping courts, banks, and other public and private entities perform Know Your Customer ("KYC") diligence and combat fraud;

- Helping law enforcement find missing persons and kidnapped children;

- Supporting law enforcement officers with solving crimes, including, for example, investigating cold murder cases, combating drug trafficking, combating human trafficking, dismantling child exploitation groups, and identifying criminal perpetrators;

- Supporting public defenders, including in exoneration attempts for wrongful convictions;

- Investigating, identifying, and combating fraud, including financial fraud, identity theft, and fraud in various government benefits programs;

- Supporting regulatory compliance programs, including compliance with the Bank Secrecy Act and its implementing Anti-Money Laundering regulations;

- Combating tax evasion, including Social Security and property tax fraud;

- Providing support for people in need, including finding relatives to keep children out of the welfare system, and finding absentee parents who owe child support;

4

CONFIDENTIAL

- Responding to active shooter situations, such as the December 2015 San Bernadino terrorist attack;

- Helping the US Veterans Affairs Department locate veterans to continue providing them with benefits after moving;

- Identifying updated address information to provide adequate notice of a class action to class members;

- Supporting corporate security needs to keep public and private locations safe; and

- Helping law enforcement recover stolen goods.

**Proactive program to ensure CLEAR is used appropriately**

Thomson Reuters has a robust compliance program that spans the customer lifecycle to ensure that CLEAR is used in accordance with applicable regulations, contractual requirements, and its own internal policies. This program includes, for example, employee mandatory compliance training at least every two years and regular ongoing training; the subscriber credentialing process referred to above; provisions in customer contracts, account validation forms, and other credentialing documentation that require a subscriber to represent and warrant its intended product use case and that it will not use the product for a prohibited use, such as any purpose governed by the FCRA; and a re-credentialing process where, every two years, customers must reaffirm their legitimate use case and recertify that they will not use CLEAR for any FCRA or other prohibited purpose.

5

CONFIDENTIAL

**Information available through CLEAR**

The information that may be available through CLEAR, and that may be provided in response to CLEAR queries, varies widely based on a number of factors, including, for example, the person or business that is the subject of the search (whose records will differ from other persons' records, and may vary over time), the particular search conducted, the scope of authorization held by the customer that conducts the search (not all customers are authorized to have access to all records, and not all customers are authorized to have access to all information within each record), the purpose of the search, the date the search is conducted, the source of the information searched, the state supplying the data (for example, although the Complaint in this case refers to records relating to abortion and homosexual acts, California criminal records do not include offenses related to either one), and many other factors. CLEAR does not include Protected Health Information as defined under the Health Insurance Portability and Accountability Act of 1996.

The types of content available through CLEAR, and the corresponding data sources, are set forth in the license agreements between Thomson Reuters and its third-party providers, which will be produced by April 15, as well as in the CLEAR user guides, CLEAR reports and records, marketing materials, and other documents already produced, and Thomson Reuters directs Plaintiffs to those documents pursuant to Fed. R. Civ. P. 33(d).

Thomson Reuters expressly does not "warrant the comprehensiveness, completeness, accuracy or adequacy" of the information "for any purpose." *See, e.g*., TR-BROOKS000518 (Supplier Additional Terms). Consistent with its function as a research tool, CLEAR allows customers to assess accuracy for themselves by:

6

CONFIDENTIAL

- disclosing the source of information where Thomson Reuters is contractually permitted to do so;

- allowing users to click on a document source name to see the underlying full-text document; and

- providing other contextual information—for instance, by explaining that "associates" are defined as persons who are linked to one or more of the search subject's addresses.

If an individual with information in CLEAR or a subscriber informs Thomson Reuters of information that the individual or subscriber believes is inaccurate, Thomson Reuters has established processes by which the individual or subscriber can communicate the issue to Thomson Reuters and Thomson Reuters can respond appropriately—for example, by deleting an inaccurate record and/or the relationship between that record and an individual person or entity.

**Treatment of information available through CLEAR**

Some information available through CLEAR is accessed through gateways to third-party data sources, or Application Programming Interfaces ("APIs"), that allow CLEAR to obtain information from such third-party data sources in real time. In such cases, the information is collected, stored, maintained, and updated by the third party, not Thomson Reuters. CLEAR transmits the customer's query to those gateways or APIs and returns the resulting information to the subscriber, but does not itself store the information obtained from those gateways or APIs.

Other information available through CLEAR comes from records licensed or otherwise obtained by Thomson Reuters from third parties. Those records are converted into a standard

7

CONFIDENTIAL

format recognized by Thomson Reuters' systems and stored by Thomson Reuters across various systems and repositories after opt-outs are excluded and certain data fields are encrypted and/or normalized (e.g., addresses are conformed to the "standard" U.S. Postal Service version of that address). The information is then indexed and made potentially available to subscribers to search, depending on their access levels, searches conducted, and the other factors identified above. The terms of the license agreements with third parties may further address confidentiality and treatment of data that is the subject of those licenses, and Thomson Reuters refers Plaintiffs to those agreements pursuant to Fed. R. Civ. P. 33(d). In addition, Thomson Reuters immediately encrypts with its own key all data fields associated with Social Security numbers and other government ID numbers (e.g., on passports and driver's licenses), and transforms the information into different forms for storage in multiple databases that have unique purposes. Pursuant to Fed. R. Civ. P. 33(d), Thomson Reuters also refers plaintiffs to documents describing its information security practices, such as documents describing how CLEAR software uses multi-factor authentication for secure user login. *See, e.g.*, TR-BROOKS020809.

When a credentialed, authorized CLEAR customer submits a query in CLEAR, Thomson Reuters' systems translate the query into the appropriate format and search across various systems and repositories to retrieve responsive information. (Which systems and repositories are searched varies based on the nature of the query submitted by the customer, among other variables.) Encrypted data fields remain encrypted while in transit and are not decrypted until immediately before being made available (in whole as to certain CLEAR customers and in part as to others) to an authorized CLEAR customer.

CONFIDENTIAL

1

**PROOF OF SERVICE**

2

I, Anna Mouw Thompson, declare:

3

I am a citizen of the United States and employed in Seattle, Washington. I am over the age

4

of eighteen years and not a party to the within-entitled action. My business address is 1201 Third

5

Avenue, Ste. 4900, Seattle, WA 98110. On April 4, 2022, I served a copy of the within

6

document(s):

7

8

      **DEFENDANT THOMSON REUTERS CORPORATION'S RESPONSES
      AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF
      INTERROGATORIES TO DEFENDANT**

9

10

☒      by transmitting via my e-mail address (AnnaThompson@perkinscoie.com) the document listed above to the persons at the e-mail addresses set forth below.

11

12

13

14

15

16

17

18

Andre M. Mura
David Stein
Mark Troutman
Jeffrey B. Kosbie
Ezekiel S. Wald
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA  94612
amm@classlawgroup.com
ds@classlawgroup.com
mht@classlawgroup.com
jbk@classlawgroup.com
zsw@classlawgroup.com
service@classlawgroup.com

19

20

I declare under penalty of perjury under the laws of the United States of America that the

21

above is true and correct.

22

Executed on April 4, 2022, at Bainbridge Island, WA.

23

_____

24

Anna Mouw Thompson

25

26

27

28