Andre M. Mura (SBN 298541)
Ezekiel S. Wald (SBN 341490)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amm@classlawgroup.com
zsw@classlawgroup.com

Geoffrey A. Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAT BROOKS and RASHEED SHABAZZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMSON REUTERS CORPORATION,<br><br>Defendant. | Case No. 3:21-cv-01418-EMC-KAW<br><br>**PARTIES' JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: October 9, 2024<br>Time: 9:30 a.m.<br>Place: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

# TABLE OF CONTENTS

Page

I.   Size of the Class.................................................................................................1

II.  Net Settlement Fund and Average Award........................................................1

III. Injunctive Relief................................................................................................2

IV.  Monetary Relief.................................................................................................3

V.   Attorneys' Fees and Expenses. (Plaintiffs' Statement) ...................................3

VI.  Settlement Administration Costs.......................................................................7

VII. Means of Notice................................................................................................7

VIII. Filing of Claim.................................................................................................9

IX.  Language of Class Notice.................................................................................9

X.   Proposed Order................................................................................................13

CONCLUSION..........................................................................................................14

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                     Page(s)

*Andrews v. Plains All Am. Pipeline L.P.*,
    No. CV154113PSGJEMX, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022).......................5

*Bozarth v. Envision Healthcare Corporation*,
    Case No. 5:17-cv-1935-FMO, 2019 WL 11790426 (C.D. Cal. 2019) ................................9

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ...............................................................................................3

*In re Google Referrer Header Priv. Litig.*,
    No. 5:10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023).........................4

*In re Uber FCRA Litig.*,
    No. 14-cv-05200-EMC, 2017 WL 2806698 (N.D. Cal. June 29, 2017) ...........................3

*In re Zoom Video Comms., Inc. Privacy Litig.*,
    No. 20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ..............................3

*In re: Yahoo! Inc. Customer Data Security Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ..........................3

*Perkins v. Linkedin Corp.*,
    No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)............................4

*Reyes v. Experian Info. Sols., Inc.*,
    856 F. App'x 108 (9th Cir. 2021) ........................................................................................3

*Senne v. Concepcion*,
    No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023) .............................................5

*Senne v. Kansas City Royals Baseball Corp.*,
    No. 14-CV-00608 JCS, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) ...........................5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002).........................................................................................4, 5

<u>Other Authorities</u>

*U.S. Census Bureau, S0701, Geographic Mobility by Selected Characteristics in the United States*,
    https://data.census.gov/table/ACSST1Y2022.S0701?g=040XX00US06....................................1

Pursuant to this Court's order requesting supplemental briefing, ECF No. 246, Plaintiffs Brooks and Shabazz and Defendant Thomson Reuters respectfully submit answers to the Court's questions, as supported by a declaration of Steven Weisbrot of Angeion Group, which is being filed concurrently ("Weisbrot Decl.").

## I.  Size of the Class.

**Question:** "Do the parties have any more concrete information as to how much smaller [than 40 million] the actual class size may be—*e.g.*, it is likely closer to 20 million? 30 million?" ECF No. 246 at 1.

**Answer:** The class size is approximately 40 million individuals, based on discovery and judicially noticed census data. ECF No. 213 ("Cert. Order") at 15-16.[1]

The discussion in Plaintiffs' Co-Lead Counsel Declaration about "orders of magnitude," which the Court highlighted, was attempting to explain that this estimate of the class size cannot be derived from CLEAR itself. That is because it is not possible to export from CLEAR a list of individuals who resided in California since 2016. The CLEAR database includes non-class members such as deceased persons, duplicates, and businesses. Any list that is exported would not be representative of the class—it would be orders-of-magnitude larger.

## II.  Net Settlement Fund and Average Award.

**Questions:** The Court asked three questions related to the net settlement fund and average award.

1.  "[I]t appears that the net settlement fund will be approximately $17,246,000. Is this correct?" ECF No. 246 at 3.

**Answer:** The net settlement fund has been revised to be approximately $19,430,881. *See* Weisbrot Decl. ¶¶ 7, 9. As discussed more fully below, this difference reflects that Plaintiffs have clarified that they will seek 25% of the gross settlement fund in attorneys' fees—the previous calculation was based on language in the notice indicating that Plaintiffs would not seek more than 33% and thus was calculated based on the maximum percentage allowable

---

[1] U.S. Census Bureau, *S0701, Geographic Mobility by Selected Characteristics in the United States*, https://data.census.gov/table/ACSST1Y2022.S0701?g=040XX00US06.

under the circumstances. Plaintiffs have also provided additional detail regarding expenses. There is also a marginal increase in the estimated cost of notice and administration (approximately $15,000) to incorporate publication notice and additional translations. *Id.* ¶ 9.

    2.   "What is the number of expected claimants on the net settlement fund? The Court understands that the claims rate is estimated to be 1-2.5%, *see* Mot. at 26, but as noted above, the class size seems to be somewhat vague." ECF No. 246 at 3.

**Answer:** Having clarified that the class size is indeed approximately 40 million individuals, the number of estimated claimants is between 400,000 (1% claims rate) and 1,000,000 (2.5% claims rate). Weisbrot Decl. ¶ 6.

    3.   "Do the parties have any views on the anticipated average award per claimant? (The Court understands that this will turn on the number of claimants.)"

**Answer:** Assuming a claims rate of 1% to 2.5%, after fees, costs, and expenses, the estimated average award per claimant is between $19.43 (2.5% claims rate) and $48.78 (1% claims rate). Weisbrot Decl. ¶ 7.

## III. Injunctive Relief.

**Question:** "The settlement agreement provides that the injunctive relief is limited to four years. Is there a reason for this time limitation? If so, what is it?" ECF No. 246 at 2.

**Answer:** The four-year period was the product of informed and reasoned negotiations between the parties, as mediated by the Honorable Layn Phillips (ret.). Both parties acknowledge that Thomson Reuters designs and operates CLEAR while closely tracking how it may be impacted by a confluence of state and federal laws that are changing annually, including the California Consumer Privacy Act, the Driver's Privacy Protection Act, the Gramm-Leach Bliley Act, and various state data brokering laws. CLEAR, as a complex technology product, is under constant evolution to account for these laws and to stay relevant in a competitive business environment. The four-year limitation is intended to provide meaningful benefits to the class while acknowledging that CLEAR may need to change to account for a currently unknown legal landscape in the 2030s.

    The four-year period of relief is meaningful as comparable approved settlements

provide for even shorter periods of injunctive relief. *See, e.g.*, *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (affirming approval of class settlement whereby Facebook would display a disclosure on its Help Center page for one year); *In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 WL 2806698, at *2 (N.D. Cal. June 29, 2017) (approving of injunctive relief expiring one year after final approval); *In re Zoom Video Comms., Inc. Privacy Litig.*, No. 20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) (approving three year injunctive relief period); *In re: Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020) (granting final approval to settlement whereby Yahoo would increase its information security budgets and staffing for a 2-3 year period); *see also* ECF No. 239-02, at 12 (compiling additional cases with injunctive periods below four years).

**IV.  Monetary Relief.**

   **Question:** "Is there any indication that a notable number of class members may have unique or atypical damages?" ECF No. 246 at 2.

   **Answer:** The Court previously determined that class members are "harmed in the same way." ECF No. 222, at 22.

   **Question:** "If so, is the expectation that such a class member(s) would exercise their right to opt out?" ECF No. 246 at 2.

   **Answer:** Not applicable, based on the answer above.

**V.  Attorneys' Fees and Expenses. (Plaintiffs' Statement)**

   **Question:** "What is Plaintiffs' counsel's estimated lodestar and how much of a multiplier will be sought?" ECF No. 246 at 2.

   **Answer:** Plaintiffs' counsel's estimated lodestar is approximately $5,486,683.00, and this reflects the work of Gibbs Law Group LLP, Cohen Milstein Sellers & Toll PLLC, and Gupta Wessler LLP. A fee request of 25% of the gross settlement fund ($6,875,000) reflects a multiplier of 1.25. *See, e.g.*, *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 111 (9th Cir. 2021) (explaining that a settlement fund of approximately $24 million should not be considered a "megafund," a term that "usually" refers to "settlements exceeding $100 million," and indicating that a fee award of 25% at a 2.88 multiplier would be in line with those "routinely approved by this court"

(citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 25% fee recovery at 3.65 multiplier, and explaining that that multiplier "was within the range of multipliers applied in common fund cases"))); *see also In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545, at *10 (N.D. Cal. Oct. 16, 2023) (awarding 25% of $23,000,000 at 1.85 multiplier); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (awarding 25% of $13,000,000 at 1.45 multiplier).

**Question:** "Counsel should also provide information about hourly rates and hours incurred – the total number of hours and a breakdown of how much time was spent on each major litigation task." ECF No. 246 at 2.

**Answer:**   For Gibbs Law Group, partner hourly rates range from $730 to $915; counsel hourly rates range from $795 to $850; associate hourly rates range from $445 to $665; and litigation assistants' rates range from $220 to $240.[2]  For Cohen Milstein Sellers & Toll, partner hourly rates range from $980 to $1050; associate hourly rates are $675; investigator hourly rates are $645; and paralegal hourly rates are $380. For Gupta Wessler, hourly rates range from $800 (associate) to $1,100 (principal).

The total number of hours incurred across all three firms is 8,703.75.

A breakdown of hours on each major litigation task is:

| Task | Sum of Hours |
|---|---|
| Case Investigation and Pleadings | 131.10 |
| Motion to Dismiss | 215.60 |
| Fact Discovery | 4,157.55 |
| Expert Discovery | 1,850.62 |
| Class Certification | 1,509.98 |
| Settlement and Approval | 838.90 |
| **Grand Total:** | 8,703.75 |

[2] Contract attorneys assisted with document review, and their total time was 1,444.40 hours. Plaintiffs' counsel excluded these hours from the lodestar reporting above because, in their view, the benchmark fee request is reasonable regardless.

Plaintiffs' counsel anticipates additional work in support of settlement approval and will update this information accordingly in their motion for attorneys' fees, along with "declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information." N.D. Cal. Procedural Guidance for Class Action Settlements, Final Approval – Attorneys' Fees.

**Question:** "Under the percentage method approach to fees, is it common for a percentage of 33% to be awarded where the gross settlement fund is tens of millions of dollars as here (even if not a megafund per se)? *Cf. Vizcaino*, 290 F.3d 1043 (in appendix, suggesting that a megafund could be in the range of $50 million). In this regard, the Court notes that attorneys' fees were limited to 25% in the analogous cases cited by Plaintiffs in Exhibit 2 to the Co-Lead Counsel Declaration. *See* Co-Lead Counsel Decl., Ex. 2 (citing cases where gross settlement funds were $23 million and $13 million respectively)." ECF No. 246 at 3.

**Answer:** The proposed notice and Plaintiffs' motion for preliminary approval indicated that Plaintiffs would not seek more than 33% of the gross settlement funds. Plaintiffs have revised the notice to provide the specific percentage that they will seek—25% of the gross settlement funds—rather than the maximum percentage that would be allowed under the circumstances. *E.g.*, *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972, at *20 (N.D. Cal. Mar. 29, 2023) (33% and $55,500,000 award), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023); *Andrews v. Plains All Am. Pipeline L.P.*, No. CV154113PSGJEMX, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (32% and $73.6 million award).

**Question:** "As for costs, what is a rough breakdown of the costs incurred? Does the primary source of costs come from experts?" ECF No. 246 at 3.

**Answer:** Yes, the primary source of costs come from experts. The second comes from DISCO, a discovery platform, and consists primarily of costs associated with storing the large volumes of data at issue in this case. After the close of fact discovery, Plaintiffs archived large portions of data to minimize these costs, but preserving data in "warm" storage for review incurred substantial expense. The third largest expense is associated with mediation, which

1  was protracted.

2      Plaintiffs' current breakdown of costs (which they will update in their motion if

3  necessary) is:

4

| Total Accounting | Expenses |
|---|---|
| Discovery Vendor | $  181,001.90 |
| Experts | $  268,033.75 |
| Mediation | $  106,853.00 |
| Westlaw / Case Research | $  25,994.42 |
| Depositions | $  57,334.97 |
| Copying and service delivery charges | $  4,052.55 |
| Travel & hotels | $  21,971.21 |
| Filing, Pacer, and document download fees | $  456.08 |
| Meals | $  2,140.67 |
| **Total** | **$  667,838.55** |
| **Anticipated Final Discovery Vendor Invoices** | **$  18,000.00** |
| **Anticipated Total** | **$  685,838.55** |

15      In the proposed notice, Plaintiffs estimated that they would not seek more than $700k.

16  That projection reflects that there may be additional costs as the parties proceed through

17  settlement. For example, the final two rows of the table above reflect Plaintiffs' anticipated

18  remaining costs for their discovery vendor, which have not yet been billed.

19      **Question:** "The motion for preliminary approval indicates that the attorneys' fees (and

20  expenses) will be paid shortly after approval (i.e., there will be a "quick pay"). *See* Sett. Agmt.

21  § XIII.2 (providing that fees and expenses will be paid within 7 days). Should the Court hold

22  back at least a portion of the fees so that it can assess what the actual claims rate is?" ECF No.

23  246 at 3.

24      **Answer:** There is no need to hold back fees because the Court will already know the

25  actual claims rate *before* it rules on Plaintiffs' motion for fees and costs. Under the Settlement,

26  fees will be paid within 7 days of the Court's order *awarding fees and costs*. Sett. Agmt. § XIII.2

27  (emphasis added). The Court will consider Plaintiffs' final motion for fees and costs at the

28  Fairness Hearing, which under the parties' proposed schedule, will take place at least 120 days

after the Order on Preliminary Approval issues—more than two months after the Response Deadline for claims. ECF No. 241 at 14. The Court will have full information as to the final claims rate before it issues any order on fees, and before the quick-pay provision takes effect. *Id.*

## VI. Settlement Administration Costs.

**Question:** "Settlement administration costs are estimated to be $469,000. See Mot. at 36; Weisbrot Decl. ¶ 56. Can the parties explain the reason for this high amount of costs? Such information may be submitted under seal." ECF No. 246 at 3.

**Answer:** The expense associated with settlement administration comes from two primary drivers. First, delivering high-quality digital notice, focusing on the most valuable impressions that are actually likely to be seen by class members, drives a substantial portion of the expense. The second is claims administration and distribution. This portion of the administration expenses comes from a combination of the class size—processing (an estimated) one million claims, performing fraud checks, and sending monetary distributions (even digitally) to that number of people involves meaningful expense. A detailed breakdown of the cost estimate is included under seal as Exhibit A to the Weisbrot Declaration, for the Court's review. The updated cost estimate is $484,119, with the difference comprised of the costs associated with publication notice and potential additional translations requested by the Court. *See* Weisbrot Decl. ¶ 9; *id.* at Ex. A.

Plaintiffs also note that they considered bids from multiple reputable settlement administrators. ECF No. 241-1 at ¶ 35. Angeion's final bid was substantially identical in cost to the lowest bid considered, and far lower than the highest bid, while incorporating substantial judicially recognized fraud prevention measures that create additional value for class members by preserving a greater portion of the net settlement fund for distribution to actual class members. ECF No. 241 at 30-31.

## VII. Means of Notice.

The Court asked several questions regarding the means of notice.

**Question:** "The means of notice is largely digital in nature. Should there be some kind

of publication notice as well in recognition that all class members may not use computers or use them in such a way that they would be exposed to the proposed media campaign?" ECF No. 246 at 4.

**Answer:** Yes. The parties will include notice by publication in *USA Today*'s California regional edition. Weisbrot Decl. at ¶ 11. Regarding national publication notice, Angeion believes this is not cost effective compared to digital notice for purposes of reaching class members who may have moved outside of California, but if the Court disagrees, estimated costs for national notice are provided in the Weisbrot declaration. Weisbrot Decl. Ex. A, n. 1. This dollar amount is not otherwise reflected in the overall expected settlement administration costs. *Id.*

**Question:** "The class is defined as those who lived in California during a set period of time. Can the parties provide more information as to how people who moved away from California will get notice if the target audience is primarily California residents?" ECF No. 246 at 4.

**Answer:** The existing notice plan includes digital media across the United States, prorated to focus *first* on California, *next* on the states where the most Californians have moved during the class period, and *finally* including digital media across the entirety of the country. ECF No. 241 at 38-39 (describing the national media campaign in more detail); Weisbrot Decl. ¶ 12.

**Question:** "A settlement website will be maintained, with copies of the long-form notice available in English and Spanish. *See* Mot. at 4. Should the notice be available in other languages given the diverse population in California?" ECF No. 246 at 4.

**Answer:** Angeion has typically provided additional language translations when class members request them, but will now maintain copies of the long-form notice on the settlement website in Chinese (simplified), in addition to English and Spanish. Because there is an additional expense associated with each translation, Angeion proposes utilizing Angeion's live translation services as needed for any additional translation. Weisbrot Decl. ¶¶ 13-15. For the Court's information, Vietnamese, Tagalog, and Korean collectively round out the top-five non-

English languages spoken in California based on data from the 2020 census. Weisbrot Decl. ¶ 13.

**VIII. Filing of Claim.**

The Court asked two questions regarding class members who submit *both* a claim form and an opt-out request.

**Question:** "The settlement agreement provides that, if a class member submits both a claim form and opt out, the opt out will be deemed invalid and the class member will be considered a claimant. *See* Sett. Agmt. § VII.3. Why should the presumption not run the other way? *Compare* Sett. Agmt. § VIII.8 (providing that, if a class member both objects and opts out, the class member will be deemed to have opted out)." ECF No. 246 at 4.

**Answer:** Consistent with Angeion's experience, class members who take the time to submit claim forms, and also opt out, tend to expect to receive the monetary distribution they requested. *E.g.*, *Bozarth v. Envision Healthcare Corporation*, Case No. 5:17-cv-1935-FMO, 2019 WL 11790426 at ¶ 7.3.3 (C.D. Cal. 2019) (similar presumption). Although these actions are inconsistent, at least one such action—taking the time to file a claim form—is an indication that the individual wants to participate in the settlement, hence the presumption that a class member will be considered a claimant. By comparison, a class member who objects and opts out has not taken any action to indicate that they want to participate in the settlement, hence the presumption that the class member will be deemed to have opted out.

**Question:** "Could the settlement administrator contact class members to clear up any conflicts?"

**Answer:** Yes. The settlement administrator will attempt to contact any class member who timely submits both an opt-out request and a claim form to clarify the class member's intent. Class Counsel will also work with the settlement administrator to resolve any such conflict. Weisbrot Decl. ¶ 16.

**IX. Language of Class Notice.**

The Court had several questions regarding the language of class notice.

**(1) Long-Form Class Notice**

---

**Question:** "Page 1. In the second box, can a statement be made about an average award (*i.e.*, more than just "You may be entitled to money")?" ECF No. 246 at 4.

**Answer:** Yes. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17. For the Court's information, and as explained more fully in the Weisbrot Declaration, the settlement administrator advises against providing the estimated award on the notice when, as here, that payment will depend on the number of claims submitted, because it can lead to class member confusion. *Id.*

**Question:** "Page 3. The first section "Why did I get this notice" should reiterate that monetary relief is available. As above, can a statement be made about an average award?" ECF No. 246 at 4.

**Answer:** Yes. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 3. For the section "What do I do next," the 'Object' option should make clear that: (1) a person who objects still remains in the class and (2) a person who objects must still submit a claim form if they want to partake in the monetary relief." ECF No. 246 at 4.

**Answer:** These edits are incorporated. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** Page 5. In the section 'What happens next in this lawsuit,' the following sentence should be bolded: 'The date of the hearing may change without further notice to members of the class.'" ECF No. 246 at 4.

**Answer:** This edit is incorporated. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 5. In the section 'What does the settlement provide,' there should be an introductory sentencing making clear that both injunctive relief and monetary relief. In addition, the maximum dollar amount for attorneys' fees should be expressly stated. Finally, as above, can a statement be made about an average award?" ECF No. 246 at 4-5.

**Answer:** These edits are incorporated.  See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 6. In the section 'How much will my payment be,' can a statement be made about an average award?" ECF No. 246 at 5.

**Answer:** Yes. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 6. In the section 'How do I weigh my options,' there should be a statement making clear that (1) a person who objects still remains in the class and (2) a person who objects must still submit a claim form if they want to partake in the monetary relief. The flow chart should also be corrected to reflect such." ECF No. 246 at 5.

**Answer:** These edits are incorporated. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 8. In the section 'Do I have to pay the lawyers in this lawsuit,' the dollar amount of expenses should be expressly stated." ECF No. 246 at 5.

**Answer:** This edit is incorporated. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 9. In the section 'What if I don't want to be part of this settlement,' there should be a clarification that opt outs can also be made online." ECF No. 246 at 5.

**Answer:** This edit is incorporated. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Page 9. In the section 'What if I disagree with the settlement,' there should be a statement making clear that (1) a person who objects still remains in the class and (2) a person who objects must still submit a claim form if they want to partake in the monetary relief." ECF No. 246 at 5.

**Answer:** These edits are incorporated. See the revised draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17.

**Question:** "Pages 7, 9. In the sections 'How do I get a payment if I am a class member,' 'What if I don't want to be part of this settlement,' and 'What if I disagree with the settlement,' there should be clear statements as to when claims must be submitted, requests for exclusion made, and objections filed. Also, how many days are class members given to respond to the

notice? See Prop. Order ¶ 6 (stating that the Response Deadline shall be 56 days from issuance of the order); Prop. Order ¶ 15 (stating that dissemination of notice shall begin within 7 days of the issuance of the order)." ECF No. 246 at 5.

**Answer:** These edits are incorporated. See the attached draft attached as Exhibit B to the Weisbrot Declaration. Weisbrot Decl. ¶ 17. Under the notice plan, class members have 49 days to respond to the notice, which period remains open for the duration of the media plan, and for another two weeks after media is no longer running. *See* ECF No. 241 at 14.

**(2) Claim Form**

**Question:** "Is there a reason why the claim form requires a claimant to provide their exact address in California where they lived? Can there simply be the attestation (at the bottom of the form) that they lived in California during the relevant period?" ECF No. 246 at 5-6.

**Answer:** Yes. The claim form is updated to incorporate this edit. See the revised draft attached as Exhibit C to the Weisbrot Declaration. Weisbrot Decl. ¶ 18. The reason that the claim form required an exact address, as explained further in the Weisbrot Declaration, was to aid in Angeion's holistic fraud prevention efforts. *Id.*

**(3) Exclusion Form**

**Question:** "Should there be a note reminding class members who opt out that they can also submit the request for exclusion online?" ECF No. 246 at 6.

**Answer:** Yes. The exclusion form is updated to incorporate this edit. See the revised draft attached as Exhibit D to the Weisbrot Declaration. Weisbrot Decl. ¶ 19.

**(4) Digital Ads**

**Question:** "Sample digital ads have been provided. Can the ads be modified so that they say more than just 'a class action settlement may affect your rights'? In particular, the ads should reflect that monetary relief is available – and ideally, an estimate of an average award." ECF No. 246 at 6.

**Answer:** Yes. The digital ads are updated to incorporate these edits. See the revised drafts attached as Exhibit E to the Weisbrot Declaration. Weisbrot Decl. ¶ 20.

**X. Proposed Order.**

The Court asked three questions regarding the Proposed Order.

**Question:** "¶ 7. Does the reference to a class of 'approximately 40 million individuals' need to be modified or tempered?" ECF No. 246 at 6.

**Answer:** No. As described above, the class size here is approximately 40 million individuals based on discovery and judicially noticed census data.

**Question:** "¶ 27. Can specific dates be provided to the Court for deadlines?" ECF No. 246 at 6.

**Answer:** Yes. The parties note, however, that under the settlement agreement, the dates are premised off of the date that the Court enters an Order Granting Preliminary Approval. Thus, the specific dates listed here are estimates that are tied to the estimated date that the Court enters that Order, and may require marginal adjustment depending on the particular day that the Order issues. The parties can provide the Court with a final schedule with fixed dates within 24 hours of the entry of any Order Granting Preliminary Approval, and have provided an estimated schedule here (and in the revised Proposed Order filed concurrently).

**Schedule assuming order issues October 17, 2024:**

| Event | Date |
|---|---|
| Notice Begins | October 24, 2024 |
| Deadline for Class Counsel to File Motion for Service Award, Attorneys' Fees and Costs | October 31, 2024, which is 42 days before deadline to claim, object, or opt out |
| Notice of Class Action Settlement Completed Per Notice Plan | November 28, 2024 |
| Response Deadline for Class Members to Submit Claims for Monetary Relief, Opt-Out of the Settlement, or Object | December 12, 2024 |
| Responses to Objections Due | December 26, 2024 |

| Deadline for Class Counsel to File Motion for Final Approval | January 16, 2024 |
|---|---|
| Fairness Hearing | February 20, 2025 |

**Question:** "Do any provisions in the Proposed Order need to be modified given the Court's statements above?" ECF No. 246 at 6.

**Answer:** Yes. See the revised Proposed Order submitted concurrently, which reflects the parties' view as to necessary edits in line with the Court's questions here. The blanks for dates are updated pursuant to the Court's request for an estimated schedule. As noted above, these dates may need to be adjusted depending on the date that the Court enters the Order. The parties have also updated paragraph 14 to reflect the additions of publication notice in *USA Today* and the additional translated long-form notices available on the settlement website. Updates to paragraph 18 make clear that class members can submit the exclusion form online, and provide that the settlement administrator will reach out to any class members who submit competing claim forms and exclusion forms to clarify their intent. In the parties' view, there are no other necessary edits.

**CONCLUSION**

With this additional information and these adjustments, the parties respectfully request that the Court grant preliminary approval of their proposed settlement.

DATED: September 25, 2024

**GIBBS LAW GROUP LLP**

Respectfully submitted,

/s/ *Andre M. Mura*

Andre M. Mura (SBN 298541)
Ezekiel S. Wald (SBN 341490)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700
amm@classlawgroup.com
zsw@classlawgroup.com

Geoffrey A. Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiffs and the Certified Class*

DATED: September 25, 2024

**PERKINS COIE LLP**

By: */s/ Hayden M. Schottlaender*

Susan D. Fahringer (SBN 21567)
Nicola C. Menaldo (*pro hac vice*)
Anna M. Thompson (*pro hac vice*)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
SFahringer@perkinscoie.com
NMenaldo@perkinscoie.com
AnnaThompson@perkinscoie.com

Hayden M. Schottlaender (*pro hac vice*)
**PERKINS COIE LLP**
500 N. Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700
Facsimile:  (214) 965-7799
HSchottlaender@perkinscoie.com

Gabriella Gallego (SBN 324226)
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
GGallego@perkinscoie.com

*Attorneys for Defendant*
*Thomson Reuters Corporation*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory.

/s/ *Andre M. Mura*