Andre M. Mura (SBN 298541)
Ezekiel S. Wald (SBN 341490)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amm@classlawgroup.com
zsw@classlawgroup.com

Geoffrey A. Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiffs and the Certified Class*

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAT BROOKS and RASHEED SHABAZZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMSON REUTERS CORPORATION,<br><br>Defendant. | Case No. 3:21-cv-01418-EMC-KAW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 13, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 13, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Edward M. Chen, the Court-appointed Named Plaintiffs and Settlement Class Representatives Cat Brooks and Rasheed Shabazz, on behalf of themselves and the Settlement Class, will, and hereby do, move this Court for entry of an Order, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2):

1. Awarding attorneys' fees to Class Counsel in the amount of $6,875,000, based on an award of 25% of the monetary relief that the settlement confers;

2. Reimbursing Class Counsel for litigation costs and expenses in the amount of $670,885.29, because such costs are documented and reasonable; and

3. Awarding service payments to Plaintiffs Brooks and Shabazz in the amount of $5,000 each, because such awards are appropriate under the circumstances.

This motion is unopposed and is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Joint Declaration of Andre Mura and Geoffrey Graber ("Co-Lead Counsel Decl.") and the exhibit to that declaration, the Declarations of Cat Brooks ("Brooks Decl.") and Rasheed Shabazz ("Shabazz Decl."), the concurrently-filed Proposed Order, the pleadings and records on file in this action, and upon any additional evidence and argument that may be presented before or at the hearing of this motion.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION.................................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

ISSUE TO BE DECIDED......................................................................................................1

INTRODUCTION ..................................................................................................................1

ARGUMENT...........................................................................................................................3

    I.  Attorneys' fees ...........................................................................................................3

        A.  Class Counsel's Request for the Benchmark Attorneys' Fees is Reasonable as a Percentage of the $27.5 Million Fund. ..................................................4

            1.  Results Achieved, Skill Required and Quality of Work, and Litigation Risk.....................................................................................................5

            2.  Contingent Nature of the Fee. ..........................................................7

            3.  Lodestar Cross-Check...........................................................................7

    II.  Administration expenses........................................................................................10

    III. Litigation costs .......................................................................................................10

    IV. Class representative service awards .......................................................................12

CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    Page(s)

*Andrews v. Plains All Am. Pipeline L.P.*,
   2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .................................................................4

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .....................................................................................5

*Brice v. Rodgers*,
   2023 WL 3568176 (9th Cir. Jan. 5, 2023) .......................................................................4

*Brice v. Gonzalez*,
   2023 WL 3090669 (9th Cir. Mar. 31, 2023) ....................................................................4

*Davis v. Yelp, Inc.*,
   2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ...............................................................3, 4

*Hamilton v. Juul Labs, Inc.*,
   2021 WL 5331451 (N.D. Cal. Nov. 16, 2021) .............................................................10, 13

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) .......................................................................................4, 7, 13

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................................................3

*In re Facebook Internet Tracking Litig.*,
   2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) .............................................................7, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
   2024 WL 700985 (9th Cir. Feb. 21, 2024) ......................................................................7

*In re Google Referrer Header Priv. Litig.*,
   2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ...........................................................5, 7, 10

*In re MyFord Touch Consumer Litig.*,
   2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .................................................................5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................................10

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..........................................................................................13

*In re: Soc. Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*,
  No. 22-md-03047-YGR (N.D. Cal. Mar. 15, 2023) .................................................................8

*In re Yahoo Mail Litig.*,
  2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ...................................................................13

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
  2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ...........................................................4, 5, 8

*Marolda v. Symantec Corp.*,
  2013 WL 12310821 (N.D. Cal. Apr. 5, 2013) ...................................................................4

*Merante v. Am. Inst. for Foreign Study, Inc.*,
  2022 WL 2918896 (N.D. Cal. July 25, 2022) ...................................................................13

*Monterrubio v. Best Buy Stores, L.P.*,
  291 F.R.D. 443 (E.D. Cal. 2013) ...................................................................................7

*Perez v. DirecTV Grp. Holdings, LLC*,
  2023 WL 1931376 (C.D. Cal. Jan. 23, 2023) ...................................................................7

*Perez v. DirecTV, LLC*,
  2023 WL 3391488 (9th Cir. Mar. 30, 2023) ...................................................................7

*Perkins v. Linkedin Corp.*,
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ...............................................................5, 10

*Ramirez v. LexisNexis Risk Sols.*,
  2024 WL 1521448 (N.D. Ill. Apr. 8, 2024) ...................................................................6, 7

*Reyes v. Experian Info. Sols., Inc.*,
  856 F. App'x 108 (9th Cir. 2021) .......................................................................3, 4, 9, 10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................13

*Roe v. SFBSC Mgmt., LLC*,
  2022 WL 17330847 (N.D. Cal. Nov. 29, 2022) ...................................................................8

*Samora v. Chase Dennis Emergency Med. Grp., Inc*,
  2023 WL 5000567 (N.D. Cal. Aug. 4, 2023) ...................................................................7

*Senne v. Concepcion*,
  2023 WL 4824938 (9th Cir. June 28, 2023) ...................................................................4

*Senne v. Kansas City Royals Baseball Corp.*,
2023 WL 2699972 (N.D. Cal. Mar. 29, 2023)..................................................................4

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .........................................................................................4

*Thomas v. Dun & Bradstreet Credibility Corp.*,
2017 WL 11633508 (C.D. Cal. Mar. 22, 2017) ................................................................5

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) .........................................................................................8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...............................................................................3, 9, 10

Rules

Fed. R. Civ. P. 23.............................................................................................................3

Fed. R. Civ. P. 30(b)(6) ....................................................................................................6

Other Authorities

B. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
7 J. Empirical L. Stud. 811, 833, 838 (2010)...............................................................4, 5

Theodore Eisenberg, et al., *Attorneys' Fees in Class Action Settlements: 2009-2013*,
92 N.Y.U. L. Rev. 937 (2017) ........................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUE TO BE DECIDED

This Motion presents three issues: (1) whether to award attorneys' fees to Class Counsel in the amount of $6,875,000, which is 25% of the gross settlement fund; (2) whether to reimburse Class Counsel for litigation costs in the amount of $670,885.29, because such costs are documented and reasonable; and (3) whether to award service payments to Plaintiffs Brooks and Shabazz in the amount of $5,000 each, because such awards are appropriate under the circumstances.

### INTRODUCTION

This case is about the commercial use of information about Californians. Thomson Reuters and its data partners aggregated large swathes of information about California residents for use by business and governmental customers through a one-stop shop: CLEAR. California consumers, for the most part, had no idea that this was going on. They did not understand that their data was being used by Thomson Reuters' customers or why those customers reviewed information about them through CLEAR. They received no compensation for this commercial use of their information. And they did not understand how to—or in some cases were unable to—make choices about how that data was used.

The proposed settlement in this case provides relief on each front.

*First*, the profits from Californians' data: Thomson Reuters will establish a non-reversionary, $27,500,000 common fund for proportional monetary payments for settlement class members who submit a claim. The fund will also cover any court-approved expenses, costs, and attorneys' fees. By any measure, this is a meaningful proportion of the profits Thomson Reuters earned from Californians' personal information over the class period. ECF No. 239-002 at 26 ["Approval Mot."].

*Second*, the business practices: Thomson Reuters will enhance its procedures for California residents to exercise control over information about them available through CLEAR, and those changes will be required for four years. The enhancements are threefold, covering notice, data deletion, and changes to CLEAR's settings and procedures. *Notice*: Thomson

Reuters will create and maintain a public-facing website for California residents to learn about CLEAR, about the types of customers who use it, and the types of data available through it. *Data deletion*: Thomson Reuters will make it easier for California residents to remove certain data from CLEAR by no longer requiring them to provide a driver's license to do so, and it will direct removal requests that it receives to its network of data suppliers so that they too can remove information from the sources that supply CLEAR. *Changes to settings and procedure*: Thomson Reuters will make a series of changes to how it runs CLEAR, incorporating principles of privacy by design that meaningfully respond to the privacy harms alleged in this case.

Success has many mothers—here, a Court working diligently through difficult legal questions of first impression and complex technology; California consumers devoting time and effort as class representatives; and a sophisticated and well-represented company with strong legal defenses nonetheless willing to make substantial accommodations for Californians.

And yes, class counsel. We assumed financial risks in prosecuting this case and worked hard to achieve comprehensive monetary *and* non-monetary benefits for the class. The size of the fund may not eclipse the largest nationwide data privacy cases, but it was no small feat to achieve a fund of this size given economic valuations of data like this; the lack of actual damages to class members; and the novel nature of Plaintiffs' unjust enrichment claim, which was based solely on Thomson Reuters' gain rather than any corresponding monetary loss of class members. What's more, the fund compares favorably with other class settlements of similar claims and allegations. Put in context, then, the fund is significant—and a significant achievement.

Delivering meaningful non-monetary relief was more challenging still. Thomson Reuters strongly maintained throughout this case that its CLEAR business was socially beneficial, that its privacy practices were adequately protective, and that Plaintiffs' claim for injunctive relief threatened its fundamental business model. We persisted—and succeeded—in obtaining additional privacy-protective reforms that are meaningful and valuable to the Class, including the ability for class members to leverage Thomson Reuters' existing institutional relationships with data suppliers to cast their data deletion requests far more broadly than they

may ever have known to look absent this settlement.

The results achieved over the course of four years of litigation and settlement efforts merit an award of attorneys' fees to Class Counsel in the amount of $6,875,000. That award constitutes 25 percent of the monetary benefits that the settlement confers, even without considering the substantial non-monetary benefits. Counsel should also be reimbursed for litigation costs in the amount of $670,885.29,[1] because those costs are adequately documented and reasonable. And finally, it is appropriate under the circumstances to award the class representatives $5,000 each for their contributions to this case.

## ARGUMENT

### I. Attorneys' Fees

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Courts may award attorneys' fees based on the percentage method, as Class Counsel requests here, and twenty-five percent of a common fund is the "benchmark" for a reasonable fee award in the Ninth Circuit. *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (Chen, J.); *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 111 (9th Cir. 2021). District courts may depart (upward or downward) from the 25 percent benchmark rate by "providing adequate explanation in the record of any 'special circumstances.'" *In re Bluetooth*, 654 F.3d at 942. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

"Typically, in setting the fee the court should consider: (1) the results; (2) risk to class counsel; (3) secondary benefits of the settlement; (4) the market rate in the particular field of law; (5) the burdens class counsel experienced; and (6) whether the fee was contingent." *Reyes*,

---

[1] Counsel will separately request reimbursement for settlement administration expenses as those costs are incurred.

856 F. App'x at 110. A lodestar "cross-check is discretionary" but encouraged when the percentage method is used. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *Marolda v. Symantec Corp.*, 2013 WL 12310821, at *6 (N.D. Cal. Apr. 5, 2013) (Chen, J.) ("The lodestar method may be used as a cross-check of the percentage method.").

"When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, No. 20-CV-02155-LB, 2022 WL 1593389, at *10 (N.D. Cal. Apr. 21, 2022), *appeal dismissed sub nom. Brice v. Rodgers*, No. 22-15764, 2023 WL 3568176 (9th Cir. Jan. 5, 2023), and *appeal dismissed sub nom. Brice v. Gonzalez*, No. 23-15103, 2023 WL 3090669 (9th Cir. Mar. 31, 2023); *accord Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003). "Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits made available to class members rather than the actual amount ultimately claimed." *In re Zoom*, 2022 WL 1593389, at *10 (collecting cases).

### A. Class Counsel's Request for the Benchmark Attorneys' Fees is Reasonable as a Percentage of the $27.5 Million Fund.

Class counsel requests $6,875,000 in attorneys' fees, which is the benchmark 25 percent of the $27,500,000 monetary fund. This request is in line with (if not below) fee awards in Ninth Circuit class actions. *See Davis*, 2023 WL 3063823, at *2 (25 percent is the benchmark in the Ninth Circuit); *Reyes*, 856 F. App'x at 111 (25% at a 2.88 multiplier is in line with those "routinely approved by this court"); *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972, at *20 (N.D. Cal. Mar. 29, 2023) (33% and $55,500,000 award), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023); *Andrews v. Plains All Am. Pipeline L.P.*, No. CV154113PSGJEMX, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (32% and $73.6 million award); B. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 833, 838 (2010) (examining 111 settlements in the Ninth Circuit in which the percentage method was used, and finding the most common percentages were 25% and 35%, and a mean of 23.9% and median of 25%); *see also* Theodore Eisenberg, et al., *Attorneys' Fees in Class Action Settlements: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (2017)

(finding mean and median of 27% and 29% nationwide, and 26% and 25% in the Ninth Circuit). According to Fitzpatrick, nearly half of all settlements in the Ninth Circuit had fee awards that fell between 25% (inclusive) and 30%. *See* J. Empirical L. Stud. at 820; Approval Mot. at 26 (collecting cases); ECF No. 250 at 5 (collecting cases).

The benchmark 25 percent award here is also consistent with the fee awards in comparable class actions. *In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545, at *10 (N.D. Cal. Oct. 16, 2023) (awarding 25% of $23,000,000 at 1.85 multiplier); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (awarding 25% of $13,000,000 at 1.45 multiplier). Applying the various factors that the Ninth Circuit district courts may consider in deciding whether a fee award is reasonable, the benchmark 25 percent is justified here. And this request is even more reasonable when factoring in the value of injunctive relief. *In re Zoom*, 2022 WL 1593389, at *10.

### 1. Results Achieved, Skill Required and Quality of Work, and Litigation Risk.

Consider first the factors that assess how the relief in this settlement compares to the obstacles counsel faced: the results achieved by class counsel, the complexity of the case, and the litigation risks assumed.

By any measure, the results achieved here are favorable. As the Court found at preliminary approval, the $27.5 million monetary portion of the settlement is reasonable in light of Thomson Reuters' maximum liability here. ECF No. 259; Approval Mot. at 26 (discussing, under seal, the proportion of maximum verdict value achieved here); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal. Mar. 28, 2019) (Chen, J.). This is particularly so here, where class members do not allege actual damages. *Thomas v. Dun & Bradstreet Credibility Corp.*, 2017 WL 11633508, at *13 n.3 (C.D. Cal. Mar. 22, 2017).

These results were not easily achieved. Thomson Reuters was well represented and its legal defenses were formidable. And yet counsel secured important rulings at various stages of the case, through hard work and skill. This includes the motion to dismiss, which addressed

complex legal issues about the applicability of Section 230 of the Communications Decency Act, the First Amendment, and the applicability of California consumer protection law to the corporate use of information *about* California residents but compiled from other third party sources; the motion for class certification where Plaintiffs defeated Thomson Reuters' arguments that the Named Plaintiffs lacked standing to pursue their claims and that individualized inquiries may justify Thomson Reuters' conduct in some circumstances; the motion for interlocutory appeal, which was denied; and significant victories in discovery motion practice, including winning the right for Plaintiffs' expert to use the CLEAR product.

Counsel also navigated a lengthy and complex discovery process against a sophisticated corporate defendant. Over nearly three years, counsel secured nearly 500,000 pages of documents, took seven fact depositions, three expert depositions, and deposed Thomson Reuters pursuant to Fed. R. Civ. P. 30(b)(6), and negotiated responses to twenty-three interrogatories and sixty-five requests for admission. Co-Lead Counsel Decl. at ¶¶ 13-15.

Thomson Reuters was no idle player in discovery either. In response to Thomson Reuters' twenty-three interrogatories and fifty-eight requests for production, Counsel spent extensive time working with both Named Plaintiffs to prepare responses and produce responsive documents. Co-Lead Counsel Decl. at ¶¶ 18-19; Brooks Decl. at ¶ 6; Shabazz Decl. at ¶ 6. In sum, the Named Plaintiffs turned over nearly 700,000 documents for counsel's review, and ultimately produced more than 40,000 pages of responsive information. Co-Lead Counsel Decl. at ¶ 18. Thomson Reuters also deposed both Named Plaintiffs, and both of Plaintiffs' class certification experts. *Id.* at ¶¶ 19, 22.

Overall, the case had considerable risk because the legal issues were complex and uncertain. Approval Mot. at 18-26. The risks attendant to this litigation were well demonstrated in April of this year, when the Northern District of Illinois dismissed in full a similar lawsuit filed against one of Thomson Reuters' competitors, LexisNexis. *Ramirez v. LexisNexis Risk Sols.*, ---F. Supp. 3d---, 2024 WL 1521448, at *1 (N.D. Ill. Apr. 8, 2024). Despite these risks, counsel negotiated a strong result for the class—substantial monetary and non-monetary benefits—a result that reflects favorably on them, particularly when compared to the results in similar

1  cases. *Id.*; Approval Mot. at 28-29 (collecting cases); ECF No. 240-002 at Ex. 2 (same).

2      In all, these considerations amply support an award at the benchmark 25 percent.

3                  **2.  Contingent Nature of the Fee.**

4      "Courts have long recognized that the attorneys' contingent risk is an important factor

5  in determining the fee award and may justify awarding a premium over an attorney's normal

6  hourly rates." *Perez v. DirecTV Grp. Holdings, LLC*, 2023 WL 1931376, at *8 (C.D. Cal. Jan. 23,

7  2023) (quoting *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013)), *appeal*

8  *dismissed sub nom. Perez v. DirecTV, LLC*, No. 23-55131, 2023 WL 3391488 (9th Cir. Mar. 30, 2023).

9  Class Counsel undertook this case on a contingent basis, incurring a total of $670,885.29 in out-

10  of-pocket costs and billing (collectively) 8851.4 hours, resulting in a lodestar of $5,559,647.50—

11  knowing they could receive no compensation for their efforts and no recoupment of expenses.

12  In fact, while a contingency practice is always somewhat risky, here the risk that counsel would

13  receive no recovery was enhanced by the complex and novel nature of the case. *See Ramirez*,

14  2024 WL 1521448, at *1. This factor, then, supports an award of the benchmark.

15                  **3.  Lodestar Cross-Check.**

16      To determine the reasonableness of a fee award, courts compare the percentage of the

17  common fund with counsels' lodestar calculations. *In re Apple*, 50 F.4th at 784. It is well

18  established, however, that "[t]he lodestar cross-check calculation need entail neither

19  mathematical precision nor bean counting ... [courts] may rely on summaries submitted by the

20  attorneys and need not review actual billing records." *Samora v. Chase Dennis Emergency Med.*

21  *Grp., Inc*, No. 20-CV-02027-BLF, 2023 WL 5000567, at *2 (N.D. Cal. Aug. 4, 2023); *accord In re*

22  *Google Referrer Header*, 2023 WL 6812545, at *11; *In re Facebook Internet Tracking Litig.*, No. 5:12-

23  MD-02314-EJD, 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (overruling objections based

24  on submission of billing summaries and explaining "declarations inclusive of [counsel's] rates,

25  hours, and summaries of their roles and time spent in the case" sufficed), *aff'd sub nom. In re*

26  *Facebook, Inc. Internet Tracking Litig.*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024).

27      The first step in this comparison requires the Court to determine whether the hourly

28  rates sought by counsel are reasonable. The Court has "broad discretion in setting the

---

reasonable hourly rates used in the lodestar calculation" including "its own experience," but should consider the qualifications and experience of counsel in reference to the relevant market. *In re Zoom*, 2022 WL 1593389, at *11; *accord Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2022 WL 17330847, at *20 (N.D. Cal. Nov. 29, 2022). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *In re Facebook Internet Tracking*, 2022 WL 16902426, at *12. Counsel here spent at least 8851.4 hours litigating this case. The hourly billing rates for partners and associates are set forth in the accompanying declaration and range from $445 to $1050; and for non-attorney staff, from $220 to $645. *See* Co-Lead Counsel Decl. at ¶¶ 29-31, Ex. 1; ECF No. 250 at 4. The declaration, moreover, provides examples of similar class actions in which counsel's rates were accepted as reasonable. Co-Lead Counsel Decl. at ¶¶ 29-30. Given counsel's experience, work, and the complex nature of this case, counsel's rates here are reasonable.

Next, the Court determines whether the expenditure of time was generally reasonable. Counsel provides a declaration memorializing the number of hours expended by attorneys and staff on various tasks, using fourteen different task code categories, consistent with the time-keeping protocol adopted in *In re: Soc. Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (N.D. Cal. Mar. 15, 2023), ECF No. 190 at Ex. A. Co-Lead Counsel Decl. at ¶¶ 33-34, Ex. 1. Most of the hours billed were spent completing legal research regarding the claims and evidence needed to prove them; drafting memoranda and briefs; reading, reviewing, and contextualizing documentary evidence; working with experts; and learning about complex technology and licensing arrangements for the data that populates CLEAR. There was also time spent negotiating the monetary and non-monetary relief, and drafting the settlement and approval papers. *Id.*

| Task | Hours Spent | Lodestar |
|------|-------------|----------|
| Case management duties | 13.6 | $11,888.50 |
| Leadership calls/meetings | 66.5 | $44,645.50 |
| Administrative | 36 | $18,001.00 |
| Court appearances | 62.7 | $49,638.50 |
| Pleadings/briefing/pre-trial motions/legal memoranda | 1,844.1 | $1,098,397.00 |
| Research | 307.5 | $159,306.00 |
| Litigation strategy & analysis | 201.6 | $150,665.50 |
| Document review & analysis | 537.5 | $288,047.00 |
| Discovery | 3,244.9 | $2,123,816.00 |
| Experts | 1,886.2 | $1,144,871.50 |
| Settlement | 615.7 | $446,074.50 |
| Trial preparation | 0 | $0 |
| Appeal | 35.1 | $24,296.50 |
| Miscellaneous | 0 | $0 |
| **Total:** | **8,851.4** | **$5,559,647.50** |

Counsel's declaration also includes a breakdown per biller per law firm in Exhibit 1, as well as tables demonstrating the years of practice and billing rates of attorneys and staff at these law firms. Co-Lead Counsel Decl. at ¶¶ 29-31, Ex. 1.

The requested fee of $6,875,000 represents a slight positive multiplier of 1.24 of Class Counsel's lodestar, even after a voluntary, substantial reduction in hours (1,444.4) that were recorded by contract attorneys who performed document review. Co-Lead Counsel Decl. at ¶ 29. Even if class counsel were to make further arbitrary reductions, such as an across-the-board 5% (1.3x multiplier) or 10% (1.37x multiplier) reduction to the lodestar, the multiplier here would still be well within the range of reasonableness. *Reyes*, 856 F. App'x at 111 (indicating that a fee award of 25% at a 2.88 multiplier would be in line with those "routinely approved by

this court" (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 25% fee recovery at 3.65 multiplier, and explaining that that multiplier "was within the range of multipliers applied in common fund cases"))).

Given the quality of counsel's work and the results achieved in these circumstances, the lodestar comparison easily supports the reasonableness of the requested fee award. *Reyes*, 856 F. App'x at 111; *Vizcaino v. Microsoft Corp.*, 290 F.3d at 1051; *see also In re Google Referrer Header*, 2023 WL 6812545, at *10 (awarding 25% of $23,000,000 at 1.85 multiplier); *Perkins*, 2016 WL 613255, at *15 (awarding 25% of $13,000,000 at 1.45 multiplier).

## II. Administration Expenses

Under the Settlement Agreement, Angeion Group, LLC will be provided payment for its services out of the settlement fund. Settlement Agreement § IX.3. Plaintiffs will request reimbursement to Angeion as those costs are incurred, with the first request expected following the completion of digital notice. As previously reported, the total estimated costs of settlement administration are $484,119, with details provided to the Court under seal. *See* ECF No. 250 at 7; ECF No. 249-002 at ¶ 9, Ex. A.

## III. Litigation Costs

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, at *13 (N.D. Cal. Nov. 16, 2021) (Chen, J.) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008)). Here, Class Counsel request that the Court approve the reimbursement of $670,885.29 in litigation expenses and costs, which were carried by Gibbs Law Group in the amount of $358,949.17; Cohen Milstein in the amount of $201,758.12; and Justice Catalyst, co-counsel for the named plaintiffs, in the amount of $110,178.00. *See* Co-Lead Counsel Decl. at ¶¶ 35-36.

Class Counsel previously provided a summary of their costs incurred thus far in the litigation, which noted that certain bills from their discovery vendor were still outstanding. ECF No. 250 at 6. Class counsel have now updated their cost totals, which are:

| Total Accounting | Expenses |
|---|---|
| Discovery Vendor | $ 187,348.50 |
| Experts | $ 268,033.75 |
| Mediation | $ 106,853.00 |
| Westlaw / Case Research | $ 25,994.42 |
| Depositions | $ 57,334.97 |
| Copying and service delivery charges | $ 4,052.55 |
| Travel & hotels | $ 19,345.44 |
| Filing, Pacer, and document download fees | $ 456.08 |
| Meals | $ 1,466.58 |
| **Total** | **$ 670,885.29** |

The categories of costs are as follows.

Discovery vendor costs account for the expenses associated with processing and storing documents produced by Thomson Reuters for active review and management, processing and storing documents collected from the Named Plaintiffs for production to Thomson Reuters, and the production process.

Expert costs account for the highly qualified class certification and merits experts retained by Class Counsel here. At class certification, Plaintiffs retained two experts. *First*, Joseph Turow, Ph.D., a renowned privacy scholar and the Robert Lewis Shayon Professor of Communication at the Annenberg School for Communication at the University of Pennsylvania, who opined on the history and background of digital privacy rights and a framework for assessing Californians' privacy injuries here. *See* ECF No. 221 (denying motion to exclude Professor Turow's testimony). *Second*, Terry Lloyd, CPA, CFA, the Managing Director of Finance Scholars Group, Inc., who developed a calculation to measure Thomson Reuters' unjust enrichment from its sale of access to Californians' personal information. *Id.* (denying motion to exclude Mr. Lloyd's testimony). Both Professor Turow and Mr. Lloyd reprised their analyses for the merits, preparing updated reports for summary judgment and trial. Co-Lead Counsel Decl. at ¶ 25.

Class counsel also retained three additional experts for the merits in this litigation. *Id.* Sarah Lamdan, J.D., the Deputy Director of the American Library Association (and a former

professor at The City University of New York School of Law), who wrote the critically acclaimed book *Data Cartels* discussing Thomson Reuters' business practices and those of its competitors, opined on the data broker marketplace and Thomson Reuters' place within it, and discussed the alleged privacy harms Californians experienced from those business practices. *See id.* Becky Yoose, CIPP/US, CIPT, a library scientist and data privacy consultant and the founder of LDH Consulting Services, who used the CLEAR product pursuant to Court order here and opined on alleged privacy harms to Californians, as well as a framework of improvements to CLEAR's procedures and systems to alleviate those harms. *See id.* And finally, Sarah Butler, MA, the Senior Managing Director of National Economic Research Associates, Inc., one of the world's leading testifying experts in survey research and sampling, who designed and conducted a survey of Californians here. *See id.*

Mediation costs cover the parties' mediation negotiations in front of Judge Edward Infante (ret.) and Judge Layn Phillips (ret.). Westlaw costs are costs incurred for legal research conducted in this litigation. Deposition costs include costs from the deposition vendors who conducted in-person and virtual depositions throughout this case, including their court reporters. Copying and service delivery charges cover the expense of preparing hard copy documents for service in this litigation, including courtesy copies. Travel and hotels include the expenses attendant to traveling for in-person depositions and court appearances. Filing and pacer fees account for fees to the Court system for the filing and review of documents in this litigation. And meals cover a small number of food expenses incurred specifically during work on this case, for example, meals while traveling for in-person depositions and mediations, or during major filings in this litigation.

Accordingly, Class Counsel request reimbursement of the foregoing costs, which are reasonable and adequately documented.[2]

**IV. Class Representative Service Awards**

Courts have discretion to award service payments to class representatives "to

---

[2] The Court indicated at the hearing on preliminary approval that receipts need not be provided unless requested, and therefore Class Counsel will provide them upon request.

compensate [them] for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted); *In re Apple*, 50 F.4th at 785 ("We have repeatedly held that 'reasonable incentive awards' to class representatives 'are permitted[.]'").

Here, each class representative requests $5,000 as a service award. This request is set at the Ninth Circuit's benchmark award for representative plaintiffs. *See Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *9 (N.D. Cal. July 25, 2022) (Chen, J.); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015). This amount is an appropriate enhancement because each representative Plaintiff actively participated in the litigation: each Named Plaintiff reviewed the pleadings, responded to interrogatories, worked with counsel to collect and produce responsive documents, and sat for a deposition. *See* Brooks Decl. at ¶ 6; Shabazz Decl. at ¶ 6; *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (awarding $5,000.00 where the representative plaintiffs produced personal and work emails, responded to interrogatories, and testified at depositions); *Hamilton*, 2021 WL 5331451, at *14 (approving service awards of $10,000) (Chen, J.).

Accordingly, each class representative should be awarded a service award of $5,000.

## CONCLUSION

For the reasons just discussed, the Court should grant Plaintiffs' motion for attorneys' fees, costs, and service awards in full.

DATED: October 25, 2024                         Respectfully submitted,

                                                */s/ Andre M. Mura*

                                                Andre M. Mura (SBN 298541)
                                                Ezekiel S. Wald (SBN 341490)
                                                **GIBBS LAW GROUP LLP**
                                                1111 Broadway, Suite 2100
                                                Oakland, California 94607
                                                (510) 350-9700

amm@classlawgroup.com
zsw@classlawgroup.com

Geoffrey A. Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL**
**PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiffs and the Certified Class*