1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

11

12 | CAT BROOKS and RASHEED SHABAZZ, individually and on behalf of all others similarly situated,

Case No. 3:21-cv-01418-EMC-KAW

13

14

**[PROPOSED] JUDGMENT**

15                          Plaintiffs,

Judge: Hon. Edward M. Chen

16        v.

17 | THOMSON REUTERS CORPORATION,

18                          Defendant.

19
20
21
22
23
24
25
26
27
28

The Court hereby enters final judgment as defined in Federal Rule of Civil Procedure 58(a) in this Action as between Plaintiffs and Defendants. Pursuant to this Final Judgment, IT IS HEREBY ORDRED, ADJUDGED AND DECREED AS FOLLOWS:

1.    Unless otherwise defined herein, all terms that are capitalized herein shall have the same meaning ascribed to those terms in the Settlement Agreement.

2.    The Court has jurisdiction over this litigation, Plaintiffs, Defendant, and Settlement Class Members, and any party to any agreement that is part of or related to the Settlement Agreement.

3.    The Settlement Agreement is approved without modification as fair, reasonable, and adequate to, and in the best interest of, the Settlement Class.

4.    Upon entry of the Final Approval Order, Plaintiffs and each of the Participating Settlement Class Members shall be deemed to have released the Thomson Reuters Released Parties from any and all Released Claims; and Defendant shall be deemed to have released Plaintiffs Cat Brooks and Rasheed Shabazz from Defendant's Released Claims, as set forth in the Settlement Agreement.

5.    Without affecting the finality of the Court's Judgment in any way, the Court retains jurisdiction over this matter in accordance with Sections XV.2.h and XXI of the Settlement Agreement and paragraph 14 of the Final Approval Order, ECF No. 280.

6.    The Parties and all Settlement Class Members are hereby ordered to comply with the terms of the Settlement Agreement.

7.    This Action is dismissed in its entirety with prejudice, with all Parties to bear their own costs and attorney's fees except as provided by the Settlement Agreement and the Court's orders.

**IT IS SO ORDERED.**

DATED: _____          _____
                                        The Hon. Edward M. Chen
                                        United States District Judge

# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into by and between (i) Plaintiffs Cat Brooks and Rasheed Shabazz ("Plaintiffs"), on their own behalf and on behalf of all members of the Settlement Class, as defined below, on the one hand, and (ii) Defendant Thomson Reuters Corporation ("Defendant") and Thomson Reuters Enterprise Centre GmbH ("TREC") (Defendant and TREC are collectively "Thomson Reuters"), on the other hand (each, a "Party," and collectively, the "Parties"). This Agreement is effective as of its execution by all Parties through their respective authorized representatives.

## RECITALS

### A.     Procedural Background

1.      On December 3, 2020, Plaintiffs Cat Brooks and Rasheed Shabazz, on behalf of themselves and all others similarly situated, filed their Complaint in the Action.

2.      Defendant removed the Action to federal court on February 26, 2021 pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453(b), and filed a Motion to Dismiss the Complaint on April 5, 2021.

3.      On August 16, 2021, the Court granted in part and denied in part Defendant's Motion to Dismiss.

4.      On September 10, 2021, Defendant filed an Answer to the Complaint in the Action.

5.      On November 9, 2022, Plaintiffs filed a proposed First Amended Complaint and a Motion for Class Certification. On November 14, 2022, Plaintiffs filed their First Amended Complaint in the Action. On December 2, 2022, Plaintiffs re-filed their First Amended Complaint pursuant to Stipulation and Court Order.

6.      On February 6, 2023, Plaintiffs and Defendant both filed motions to exclude each other's class certification expert opinions. On May 16, 2023, the Court denied the motions to exclude class certification experts. On July 31, 2023, the Court granted Plaintiffs' Motion for Class Certification, certifying both of Plaintiff's claims under Fed. R. Civ. P. 23(b)(3), and certifying Plaintiffs' claim for injunctive relief under Fed. R. Civ. P. 23(b)(2).

7.      On August 14, 2023, Defendant petitioned the Ninth Circuit for interlocutory review of the Court's Order Granting Class Certification under Fed. R. Civ. P. 23(f). On November 17, 2023, the Ninth Circuit denied Defendant's petition for review under Fed. R. Civ. P. 23(f).

8.      Over the course of this Action, Plaintiffs and Defendant, by and through their counsel, engaged in extensive discovery, including the production and review of voluminous documents, interrogatories, depositions of both of the Plaintiffs, depositions of numerous Thomson Reuters witnesses, expert discovery on class certification, and expert discovery for summary judgment and trial.

9.      Beginning in October 2022, Plaintiffs' Counsel and Thomson Reuters' Counsel engaged in extensive settlement negotiations. These negotiations included one mediation before the Honorable Edward O. Infante, retired judge of the United States District Court for the Northern District of California, and multiple mediations before the Honorable Layn R. Phillips, retired judge of the U.S. District Court for the Western District of Oklahoma.

10.     After extensive negotiations between Plaintiffs and Thomson Reuters spanning four joint mediation dates, including one remote mediation before Judge Infante as well as two in-person mediations and a number of follow up discussions performed with the assistance of Judge Phillips, the Parties agreed to accept a mediator's proposal presented by Judge Phillips, settling the Action for monetary consideration in the amount of $27.5 million (an amount proposed by Judge Phillips) and prospective relief for the certified class. These negotiations were intensive, arms-length, and required significant time and resources of the parties.

11.     On May 16, 2024, the Parties entered into a settlement term sheet memorializing a settlement-in-principle for non-reversionary monetary relief and prospective relief for the putative class.

**B.      This Agreement**

12.     By executing this Agreement, the Parties intend to settle and dispose of the Action, fully and completely, both individually and on a classwide basis, as more fully set forth in this Agreement.

13.     The Court will be asked to certify for settlement purposes only, in accordance with the terms of this Agreement, a Settlement Class, as defined below. The Settlement Class is materially identical to the class previously certified in the Court's Order Granting Plaintiffs' Motion for Class Certification, except that it replaces the time-limiting language regarding the limitations period with a fixed time frame for inclusion in the Settlement Class and eliminates unnecessary language regarding consent.

14.     Plaintiffs and Defendant, through their respective counsel, have conducted extensive discovery as part of the Action, including through retained experts, and have thoroughly analyzed both the underlying events and claims alleged in the Action and the potential defenses thereto.

15.     The mutual costs, risks, and hazards of continuing to prosecute and defend the Action have led Plaintiffs and Thomson Reuters to resolve the matter by way of settlement.

16.     Plaintiffs' Counsel have concluded, taking into account the benefits of the settlement set forth in this Agreement and the risks and delay of further litigation, as well as having evaluated the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, that this settlement is fair, reasonable, and adequate and in the best interests of the Plaintiffs and all members of the Settlement Class.

17.     Defendant has denied and continues to deny each and every claim and contention alleged in the Action. Thomson Reuters asserts that it has complied with all applicable provisions of federal and state statutory and common law. Neither this Agreement, nor any document referred to or contemplated in this Agreement, nor any action taken to carry out this Agreement, is or may be construed or used in the Action or in any other action, litigation, or

proceeding as an admission, concession, or indication by or against Thomson Reuters of any fault, wrongdoing, or liability whatsoever.

18.    NOW, THEREFORE, subject to the approval of the Court, Plaintiffs, on the one hand, and Thomson Reuters, on the other hand, wish to terminate the Action and effect compromise and settlement as set forth in this Agreement.

## I.    DEFINITIONS

Unless otherwise defined in this Agreement, the following terms used in this Agreement will have the meanings ascribed to them as set forth below:

1.    "**Action**" means the litigation *Brooks v. Thomson Reuters Corp.*, Case No. 3:21-cv-01418-EMC (KAWx), which is pending in the United States District Court for the Northern District of California.

2.    "**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with or has an investment in or from, such Person, or that is a successor (including, without limitation, by change of name, dissolution, merger, consolidation, reorganization, sale or other disposition) to any such Person or its business and assets. For purposes of this definition, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

3.    "**Agreement**" means this Settlement Agreement, including, without limitation, all of the exhibits attached hereto.

4.    "**Authorized Claimant**" means any Claimant whose claim for recovery has been allowed pursuant to the terms of Plaintiffs' plan of allocation or by order of the Court.

5.    "**Claimant**" means any Settlement Class Member who files a Claim Form in such form and manner, and within such time, as set forth in this Agreement, or as the Court shall prescribe.

6.    "**Claim Form**" means the electronic or paper means by which a Participating Settlement Class Member timely requests to receive compensation from the Settlement Class Net Settlement Sum or a timely request for exclusion.

7.    "**Class Counsel**" means counsel appointed by the Court as representatives of the Settlement Class including for settlement purposes.

8.    "**Class Period**" means December 3, 2016 through the date that is 36 days before the Response Deadline (estimated to be October 17, 2024).

9.    "**Court**" means the United States District Court for the Northern District of California.

10.    "**Date of Finality**" means one business day after the last of the following events: (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order, (b) if there is an appeal or appeals, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order without any modification (except insofar as agreed

upon by the Parties), of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for noticing appeals, filing motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (c) the date of final dismissal of any appeal of the Final Approval Order or the final dismissal of any proceeding on certiorari.

11.     "**Escrow Agent**" means the Settlement Administrator or its duly appointed agent(s).  The Escrow Agent shall perform duties as set forth in this Agreement.

12.     "**Execution Date**" means the date on which the last of the Parties signs the Agreement.

13.     "**Final Fairness and Approval Hearing**" means the hearing at or as a result of which the Court enters the Final Approval Order as set forth in Section XV.

14.     "**Final Approval Order**" means the final formal court order and/or judgment that the Court signs and enters at or as a result of the Final Fairness and Approval Hearing approving this Agreement without modification.

15.     "**Notice Plan**" means the notice plan as set forth in Section V.

16.     "**Participating Settlement Class Member**" means a Settlement Class Member who does not submit a valid and timely request for exclusion as described in Section VII.

17.     "**Person**" means any individual, corporation, partnership, limited liability company or partnership, limited partnership, professional corporation, association, joint stock company, trust, estate, unincorporated association, government, or any political subdivision or agency thereof, any other type of legal or political entity, any representative, and, as applicable, their respective spouses, heirs, predecessors, successors-in-interest, representatives, and assigns.

18.     "**Plaintiffs' Counsel**" means the following attorneys of record for Plaintiffs in the Action, who shall seek formal appointment as Class Counsel for settlement purposes in the motion for preliminary approval of this Agreement:

> Andre M. Mura
> Gibbs Law Group LLP
> 1111 Broadway, Suite 2100
> Oakland, CA 94067
>
> Geoffrey A. Graber
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Ave. NW, Fifth Floor
> Washington, DC 20005

19.     "**Plaintiffs' Released Parties**" means the parties released under Section XVII of this Agreement.

20.     "**Preliminary Approval Date**" means the date on which the Court enters the Preliminary Approval Order.

21.    "**Preliminary Approval Order**" means the order that the Court signs and enters approving preliminarily the Settlement embodied in this Agreement, including, without limitation, the Notice Plan and plan of allocation.

22.    "**Response Deadline**" is the deadline set by the Settlement Administrator and approved by the Court as the deadline by which Class Members must exclude themselves from the Settlement or object or submit a Claim Form.

23.    "**Settlement Administration Costs**" means all costs and fees incurred by the Settlement Administrator in administering the settlement, including, without limitation: preparing and publishing the notice and any other means of following up with Class Members; establishing and maintaining any settlement website; Settlement Class Settlement Distribution and any related documents or materials; receiving requests for exclusion; resolving any disputed claims; generating Settlement Class Settlement Distribution and related tax reporting forms; generating payment to Class Counsel for attorneys' fees and expenses and to Plaintiffs for service awards; performing administrative work related to unclaimed payments; reporting periodically to Class Counsel and Thomson Reuters' Counsel; and preparing and providing any declaration or reports required by this Agreement or the Court.

24.    "**Settlement Administrator**" means the claims administration firm as appointed by Class Counsel after conferring with Thomson Reuters' Counsel, subject to the approval of the Court, as set forth in Section IV.

25.    "**Settlement Class**" means all persons who, during the Class Period, both resided in the state of California and whose information Thomson Reuters made available for sale through CLEAR. Excluded from the Class are: officers and directors of Thomson Reuters, Class Counsel, Judge Edward M. Chen, and any members of Judge Chen's immediate family and judicial staff.

26.    "**Settlement Class Member**" means a person who is a member of the Settlement Class.

27.    "**Settlement Class Net Settlement Sum**" means the Settlement Fund less all of the following:  (i) Class Counsel's attorneys' fees, (ii) Class Counsel's reasonable litigation expenses, (iii) Class Representative service award, as awarded by the Court, (iv) any notice and Settlement Administration Costs attributable to the administration of the Settlement Class and (v) any taxes that are paid and due and owing from the Qualified Settlement Fund ("QSF").

28.    "**Settlement Class Representative**" means a person whom the Court appoints to act as a representative of the Settlement Class.

29.    "**Settlement Class Settlement Distribution**" means the amount of money from the Settlement Class Net Settlement Sum that will be paid to each Participating Settlement Class Member to be determined by dividing the Settlement Class Net Settlement Sum by the total number of Participating Settlement Class Members who timely submit a Claim Form, in a form of payment to be determined.

30.    "**Settlement Escrow Account**" means the Account managed by the Escrow Agent for the benefit of the Settlement Class Representatives and the Settlement Class until the Date of Finality, as set forth in Section IX.

31.    **"Settlement Failure"** is deemed to occur where this Agreement is not approved by any court or is terminated for any reason, a Final Approval Order is not entered, the Settlement set forth in this Agreement is declared null and void, or where the Date of Finality does not come to pass.

32.    **"Settlement Fund"** means the non-reversionary cash fund as set forth in Section IX.

33.    **"Thomson Reuters' Counsel"** means the following attorneys of record for Defendant in the Action:

Susan D. Fahringer
Nicola C. Menaldo
Anna M. Thompson
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Hayden M. Schottlaender
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799

Gabriella Gallego
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
GGallego@perkinscoie.com

34.    **"Thomson Reuters Released Parties"** means the parties released under Section XVI of this Agreement.

## II.    CERTIFICATION OF SETTLEMENT CLASS

1.    Plaintiffs will request the Court to certify the Settlement Class solely for purposes of the Settlement of the Action. If a Final Approval Order is not entered or a Settlement Failure occurs, (i) Thomson Reuters reserves the right to assert any and all objections and defenses to certification of a class; (ii) neither the Agreement nor any order or other action relating to the Agreement or this settlement may be offered by any person, party, or entity as evidence in the Action or any other action or proceeding; (iii) the settlement proposed herein shall become null and void and shall have no legal effect and may never be mentioned at trial or in dispositive or

class motions or motion papers; and (iv) the Parties will return to their respective positions existing immediately before the execution of the Agreement.

## III.    APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVES AND CLASS COUNSEL

1.    Plaintiffs will request the Court to appoint Plaintiffs Cat Brooks and Rasheed Shabazz as the Settlement Class Representatives for the purpose of the settlement of the Action only. Thomson Reuters will not oppose Plaintiffs' request to have Plaintiffs appointed Settlement Class Representatives.

2.    Plaintiffs will request the Court to appoint Plaintiffs' Counsel as Class Counsel for the purpose of the settlement of the Action only. Defendants will not oppose Plaintiffs' request to have Plaintiffs' Counsel appointed as Class Counsel.

3.    If the Court does not enter a Final Approval Order or if a Settlement Failure occurs, no Party may use the provisions of this Section III or the appointment of any Settlement Class Representative or Class Counsel for any purpose whatsoever in the Action or in any other action or proceeding.

## IV.    APPOINTMENT OF SETTLEMENT ADMINISTRATOR

1.    Class Counsel will seek the Court's order appointing a claims administration firm to act as the Settlement Administrator.

2.    The Settlement Administrator will agree to all of the terms and conditions of this Agreement relating to its administration.

3.    The Settlement Administrator will be responsible for the administration of the settlement, which will include, among other tasks, providing the notice of settlement required by 28 U.S.C. § 1715, implementing the notice to the Class according to the Notice Plan and any other means of following up with Settlement Class Members relating to the settlement; receiving and processing Requests for Exclusion and objections; Settlement Class Settlement Distribution and related tax reporting forms; generating payment to Class Counsel for attorneys' fees and expenses and to Plaintiffs for service award payments, if any such payments are approved by the Court; reporting periodically to Class Counsel; and preparing and providing any declaration or reports required by this Agreement or the Court. Any request by Thomson Reuters' Counsel for information from the Settlement Administrator will be communicated to Plaintiffs' Counsel who will work with the Settlement Administrator to comply with any such reasonable request.

## V.    NOTICE OF SETTLEMENT TO THE SETTLEMENT CLASS

1.    The Parties agree that the best practicable notice is a state-of-the-art media notice plan that leverages programmatic display advertising, social media notice via Facebook and Instagram, and a paid search campaign via Google. The media plan will also include a dedicated settlement website and toll-free 24/7 telephone support.

2.    The notice program and content shall be submitted for Court approval in the Preliminary Approval Order and shall be agreed upon by the parties in advance. That agreed-upon notice program, once approved by the Court, is the Notice Plan. The Notice Plan shall not require any action or involvement by Thomson Reuters or Thomson Reuters vendors, licensors,

suppliers, service providers, or customers. Plaintiffs will be responsible for selecting a Settlement Administrator subject to court approval and after conferring with Thomson Reuters, and nothing in this provision shall be interpreted to limit or preclude the available options for settlement administrators in this Action. Thomson Reuters will not unreasonably withhold information from the Settlement Administrator that could effectuate notice.

## VI.    NOTICES OF SETTLEMENT TO COURT AND GOVERNMENTAL AUTHORITIES

1.    Plaintiffs will file the Agreement with their motion for preliminary approval of the settlement.

2.    The Settlement Administrator shall be responsible for serving the notice of settlement required by 28 U.S.C. § 1715 within ten (10) days after Plaintiffs file with the Court a motion for preliminary approval of the settlement.

## VII.    RIGHT TO BE EXCLUDED FROM THE SETTLEMENT CLASS

1.    Each Settlement Class Member has the right to exclude himself or herself from the Settlement Class and from participating in the settlement by sending a written request for exclusion to the Settlement Administrator that is received no later than the Response Deadline. Any Settlement Class Member who submits a valid, timely request for exclusion will not be entitled to any Settlement Class Settlement Distribution (or any other payment pursuant to this Agreement), will not be a Participating Settlement Class Member for purposes of this Agreement, and will not have any right to oppose or make any objection (whether by appeal, intervention, or otherwise) to the settlement, or any aspect of the settlement, including, without limitation, this Agreement.

2.    To be a valid request for exclusion, the Settlement Class Member must provide the following information:

a.    The Settlement Class Member's full name and mailing address, telephone number, and/or email address;

b.    The statement, "I wish to exclude myself from the Settlement Class and do not wish to participate in the settlement in *Brooks v. Thomson Reuters Corp.*, No. 3:21-cv-01418," or substantially similar clear and unambiguous language.

c.    The Settlement Class Member's handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, the signature of anyone else acting on behalf of the Settlement Class Member, or a typed signature, is not sufficient. "Mass" or "class" requests for exclusion made on behalf of multiple persons or classes of persons will be deemed invalid.

2.    No Settlement Class Member can exclude themself by mailing a notification: (i) to any location other than that designated in the Notice Plan; or (ii) that is received after the Response Deadline. No Settlement Class Member can exclude themself by telephone or by email.

3.    If a Settlement Class Member submits a Claim Form and also a request for exclusion, the request for exclusion will be deemed invalid and the Settlement Class Member will be deemed a Participating Settlement Class Member.

4.      Any Settlement Class Member who does not send the Settlement Administrator a valid, timely request for exclusion will be deemed a Participating Settlement Class Member for all purposes under this Agreement.

5.      The Parties shall have the right to challenge the timeliness and validity of any request for exclusion. Class Counsel shall also have the right to effectuate the withdrawal of any request for exclusion filed in error and any request for exclusion that a person wishes to withdraw for purposes of participating in the settlement as set forth in this Agreement. A list reflecting all individuals who timely and validly exclude themselves from the Settlement Class shall be filed with the Court at the time of the motion for final approval of the settlement, and the Court shall determine whether any contested request for exclusion is valid.

6.      Within seven (7) Days after the Response Deadline, the Settlement Administrator shall provide to the Parties (a) a list of all persons who opted out by validly requesting exclusion and (b) each written request for exclusion, including both valid and invalid requests.

7.      In the event that the number of persons who submit valid, timely requests for exclusion exceeds 4,500, Thomson Reuters may elect to terminate this Agreement on the ground that exclusion at that level threatens to frustrate the essential purpose of this Agreement. Such termination shall constitute a Settlement Failure under this Agreement. Thomson Reuters may exercise this right to terminate this Agreement under this subsection by notifying Class Counsel of its election no later than twenty-one (21) days after Defendant's receipt of the final list of Persons who requested exclusion as of the Response Deadline.

## VIII.   RIGHT TO OBJECT TO THE SETTLEMENT

1.      Any Settlement Class Member who wishes to object to the settlement must do so in accordance with the terms of this Section VIII.

2.      To comment on or object to the settlement, a Settlement Class Member must mail a letter to the Court that is received no later than the Response Deadline, or file their comment or objection on the docket in the Action no later than the Response Deadline.

3.      A comment or objection must contain the following:

   a.  The name and case number of this lawsuit, *Brooks v. Thomson Reuters Corp.*, No. 3:21-cv-01418;

   b.  The objector's/commenter's full name, mailing address, and email address or telephone number;

   c.  An explanation of why the commenter or objector believes he or she or they are a Settlement Class Member;

   d.  As to an objection, a statement whether the objection applies only to the objector, or to a specific subset of the Settlement Class, or to the entire Settlement Class;

   e.  All reasons for the objection or comment, stated with specificity;

   f.  A statement identifying the number of class action settlements the objector has objected to or commented on in the last five years;

   g.  Whether the objector or commenter intends to personally appear and/or testify at the Final Fairness and Approval Hearing;

h. The name and contact information of any and all attorneys representing, advising, or assisting the commenter or objector, including any attorney who may be entitled to compensation for any reason related to the objection or comment;

i. For each attorney representing, advising, or assisting the objector, a statement identifying every objection the attorney has filed to any other class action settlements in the last five years;

j. Whether any attorney will appear on the objector's or commenter's behalf at the Final Fairness and Approval Hearing, and if so the name and law firm of that attorney;

k. Copies of any exhibits the objector intends to submit into evidence at the Final Fairness and Approval Hearing;

l. The identity of any persons whom the objector or any attorney appearing on the objector's behalf wishes to call to testify at the Final Fairness and Approval Hearing; and

m. The objector's handwritten or electronically imaged written (e.g. "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

4. Any lawyer asserting an objection on behalf of a Settlement Class Member must: (a) file a notice of appearance with the Court by the Response Deadline; (b) file a sworn declaration attesting to representation of each Settlement Class Member on whose behalf the objection is being filed or file (in camera) a copy of the contract between that lawyer and each such Settlement Class Member; and (c) comply with the procedures described in Section VIII.

5. No Settlement Class Member will be entitled to be heard at the Final Fairness and Approval Hearing (whether individually or through an attorney) or to object to the settlement, and no written objections or briefs submitted by any Settlement Class Member will be received or considered by the Court at the Final Fairness and Approval Hearing, unless the Settlement Class Member has complied with the terms of this Section VIII.

6. Settlement Class Members who fail to submit timely written objections in the manner specified in this Section VIII will be deemed to have waived any and all objections to the settlement and Agreement and will be foreclosed and barred forever from opposing or making any objection (whether by appeal, intervention, or otherwise) to the settlement, or any aspect of the settlement, including, without limitation, this Agreement.

7. If any Settlement Class Member validly and timely objects to the settlement, Class Counsel will file a response to the objection before the date of the Final Fairness and Approval Hearing. Defendants also may file a response to the objection before the date of the Final Fairness and Approval Hearing.

8. Settlement Class Members cannot both object to and exclude themselves from this Agreement. Any Settlement Class Member who attempts both to object to and to exclude themselves from the Settlement Class will be deemed to have excluded themselves and will forfeit the right to object to this settlement or any of its terms.

## IX.    SETTLEMENT FUND

1.    Thomson Reuters will cause to be wired $27,500,000 (Twenty Seven Million Five Hundred Thousand U.S. Dollars) into the Settlement Escrow Account no later than fourteen (14) days after the later of receiving wiring instructions from the Settlement Administrator or the Preliminary Approval Date ("Settlement Payment").

2.    The Settlement Payment, together with any interest accruing after the date of its deposit into the Settlement Escrow Account, shall constitute the Settlement Fund. Thomson Reuters will not be entitled to retain any part of the Settlement Fund that is not paid out or distributed as part of the administration of the settlement for any reason except in the event of a Settlement Failure as described in Section IX.4. To the extent, if any, that any unpaid or undistributed part of the Settlement Fund is held by the Settlement Administrator at the completion of the administration of the settlement, Plaintiffs and Defendant shall jointly propose, for the Court's approval, one or more recipients of any such remaining funds mutually acceptable to both parties.

3.    Any and all payments provided for or contemplated by this Agreement (including, without limitation, Settlement Class Settlement Distributions, payments of attorneys' fees and expenses to Class Counsel, payment of the Settlement Administration Costs, and payment of service awards) will be made from the Settlement Fund.

4.    Within 30 days after a Settlement Failure, the Settlement Administrator shall refund and transfer to Thomson Reuters all the funds remaining in the Settlement Escrow Account as of the date of Settlement Failure, including attorneys' fees as described in Section XIII.

5.    With the exception of the payments described in Section IX.1, none of the Thomson Reuters Released Parties shall have any financial obligation whatsoever under this Agreement or settlement. Under no circumstances will any of the Thomson Reuters Released Parties have any liability for taxes or tax expenses incurred by any other person or entity under this Agreement.

## X.    CLASS SETTLEMENT DISTRIBUTIONS

1.    The Settlement Class Net Settlement Sum will be distributed to Participating Settlement Class Members after the Date of Finality, and in accordance with the plan of allocation, as approved by the Court. Plaintiffs will propose a plan of allocation in their motion for Preliminary Approval. Under that proposal, each Participating Settlement Class Member who timely requests to receive compensation from the Settlement Class Net Settlement Sum by submitting a valid Claim Form will receive a pro-rata share of the Settlement Class Settlement Distribution. Remaining funds, if any, shall be subject to a *cy pres* distribution to the recipient or recipients jointly proposed by the parties or any other recipient designated by the Court.

2.    Each Authorized Claimant will be responsible for remitting to federal, state, and local taxing authorities any taxes that may be due and owing as a result of their receipt of a Settlement Class Settlement Distribution. Each Authorized Claimant will hold Plaintiffs' Counsel, Thomson Reuters, and Thomson Reuters' Counsel harmless and indemnify each of them for any liabilities, costs, and expenses, including attorneys' fees, caused by any such taxing authority relating in any way to the tax treatment of the Settlement Class Settlement Distribution.

3.      No Person, including, without limitation, an Authorized Claimant, will have any claim against Thomson Reuters, Thomson Reuters' Counsel, the Thomson Reuters Released Parties, Plaintiffs, the Settlement Class Members, Plaintiffs' Counsel, Class Counsel or the Settlement Administrator based on distributions and payments made in accordance with this Agreement.

## XI.      ADDITIONAL NON-MONETARY CONSIDERATION

1.      In consideration for the releases and the dismissal or termination of the Action provided for in this Agreement, Defendant also agrees to make the following changes to its business practices for a period of four (4) years, to commence no later than six (6) months after the Date of Finality. Nothing in this provision will require Defendant to use specific wording or terminology, to provide notices that do not accurately describe what Thomson Reuters is doing, or to violate any legal or ethical obligations.

     a.  Design, implement, and maintain the following procedures concerning deletion and access rights in CLEAR:

        i.  Delete locally hosted CLEAR data that Thomson Reuters reasonably determines pertains to a California resident who submits a data deletion request and successfully verifies their identity and residency, provided that:

            1.  Thomson Reuters may maintain personal information subject to this section to effectuate and maintain a consumer's request to delete.

            2.  Nothing in this section will prevent Thomson Reuters from making available CLEAR reports pertaining to third-parties other than the California resident requesting deletion.

            3.  The parties agree that the exceptions and carveouts to which Thomson Reuters is entitled under existing and future law, including the California Consumer Privacy Act ("CCPA"), shall apply equally to Thomson Reuters's obligations under this Section XI.1.a.

        ii.  Implement and maintain a process by which, if a Californian submits a verified data deletion request pursuant to Section XI.1.a.i, Thomson Reuters will share that verified data deletion request with its third-party data licensors, and request that those licensors treat the request as verified opt-out requests under the licensors' own data deletion policies, and remove that Californian's data from any data flows that are provided to Thomson Reuters for inclusion in CLEAR (including live gateways, APIs, and other access mechanisms).

        iii.  Not require the provision of a driver's license for Californians to request data deletion as set forth in Section XI.1.a.i. (The parties recognize that, given the sensitive information contained in CLEAR reports, Thomson Reuters will not provide access to a CLEAR report without first verifying an individual's identity with a driver's license or state identification card.)

    iv.    Provide a clear and conspicuous disclaimer to Californians submitting data subject access requests regarding the purposes for which Thomson Reuters uses information that Californians submit to Thomson Reuters connected to that request, and that such information will not be incorporated within CLEAR. This disclaimer will additionally explain, in plain language, what information a Californian may be required to submit to successfully verify their identity connected with each form of data subject request (including data access, data deletion, and data correction), and the reasons why a Californian will be required to submit additional information for requests to access information in CLEAR (as recognized in Section XI.1.a.iii).

b.  Design, implement, and maintain a consumer-facing website to reasonably inform the California public about CLEAR, which shall describe:

    i.    Background information about what CLEAR is, what types of data it collects, what types of customers access that data, and what types of purposes for which those customers are approved to access CLEAR.

    ii.    Directions for Californians about how to submit a data subject access request (including through the online portal, telephone, and via email).

    iii.    Updates to Thomson Reuters' public records privacy policy to include further detail regarding the types of data available through CLEAR, the types of customers that access that data, and the purposes for which those customers are approved to access CLEAR.

c.  Design, implement, and maintain the following safeguards with respect to personal information about Californians within CLEAR:

    i.    Adjust the new user settings for the default report in CLEAR to exclude or limit information about relatives, associates, licensed drivers, property owners, and neighbors, unless a customer selects the option to include that additional information.

    ii.    Maintain a default retention schedule for data stored in customer report history, so that the data stored in customer report history is deleted after 7 days unless the customer affirmatively chooses to retain that data for a longer period.

    iii.    Adjust the default settings for search results in CLEAR to reduce the default maximum number of search results for the "person search" tool to no more than 500, unless the customer selects the option to display a greater number of search results.

    iv.    Eliminate CLEAR's prompt for users to search CLEAR's "Web Analytics" tool when a person search returns no results.

    v.    Substantially increase the number of annual audits conducted by Thomson Reuters to proactively investigate a reasonable sample of CLEAR customers' use of CLEAR in compliance with the permissible uses of CLEAR under state and federal laws.

vi.  Assess periodically the volume of CLEAR compliance investigations conducted by Thomson Reuters, the number of employees trained to monitor CLEAR customer compliance, and the capacity of those employees to adequately investigate and respond to customer misuse investigations.

vii.  Thomson Reuters represents that the commitments in this Section XI do not merely require Thomson Reuters to continue practices it voluntarily adopted before the Agreement.

## XII.  SERVICE AWARD

1.  At least thirty-five (35) days prior to the Response Deadline, Class Counsel will file with the Court an application for approval of a service award in an amount up to Five Thousand Dollars ($5,000.00) per Plaintiff to be paid to Plaintiffs Cat Brooks and Rasheed Shabazz. Any service award is subject to the Court's supervisory discretion and, if any is approved by the Court, will be paid from the Settlement Fund.

2.  The Settlement Administrator will pay any such Court-approved service award no later than thirty (30) days after the Date of Finality. The Settlement Administrator will include with each Service Award a Form 1099 to the extent such form is required.

3.  Neither the settlement nor the Agreement is conditioned upon the Court's approval of a service award, or the amount of any service award. Any modification to the service award, whether by this Court or on appeal, shall not serve as a basis for Settlement Failure, and shall not serve as a basis for nullification of this Agreement under Section XXII, below.

4.  In the event of a Settlement Failure: (1) any service award shall belong to Thomson Reuters and shall be returned to Thomson Reuters as part of the Settlement Fund reversion described in Section IX; and (2) no Party will use the provisions of this Section XII or the award of any service award for any purpose whatsoever in the Action or in any other action or proceeding.

## XIII.  ATTORNEYS' FEES AND COSTS

1.  At least thirty-five (35) days prior to the Response Deadline, Class Counsel will file with the Court an application for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount and reimbursement of litigation expenses incurred in the prosecution of the Action for the benefit of the Plaintiffs and the Settlement Class. Any award of attorneys' fees and costs is subject to the Court's supervisory discretion.

2.  Any such attorneys' fees and expenses that the Court approves will be paid from the Settlement Fund within 7 days of entry of the order awarding fees and litigation expenses by means of a wire transfer by the Settlement Administrator or the Escrow Agent to an account that Class Counsel designates.

3.  Any payment of attorneys' fees and costs shall be subject to Plaintiffs' Counsel's obligation to make an appropriate refund or repayment if the award of attorneys' fees and litigation expenses is for any reason subsequently reduced or reversed.  Such repayment or refund shall be made no later than sixty (60) days after Plaintiffs' Counsel's receipt from any

court of notice of any order that revises or reduces the award of attorneys' fees or litigation expenses.

4.      Neither the settlement nor the Agreement is conditioned upon the Court's approval of the fees or expenses sought by Plaintiffs' Counsel or Class Counsel. Any modification to the awarded fees, whether by this Court or on appeal, shall not serve as a basis for Settlement Failure, and shall not serve as a basis for nullification of this Agreement under Section XXII, below.

5.      In the event of a Settlement Failure: (1) any attorneys' fees and costs that have been paid under this Section, and one half of any Settlement Administration Costs incurred and paid through the date of the Settlement failure, shall be returned to Thomson Reuters as part of the Settlement Fund reversion described in Section IX; and (2) no Party will use the provisions of this Section XIII or the Court's award of attorneys' fees and expenses for any purpose whatsoever in the Action or in any other action or proceeding.

## XIV.   MOTION FOR PRELIMINARY APPROVAL

1.      Plaintiffs will file a motion requesting the Court to grant preliminary approval of this Agreement and settlement ("Preliminary Approval Motion") and to enter a Preliminary Approval Order that will accomplish the following:

   a.   Find that the requirements of the Federal Rules of Civil Procedure and any other requirements for certification of a settlement class have been satisfied, and certify the Settlement Class;

   b.   Provide that the settlement as memorialized by this Agreement will apply to the Settlement Class;

   c.   Preliminarily approve the Agreement as fair, reasonable, and adequate and in the best interest of the Settlement Class;

   d.   Find that the Notice Plan set forth in Section V of this Agreement satisfies the requirements of due process, the Federal Rules of Civil Procedure, and any other applicable law and procedure;

   e.   Approve all notice and related materials as described in this Agreement;

   f.   Appoint the Settlement Class Representatives and Class Counsel;

   g.   Set the time period for requesting exclusion from or objecting to the settlement; and

   h.   Set a date for the Final Fairness and Approval Hearing at which the Court will finally determine the fairness, reasonableness, and adequacy of the proposed settlement.

   i.   Provide that the settlement is not an admission or evidence of wrongdoing, fault, violation of law, or liability of any kind by Thomson Reuters, and that evidence relating to the Agreement shall not be discoverable or used in any action or proceeding, except for purposes of interpreting this Agreement and the Preliminary and Final Approval Orders.

2.      It is anticipated that Plaintiffs will file the Preliminary Approval Motion on or before August 27, 2024.

3.      The Parties will cooperate in the preparation and filing of the Preliminary Approval Motion.

## XV.    FINAL FAIRNESS AND APPROVAL HEARING AND FINAL APPROVAL ORDER

1.      A Final Fairness and Approval Hearing will be held on a date approved by the Court no earlier than ninety (90) days after service of the notices required by 28 U.S.C. § 1715. The date, time and place of the Final Fairness and Approval Hearing will be set forth in the Notice Plan.

2.      At the Final Fairness and Approval Hearing, Class Counsel will request the Court, among other matters, to enter a Final Approval Order to:

   a.   Approve this Agreement without modification (except insofar as agreed upon by the Parties) as fair, reasonable, and adequate to and in the best interest of the Settlement Class, and direct its implementation according to its terms;

   b.   Find that the form and manner of class notice implemented pursuant to this Agreement (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the terms of the proposed settlement, the right to object to or exclude themselves from the proposed settlement, and the right to appear at the Final Fairness and Approval Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

   c.   Find that all Participating Settlement Class Members will be bound by this settlement and Agreement, including the release provisions and covenants not to sue;

   d.   Direct that judgment be entered immediately dismissing with prejudice all individual and class claims asserted in the Action and ruling that no costs or fees be assessed on any Party beyond those provided for in this Agreement;

   e.   Permanently bar and enjoin all Participating Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or any other action in any jurisdiction based on the Released Claims (as defined below);

   f.   Approve the payments provided for in this Agreement to the Participating Settlement Class Members and the service awards to Plaintiffs and make any necessary findings with regard to these approvals;

   g.   Approve the attorneys' fees and costs to be paid to Class Counsel and make any necessary findings with regard to those approvals; and

h. Without affecting the finality of the Final Approval Order for purposes of appeal, retain jurisdiction of all matters relating to the interpretation, administration, implementation and enforcement of this Agreement.

2. Also at the Final Fairness and Approval Hearing, the Settlement Administrator will submit its application for the approval and payment of Settlement Administration Costs, and thereafter may submit an application for approval and payment of any additional Settlement Administration Costs incurred after the Final Fairness and Approval Hearing.

## XVI. RELEASE BY PLAINTIFFS AND PARTICIPATING SETTLEMENT CLASS MEMBERS

1. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Plaintiffs and each of the Participating Settlement Class Members, on behalf of themselves, their current, former, and future heirs, executors, administrators, successors, attorneys, insurers, agents, representatives, and assigns, and any Person they represent, fully and forever release, acquit, and discharge, any and all equitable or legal claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, rights to disgorgement or other monetary relief, actions or causes of action, of every kind and description, that members of the Settlement Class had, have, or may have, against Thomson Reuters and each and every one of its current or former owners, shareholders, directors, employees, parents, direct and indirect subsidiaries, contractors, insurers, and affiliates with respect to Thomson Reuters and/or its owners', shareholders', directors', employees', parents', direct and indirect subsidiaries', contractors', insurers', and affiliates' (collectively, the "**Thomson Reuters Released Parties**") collection, receipt, storage, acquisition, use, aggregation, compilation, sale, distribution, disclosure, or facilitated access of information or data about Settlement Class Members that was available through CLEAR, including all claims based on or related to the allegations that were or could have been made in the Action, and all claims that were brought or could have been brought in the Action, up to the date of the Final Approval Order ("**Released Claims**"). It is expressly intended and understood by the Parties that this Agreement is to be construed as a complete settlement, accord, and satisfaction of the Released Claims.

2. With respect to the Released Claims, Plaintiffs and the Participating Settlement Class Members, and each of them, will be deemed to have, and by operation of the Final Approval Order will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, and any other similar provision under federal or state law that purports to limit the scope of a general release. California Civil Code section 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

3.      Plaintiffs and the Participating Settlement Class Members, and each of them, further covenant and agree (a) that they will not sue or bring any action, cause of action or claim including, without limitation, by way of third-party claim, cross-claim or counterclaim, against any of the Thomson Reuters Released Parties in respect of any of the Released Claims; (b) they will not initiate or participate in bringing or pursuing any class action against any of the Thomson Reuters Released Parties in respect of any of the Released Claims; (c) if involuntarily included in any such class action encompassing Released Claims, they will opt out of or request to be excluded from the action, if possible; and (d) they will not voluntarily and knowingly assist any third party in initiating or pursuing a class action suit in respect of any of the Released Claims.

4.      Settlement Class Representatives shall represent and warrant that they are the sole and exclusive owners of any and all claims that they personally are releasing under this Agreement. Settlement Class Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Settlement Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which Settlement Class Representatives may be entitled as a result of the Action. Participating Settlement Class Members shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Agreement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Actions, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Participating Settlement Class Members are not aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which those Participating Settlement Class Members may be entitled as a result of the Action.

## XVII.      RELEASE BY DEFENDANT

1.      For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Defendant fully and forever releases, acquits, and discharges Plaintiffs Cat Brooks and Rasheed Shabazz, collectively, separately, individually and severally, from, and covenant not to sue for, any and all equitable or legal claims, liabilities, rights, demands, suits, matters, obligations, damages, including consequential damages, losses or costs, liquidated damages, statutory damages, punitive damages, attorneys' fees and costs, rights to disgorgement or other monetary relief, actions or causes of action, of every kind and description, including, without limitation, any and all claims that were alleged in in the Action, or that arise out of or relate directly or indirectly in any manner whatsoever to facts alleged or that could have been alleged or asserted in the Action (collectively, "Defendant's Released Claims"). It is expressly intended and understood by the Parties that this Agreement is to be construed as a complete settlement, accord, and satisfaction of Defendant's Released Claims.

2.      With respect to Defendant's Released Claims, Defendant stipulates and agrees that Defendant will be deemed to have, and by operation of the Final Approval Order and Judgment will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other

similar provision under federal or state law that purports to limit the scope of a general release. California Civil Code section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS**
> **WHICH THE CREDITOR OR RELEASING PARTY DOES**
> **NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER**
> **FAVOR AT THE TIME OF EXECUTING THE RELEASE,**
> **AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE**
> **MATERIALLY AFFECTED HIS OR HER SETTLEMENT**
> **WITH THE DEBTOR OR RELEASED PARTY.**

3. Defendant further covenants and agrees that it will not sue or bring any action, cause of action or claim including, without limitation, by way of third-party claim, cross-claim or counterclaim, against Plaintiffs Cat Brooks and Rasheed Shabazz in respect of any of the Defendant's Released Claims.

## XVIII. NO ADMISSION BY THE PARTIES

1. Thomson Reuters has denied and continues to deny each and every allegation and all charges of wrongdoing or liability of any kind whatsoever that was asserted or that could have been asserted in this action. Without acknowledging any fault or liability on the part of Thomson Reuters, the Parties have agreed to enter into this Agreement as an appropriate compromise of Plaintiffs' and Participating Settlement Class Members' claims in order to put to rest all controversy and to avoid the uncertainty, risk, expense, and burdensome, protracted, and costly litigation that would be involved in prosecuting and defending this Action. This Agreement shall be for settlement purposes only, and nothing in this Agreement shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged by Plaintiffs in this action or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of Thomson Reuters or admission by any of the Parties of the validity or lack thereof of any claim, allegation, or defense asserted in the Action or in any other action.

## XIX. EXCLUSIVE REMEDY

1. The Agreement shall be the sole and exclusive remedy for any and all released claims of Participating Settlement Class Members. Upon entry of the Final Approval Order, each Participating Settlement Class Member shall be barred from initiating, asserting, or prosecuting against Defendants any claim that is released by operation of the Settlement Agreement and the Final Approval Order. In the event any Participating Settlement Class Member attempts to prosecute an action in contravention of the Final Approval Order and the Settlement Agreement, counsel for any of the Parties may forward the Settlement Agreement and the Final Approval Order to such Participating Settlement Class Member and advise them of the releases provided pursuant to this Agreement. If so requested by Thomson Reuters or counsel for Thomson Reuters, counsel for Plaintiffs shall provide this notice through the Final Approval Order.

## XX. CONFIDENTIALITY

1. The Parties, Plaintiffs' Counsel, Class Counsel, and Thomson Reuters' Counsel agree not to make any statements, written or verbal, or to cause or encourage any other Person to

make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of the Parties and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the settlement, this Agreement, and any discussions, interactions, or negotiations of the settlement by the Parties and their counsel.

      2.      Class Counsel may disclose the Agreement and its terms on its website after entry of the Preliminary Approval Order.

      3.      Plaintiffs, Plaintiffs' Counsel, and Class Counsel agree to maintain the confidentiality of any sensitive or confidential information that Thomson Reuters has provided to them during this Action or provides to them during settlement negotiations. If any such information is filed with the Court as part of the settlement approval process, such information will be filed under seal unless all Parties agree otherwise.

      4.      All agreements and orders entered during the course of this Action relating to the confidentiality of information, including the Stipulated Protective Order (Doc. No. 70 of the Action), shall survive this settlement.

## XXI.  DISPUTE RESOLUTION

      1.      The Parties hereby irrevocably submit to the jurisdiction of the Court for any dispute arising out of or relating to this Agreement, the applicability of this Agreement, or the enforcement of this Agreement. If any disputes arise out of the finalization of the settlement documentation, the Parties agree that said disputes will be mediated on an expedited basis by Judge Layn R. Phillips.

      2.      The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

      3.      The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

      4.      If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

## XXII.  NULLIFICATION OF AGREEMENT

      1.      If (a) the Court (1) does not enter the Preliminary Approval Order or the Final Approval Order or (2) in the event of a Settlement Failure, this Agreement will be null and void and any order or judgment entered by the Court in furtherance of this settlement will be treated as void *ab initio*. The Parties will proceed in all respects as if this Agreement had not been executed, and the Parties will propose a new case schedule within 60 days after the event causing the Settlement Failure. If the Court denies the Preliminary Approval Motion without prejudice and requests that the Parties make modifications to the Settlement, that order will not constitute a ground for nullifying or terminating the Settlement if both Parties agree to make the requested change. The Parties agree to meet and confer following any requested modifications by the Court, and discuss any requested changes to determine whether or not the change is agreeable to

both Parties. If, following that conference, either Party determines that the modification is material and is unwilling to modify the agreement as requested by the Court, then the order denying Preliminary Approval will cause Settlement Failure.

## XXIII. RETURN OR DESTRUCTION OF DOCUMENTS AND INFORMATION

1.      Plaintiffs, Settlement Class Members, Plaintiffs' Counsel, and Class Counsel will not use any of the documents and information provided to them by Thomson Reuters in this Action or during settlement negotiations for any purpose other than in connection with this settlement. The Parties will abide by the terms of the Stipulated Protective Order (Doc. No. 70 in this Action).

## XXIV. REPRESENTATIONS AND WARRANTIES

1.      Each Plaintiff represents and warrants that he or she has not heretofore assigned or transferred, or purported to assign or transfer, any of the claims released pursuant to this Agreement to any other person and that he or she is fully entitled to compromise and settle same.

2.      Class Counsel represents that: (1) they are authorized by the Settlement Class Representatives to enter into this Agreement with respect to the claims asserted in the Action and any other claims covered by the Release; and (2) they are seeking to protect the interests of the Settlement Class.

3.      Class Counsel further represents that the Settlement Class Representatives: (1) have agreed to serve as representatives of the Settlement Class proposed to be certified herein; (2) are willing, able, and ready to perform all of the duties and obligations of representatives of the Settlement Class; (3) have read the pleadings in the Action, including the Complaint, or have had the contents of such pleadings described to them; (4) have consulted with Class Counsel about the obligations imposed on representatives of the Class; (5) understand that they are entitled only to the rights and remedies of Settlement Class Members under this Agreement and not to any additional compensation by virtue of their status as Settlement Class Representatives; and (6) shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Settlement Class Representatives cannot represent the Class.

4.      Each Party warrants and represents that the person executing this Agreement on its behalf is duly empowered and authorized to do so.

## XXV.  CALIFORNIA LAW

1.      All questions with respect to the construction of this Agreement and the rights and liabilities of the Parties will be governed by the laws of the State of California applicable to agreements to be wholly performed within the State of California.

## XXVI. OWN COUNSEL

1.      Each Party acknowledges that it has been represented by attorneys of its own choice throughout all of the negotiations that preceded the execution of this Agreement and in connection with the preparation and execution of this Agreement.

Page 21

## XXVII. COOPERATION BY THE PARTIES

1.     The Parties and their respective attorneys will cooperate fully with each other to promptly execute all documents and take all steps necessary to effectuate the terms and conditions of this Agreement.

2.     The Parties and their respective attorneys will not seek to solicit or otherwise encourage any person to exclude himself or herself from the Settlement Class, object to the settlement, or appeal from any order or judgment of the Court that is consistent with the terms of this Agreement.

## XXVIII.     NOTICE

1.     Except as otherwise provided in this Agreement, all notices, requests, demands, and other communications required or permitted to be given to Class Counsel or to Thomson Reuters' Counsel pursuant to this Agreement will be in writing and will be delivered by email and/ or by next-day express mail (excluding Saturday, Sunday, and federal holidays):

If to Class Counsel then:

       Andre M. Mura
       Gibbs Law Group LLP
       1111 Broadway, Suite 2100
       Oakland, CA 94067

       Geoffrey A. Graber
       Karina G. Puttieva
       Cohen Milstein Sellers & Toll PLLC
       1100 New York Ave. NW, Fifth Floor
       Washington, DC 20005

If to Thomson Reuters' Counsel then:

       Susan D. Fahringer
       Nicola C. Menaldo

       PERKINS COIE LLP
       1201 Third Avenue, Suite 4900
       Seattle, WA  98101-3099
       Telephone: (206) 359-8000
       Facsimile: (206) 359-9000

       Hayden Schottlaender

       PERKINS COIE LLP
       500 N. Akard Street, Suite 3300
       Dallas, TX 75201
       Telephone: (214) 965-7700

Facsimile: (214) 965-7799

## XXX.  ENTIRE AGREEMENT

1.     This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior oral and written agreements and discussions. Each Party covenants that it has not entered in this Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein. Each Party further covenants that the consideration recited herein is the only consideration for entering into this Agreement and that no promises or representations of another or further consideration have been made by any person. This Agreement may be amended only by an agreement in writing duly executed by all Parties; provided, however, that after entry of the Final Approval Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and do not limit the rights of Settlement Class Members under this Agreement.

## XXXI. NO OTHER AGREEMENTS

1.     Each Party represents and warrants that there are no other agreements made in connection with this Settlement.

## XXXII. DRAFTING

2.     Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same will not be construed against any Party as drafter of this Agreement.

## XXXIII. COUNTERPARTS

1.     This Agreement may be executed with an electronic or facsimile signature and in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

## XXXIV. HEADINGS

1.     The headings contained in this Agreement are for reference only and are not to be construed in any way as a part of the Agreement.

## XXXV. BINDING EFFECT

1.     This Agreement is binding upon and will inure to the benefit of the Parties and their respective heirs, assigns and successors-in-interest.

**XXXVI. SEVERABILITY**

     1.     If any covenant, condition, term or other provision in this Agreement (except for the Settlement Class definition, Sections XVI [Release] and IX [Settlement Fund]) is held to be invalid, void or illegal, the same will be deemed severed from the remainder of this Agreement and will in no way affect, impair or invalidate any other covenant, condition, term or other provision in this Agreement.

     2.     If any covenant, condition, term or other provision in this Agreement (except for the Settlement Class definition, Sections XVI [Release] and IX [Settlement Fund]) is held to be invalid due to its scope or breadth, such covenant, condition, term or other provision will be deemed valid to the extent of the scope or breadth permitted by law.


WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Settlement Class Members and through Plaintiffs' Counsel, and Thomson Reuters, by their duly authorized representatives and through counsel, have executed this Agreement as of the dates set forth below.


[REST OF PAGE LEFT INTENTIONALLY BLANK — SIGNATURE PAGES FOLLOW]

**FOR THOMSON REUTERS:**

Dated: ___August 26, 2024_____

Thomson Reuters Corporation

By_____

Chad MacLean, Treasurer

Dated: ___August 23, 2024_____

Thomson Reuters Corporation

By_____

Kathryn Ouellette, Assistant Secretary


***

Dated: ___August 26, 2024_____

Thomson Reuters Enterprise Centre GmbH

By_____

Taneli Ruda, Director

Dated: ___August 26, 2024_____

Thomson Reuters Enterprise Centre GmbH

By_____

Kirsty Roth, Director

**FOR THOMSON REUTERS:**

Dated:  _____
Thomson Reuters Corporation


By_____
Chad MacLean, Treasurer

Dated:  _____
Thomson Reuters Corporation


By_____
Kathryn Ouellette, Assistant Secretary


\*\*\*

Dated:  August 26, 2024
_____
Thomson Reuters Enterprise Centre GmbH

Signed by:
By\_\_\_\_\_*Taneli Ruda*_____
      400CBBDA314B477
Taneli Ruda, Director

Dated:  _____
Thomson Reuters Enterprise Centre GmbH


By_____
Kirsty Roth, Director

**FOR THOMSON REUTERS' COUNSEL:**

Dated: <u>August 24, 2024</u>

Perkins Coie LLP

By <u>Susan Fahringer</u>
Signed by:
B418D8813B2A40A...

Susan Fahringer, Partner

**FOR PLAINTIFFS' COUNSEL, PLAINTIFFS, AND THE CLASS:**

Dated: August 24, 2024 _____

Gibbs Law Group LLP



By _____
Andre M. Mura

Dated: August 25, 2024 _____

Cohen Milstein Sellers & Toll PLLC

By _____
Geoffrey A. Graber

Page 27

**FOR PLAINTIFF CAT BROOKS:**

Dated:    August 25, 2024
_____

By _____

Cat Brooks

**FOR PLAINTIFF RASHEED SHABAZZ:**

Dated: August 26, 2024
_____

By _____
Rasheed Shabazz