Andre M. Mura (SBN 298541)
Ezekiel S. Wald (SBN 341490)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amm@classlawgroup.com
zsw@classlawgroup.com

Geoffrey A. Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiffs and the Certified Class*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| CAT BROOKS and RASHEED SHABAZZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THOMSON REUTERS CORPORATION,<br><br>Defendant. | Case No. 3:21-cv-01418-EMC-KAW<br><br>**JOINT STATEMENT REGARDING POST-DISTRIBUTION ACCOUNTING**<br><br>Judge: Hon. Edward M. Chen |

Pursuant to Civil Local Rule 16-10(d) and the Northern District of California Class Action Settlement Guidelines,[1] the parties submit the following statement regarding post-distribution accounting.

A Declaration from Angeion Group, the Settlement Administrator in this case, setting out the information requested in the Northern District of California's post-distribution accounting guidelines[2] is attached to this statement as **Exhibit 1**. The parties submit this statement to provide additional information to the Court regarding the distribution of settlement funds.

### Distribution of Settlement Funds

This Court granted Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 280, on February 21, 2025. Distribution of the Settlement to the class proceeded as follows. The Court-appointed Settlement Administrator, Angeion Group, mailed checks to class members who elected to receive physical checks on April 15, 2025, and sent out digital payments to class members who elected to receive digital payments on April 22, 2025. ECF No. 286 at 2.

A small percentage of class members elected to receive digital payments, but had issues receiving those payments (for example, they inputted old account numbers in their claim form). *Id.* Angeion worked with those class members to get an updated payment method selected by June 19, 2025. *Id.* Angeion sent out the "second chance" digital payments to class members who provided updated payment information and chose to receive digital payments through PayPal or Venmo on June 30, 2025. *Id.* On July 3, 2025, Angeion reissued "second chance" paper checks to class members who selected paper checks on their original claim forms, but had that check returned (such as for an invalid address) or did not cash the checks within the initial 30-day

---

[1] Available at https://cand.uscourts.gov/attorneys/attorney-practice-resources (last visited October 14, 2025).

[2] Available at https://cand.uscourts.gov/sites/default/files/wp-content/uploads/forms/civil-forms/CAND_Post_Settlement_Distribution_Form_2024-03-12.a.pdf (last visited October 14, 2025).

void period, and, upon follow-up from Angeion, the class member chose to receive a second paper check or did not select any new digital method for the second chance payment. *Id.*

Of those "second chance" class members, a small percentage experienced a second payment failure. Angeion issued those class members paper checks in early September, which were valid until early October. *See id.* Accordingly, Angeion has now completed distribution to class members pursuant to the Court-approved settlement distribution plan. The final distribution figures are further described in the attached post-distribution accounting declaration from Angeion. Shaffer Decl., ¶¶ 1-6. In sum, $19,407,606.24 was successfully claimed by class members. *Id.* at ¶ 5. That yields a 99.28% success rate for distribution of the net settlement amount.

While the distribution to class members was highly successful, $136,739.59 remains unclaimed in the settlement fund. *Id.* Based on Angeion's professional experience, additional distributions directly to class members are not feasible, given the low amount of the remainder relative to the 124,336 second-distribution claimants,[3] and the expense of additional distribution to those class members. *Id.* at ¶ 6. Pursuant to the settlement agreement, ECF No. 282 at Section X.1., the parties thus submit a proposed *cy pres* recipient for the $136,739.59 residual settlement fund.

The parties here propose that the $136,739.59 remainder be distributed to Consumer Reports as the *cy pres* recipient. Consumer Reports has submitted a letter to the parties regarding its suitability as a *cy pres* recipient, which is attached to this Joint Statement for the Court's consideration as **Exhibit 2**. Consumer Reports meets the standard as an appropriate "next best distribution" to direct distribution to class members here. *See Cy Pres* Letter from Consumer Reports [CR Letter], **Exhibit 2**; *In re VNGR Beverage, LLC Litig.*, No. 24-CV-03229-HSG, 2025 WL 1489714, at *6 (N.D. Cal. May 23, 2025) (discussing standard for approval of *cy pres* recipient for unclaimed remainder funds in a class action); *see also Dennis v. Kellogg Co.*, 697

---

[3] 125,241 total validated claimants, less the 905 claimants who have not yet cashed their checks. Shaffer Decl., ¶ 6.

F.3d 858, 865 (9th Cir. 2012) (same). In order to qualify as an appropriate *cy pres* recipient, there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis*, 697 F.3d at 865.

Consumer Reports is a nonprofit organization with a long history of working to protect consumers in the marketplace. CR Letter. Consumer Reports' advocacy on behalf of consumers includes a robust practice of protecting consumer privacy. *Id.* Consumer Reports was an advocate supporting the passage of the California Consumer Privacy Act (CCPA), and actively works on behalf of consumers to monitor organizations' CCPA compliance. *Id.* Consumer Reports participates in FCC and FTC notice-and-comment rulemakings, and works to empower consumers through journalism, mobilization, and consumer-facing tools that assist consumers to exercise better control of their personal data in the marketplace. *Id.* For example, Consumer Reports developed *Permission Slip*, a free mobile application to enable users to assert their digital rights by sending hundreds of companies legally enforceable requests to stop selling or to delete their personal data. *Id.* And Consumer Reports coordinates Global Privacy Control, a browser application consumers in California can use to better control the collection and use of data about them as they browse the internet. *Id.*

Consumer Reports has been approved by courts as a *cy pres* recipient in several other class action lawsuits, including cases with related subject matter as this litigation. *Id.*; *see also In re Google LLC Street View*, 611 F.Supp.3d 872, 896 (N.D. Cal. Mar. 18, 2020) (approving settlement with *cy pres* distribution to Consumer Reports, among other organizations, in case regarding Google's alleged interception and storage of class member communications); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1109, 1122 (9th Cir. 2021) (affirming settlement approval); *Cottle v. Plaid Inc.*, Case No. 4:20-cv-03056-DMR, ECF Nos. 153, 184 (N.D. Cal. July 20, 2022) (approving settlement with *cy pres* remainder to Consumer Reports in case regarding alleged corporate use and sale of consumer personal information without consumers' consent); *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2022 WL 16725056, at *1 (E.D. Cal. Oct. 6, 2022) (affirming distribution of residual class settlement funds to Consumer Reports as appropriate recipient based on Consumer Reports work "to protect consumers against

1  invasions of their privacy and peace"); *Thomas H. Krakauer v. Dish Network LLC*, Case No. 1:14-cv-00333-CCE-JEP, ECF No. 682 (M.D.N.C. Mar. 29, 2024) (Consumer Reports awarded remainder *cy pres* distributions in class settlement regarding consumer privacy violations).

Consumer Reports has confirmed its independence from the Court, the parties, or the attorneys who have litigated this case, and has no conflicts that might impede its approval as a *cy pres* recipient here. CR Letter. Because Consumer Reports qualifies as an appropriate "next best distribution" in this case regarding consumers' right to control their personal information, the parties request that the Court approve the settlement administrator to distribute the residual settlement funds ($136,739.59) to Consumer Reports.

**Distributions to Class Members Who Selected Prepaid Virtual Payment Cards**

Of the 125,241 total validated claims, 25,055 (20.01%) selected payment through a virtual prepaid card option. Shaffer Decl. at ¶ 5. When these class members selected their payment option, they were provided information about the details of the prepaid Mastercard, including the card terms and conditions. *Id.* at ¶ 22. Those class members received their digital prepaid card on April 22, 2025. ECF No. 286 at 2.

Shortly after these payments were distributed to class members, on April 24, 2025, a lawsuit was filed in the Eastern District of Pennsylvania, alleging that Angeion (along with other settlement administrators) steered class members to accept settlement funds through prepaid Mastercards because they had undisclosed agreements with the servicers of the prepaid Mastercards that resulted in the companies receiving undisclosed revenues when class members selected the prepaid card option. *Baker v. Angeion Group LLC*, No. 2:25-cv-02079, ECF No. 1 (E.D. Pa., Apr. 24, 2025). Angeion contests any allegations of wrongdoing. Class Counsel was unaware of any financial relationship between Angeion and the prepaid card servicer prior to the filing of this lawsuit.

In this case, class members were not steered towards prepaid cards as a default or sole option. In fact, there was no "default" payment option for class members, who were able to select freely between ACH payments, physical checks, PayPal, Venmo, Zelle, or the prepaid card option. *See* Shaffer Decl. at ¶ 5. Ultimately, 67.9% of class members selected Venmo, Zelle,

or PayPal, 20.01% selected prepaid cards, and the remainder, 12.09%, selected ACH or physical check. *Id.*

According to Angeion, the prepaid Mastercard sent to Class Members in this litigation is serviced by Blackhawk Engagement Solutions. *Id.* at ¶10. Angeion has a contract with Blackhawk that sets forth general terms for engagements in which Angeion subcontracts with Blackhawk to provide a pre-paid digital payment card option. The revenue from Blackhawk received by Angeion does not result in any increased cost to the settlement account, does not depend on the extent to which class members in this case use or do not use their cards, and does not reduce the funds available to be distributed to Class Members in this case. *Id.* at ¶¶ 20-21. Angeion has not shared its agreements with Blackhawk either with Class Counsel or with counsel in other cases. *See Cabrera v. Google LLC*, No. 5:11-CV-01263-EJD, 2025 WL 2494429, at *4-5 (N.D. Cal. Aug. 29, 2025); *In re: Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843-VC, ECF No. 1238 at 3 (N.D. Cal. Aug. 14, 2025). However, Angeion has shared these agreements with these courts *in camera*, and in both cases, the pre-paid cards were approved to remain in both settlements and Angeion remained settlement administrator. *Cabrera*, 2025 WL 2494429, at *4-5; *In re: Facebook, Inc. Consumer Privacy*, ECF No. 1241 (N.D. Cal. Aug. 27, 2025).

The parties have taken the following steps to provide this information again to class members who chose the prepaid card option. First, they updated the settlement website in this case to ensure that class members had access to this information as well. *See Cabrera*, 2025 WL 2494429, at *5 (granting final approval to class settlement with Angeion as administrator after *in camera* review of Angeion's contractual agreement with prepaid card servicer, but ordering a similar disclosure to be placed on the settlement website); Shaffer Decl. ¶ 22. Second, they updated the settlement website to include additional information about the fees that class members may be charged in connection with the prepaid Mastercard option in this litigation. Those fees, which were also disclosed to class members when they selected their payment option, include an inactivity fee (of $0.95 per month) that begins after 12 months without any transactions on the card. *See id.* at ¶¶ 14, 22. If class members do not want to use the prepaid card directly, they have the option to transfer the funds left on the card to their bank account

6
JOINT STATEMENT REGARDING POST-DISTRIBUTION ACCOUNTING
Case No. 3:21-cv-01418-EMC-KAW

1 and there are no fees for such transfers. *Id.* at ¶ 7. Accordingly, there is already a built-in mechanism for any class member who selected the prepaid card to redirect their payment to their bank account through no additional cost. *Id*. Inactivity service fees charged against the balance on a dormant pre-paid digital payment card will be restored and added back to the value of the card if Blackhawk determines through a periodic review of account activity that the Class Member re-engages through a use of value on the card following a service fee assessment, which is done automatically by Blackhawk. *Id.* at ¶¶ 7, 17. All of this information is available to class members on the settlement website as of October 7, and again was shared at the outset in the card terms and conditions provided to class members when they submitted their payment selection. *Id.* at ¶¶ 22.

No class members here have yet to incur inactivity fees, which would not begin to accrue until, at the earliest, April 2026. *See id.* at ¶ 7. At 11 months of inactivity (a month prior to the first inactivity fee), class members will receive an email from the card servicer reminding them that they have an unused balance on the prepaid card, and notifying them that if they do not begin to use the card, they will accrue inactivity fees. *Id.* Angeion does not have insight into the percentage of class members who have already used their prepaid cards, as once the card is successfully redeemed by the class member and the payment has been distributed out of the settlement fund, Angeion no longer has any view into how the class members use (or whether they use) the funds they received. *See id.* at ¶¶ 20-21. Contact information for Blackhawk, the card servicer, was also made available to class members when they selected their payment option, and was added to the settlement website in this case. *Id.* at ¶ 22.

At this stage, class members have successfully received 99.28% of the net settlement fund that this Court approved in its Final Approval Order. With a small remainder distribution to Consumer Reports, all funds will be successfully distributed consistent with the best interests of the class.

If the Court would like an employee from Angeion to attend the post-distribution accounting hearing to be held over Zoom on November 4, Angeion will be happy to attend. The parties ask that, should the Court seek to have an Angeion attendee at the status conference,

it inform class counsel in the notice of the hearing or by email prior to the hearing.

DATED: October 28, 2025  **GIBBS MURA LLP**

Respectfully submitted,

/s/ *Andre M. Mura*

Andre M. Mura (SBN 298541)
Ezekiel S. Wald (SBN 341490)
GIBBS MURA LLP
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700
amm@classlawgroup.com
zsw@classlawgroup.com

Geoffrey A. Graber (SBN 211547)
Karina G. Puttieva (SBN 317702)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
kputtieva@cohenmilstein.com

*Attorneys for Plaintiffs and the Certified Class*

DATED: October 28, 2025                    **PERKINS COIE LLP**

By: */s/ Susan D. Fahringer*

Susan D. Fahringer (SBN 21567)
Nicola C. Menaldo (*pro hac vice*)
Anna M. Thompson (*pro hac vice*)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
SFahringer@perkinscoie.com
NMenaldo@perkinscoie.com
AnnaThompson@perkinscoie.com

Hayden M. Schottlaender (*pro hac vice*)
**PERKINS COIE LLP**
500 N. Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700
Facsimile:  (214) 965-7799
HSchottlaender@perkinscoie.com

Gabriella Gallego (SBN 324226)
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
GGallego@perkinscoie.com

*Attorneys for Defendant*
*Thomson Reuters Corporation*

9
JOINT STATEMENT REGARDING POST-DISTRIBUTION ACCOUNTING
Case No. 3:21-cv-01418-EMC-KAW

# [PROPOSED] ORDER

The parties' request for *cy pres* distribution of residual settlement funds is GRANTED. Consumer Reports, a nationwide non-profit organization with a robust history of consumer privacy advocacy in California, has a driving nexus to the privacy claims asserted on behalf of Californians in this action. *Dennis*, 697 F.3d at 865. Consumer Reports qualifies as the "next best recipient" for the small remainder of the settlement fund here, which cannot feasibly be distributed directly to class members. *See id.* Accordingly, the Court approves Consumer Reports as the *cy pres* recipient of the residual settlement funds. The Settlement Administrator is directed to distribute the residual settlement funds to Consumer Reports within 90 days of this Order.

DATED: _____          _____
                                    The Hon. Edward M. Chen
                                    United States District Judge

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory.

/s/ *Andre M. Mura*