1
2
3

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

4

CAT BROOKS and RASHEED SHABAZZ,
individually and on behalf of all others
similarly situated,

5

6
                                    Plaintiff,

7
                        v.

8
THOMSON REUTERS CORPORATION,

9
                                    Defendants.

10

Case No. 3:21-cv-01418-EMC-KAW

**DECLARATION OF STEVEN
WEISBROT, ESQ. FOR *IN CAMERA*
REVIEW**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

I, **Steven Weisbrot, Esq.**, declare under penalty of perjury and state as follows:

1.      I am the President and Chief Executive Officer of the class action notice and settlement administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, unbiased legal notification and settlement administration plans. This declaration is based upon my personal knowledge and information gathered through the collaborative efforts of my team at Angeion.

2.      My personal credentials (as well as the credentials and administration experience of Angeion) were provided in my prior declaration outlining the proposed Notice Plan for the Settlement filed with the Court on August 29, 2024 ("Notice Plan Declaration") (Dkt. No. 241-2).

3.      This declaration responds to questions the Court raised during the November 4, 2025 Post-Distribution Status Conference concerning certain issues relating to the prepaid digital payment cards (also known as "E-Mastercards") offered as a payment option in this Settlement[1] and the business relationship between Angeion and the pre-paid digital payment solutions vendor, Blackhawk Engagement Solutions ("Blackhawk"),[2] that makes the pre-paid digital payment card option available to the Settlement Class at no charge to the Settlement Fund apart from that disclosed by Angeion.

4.      Below I set forth the background of Angeion's role in this case, more information regarding the prepaid digital payment cards (including Angeion's relationship with Blackhawk), and additional information requested by the Court.

5.      The contractual relationship between Angeion and Blackhawk described below also was described in declarations submitted to Judge Chhabria in connection with the *In re: Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-md-02843-VC (N.D. Cal.), and to Judge Davila in connection with *Cabrera, et. al. v. Google, LLC*, 5:11-cv-01263-EJD (N.D. Cal.). In both cases the courts granted final approval and authorized the settlements to go forward utilizing the E-Mastercard payment option.

---

[1]      Unless otherwise indicated, capitalized terms have the same meaning as in the Class Action Settlement Agreement (ECF No. 241-1).

[2]      https://blackhawknetwork.com/solutions/payments.

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

6.     As explained further below, Angeion was able to provide a competitive, and cost-effective bid for the administration services in this case, in part, as a result of its arrangement with Blackhawk. Thus, the arrangement set forth below ultimately saves the Settlement Class money by reducing the overall administrative costs, thereby preserving more of the Settlement Fund for the Settlement Class.

**A.     Background**

7.     The Settlement achieved by the Parties involves the distribution of a non-reversionary cash settlement fund in excess of $27,500,000.00.

8.     As part of the Court's October 11, 2024 Preliminary Approval Order (ECF No. 259), the Court appointed Angeion to serve as the Settlement Administrator.

9.     As Settlement Administrator, Angeion was directed to effectuate the Court-approved Notice, process claims, and otherwise administer the Settlement in coordination with Class Counsel and Thomson Reuter's Counsel and pursuant to the terms of the Agreement.

10.     In consultation with counsel for the Parties and pursuant to the Notice Plan approved by the Parties and the Court, Angeion provided comprehensive notice to the Settlement Class and evaluated and processed claims, including approving claims for payment, notifying claimants of deficient claims, denying invalid claims, detecting fraudulent claims, and distributing settlement proceeds as set forth in periodic updates to the Court. *See*, *e.g.*, ECF No. 272-3; ECF No. 288-1.

11.     Angeion has complied, and is complying, with all requirements of the Court's Preliminary Approval Order and Final Approval Order.

**B.     The Pre-Paid Digital Payment Card Option Presented to Settlement Class Members**

12.     Pursuant to the Agreement adopted and ordered by the Court, Settlement Class Members were able to select from a variety of payment options for distribution, including paper checks and a number of different digital payment options, including ACH, PayPal, Venmo, Zelle, and a virtual pre-paid Mastercard.

13.     The various digital payment options are reliable, secure, and meet evolving claimant

CASE NO. 3:21-CV-01418-EMC-KAW

preferences and contemporary payment methodologies.

14. The Settlement Website and Claim Form offered three digital distribution methods from which Settlement Class Members may choose—a pre-paid Mastercard, PayPal, Venmo, ACH, and Zelle. The options were presented to Settlement Class Members on the "Payment Selection" page of the on-line claim submission portal portion of the Settlement Website as follows:




15. Venmo was the most popular choice among Settlement Class Members, with approximately 28.51% of claimants selecting the payment method, followed by approximately 20.2% selecting Zelle, approximately 20.01% selecting the pre-paid Mastercard, approximately 19.19% selecting PayPal, approximately 8.55% selecting checks, and approximately 3.54% selecting ACH.

16. A pre-paid digital payment card option provides an important alternative to other payment options because, among other things, it serves the interests of the unbanked and underbanked members of the Settlement Class. According to a 2023 report by the Federal Reserve, 4.2 percent of U.S. households, representing about 5.6 million households, were "unbanked," meaning no one in the household had a checking or savings account at a bank or credit union.[3]

17. A household is considered "underbanked" if it had a checking or savings account at

---

3 Federal Deposit Insurance Corporation, 2023 FDIC National Survey of Unbanked and Underbanked Households, https://www.fdic.gov/analysis/household-survey/index.html (last visited November 6, 2025).

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

a bank or credit union but in the past 12 months had used at least one of eight nonbank financial services. In 2023, 14.2 percent of adults, representing about 19 million households, were "underbanked," in that they have a bank account but also, and more often or more easily, use an alternative financial service product.

18.     The unbanked and underbanked rates are higher among lower-income households; less-educated households; Black, Hispanic, and American Indian or Alaska Native households; working-age households with a disability; households with income that varied a lot from month to month; and single-parent households.

19.     The pre-paid digital payment card product is also the easiest to request by Settlement Class Members. To request a pre-paid digital payment card, Settlement Class Members must provide an email address. No bank information or other digital payment account information is required. Moreover, the card option makes funds available to Settlement Class Members more promptly than paper checks (which must be sent via U.S. mail).  Even though this means of funds delivery is easiest for Settlement Class Members, Angeion's robust fraud-detection procedures are applicable to all claims, regardless of the choice of payment mechanism selected by the claimant.

20.     The pre-paid digital payment card (virtual Prepaid Mastercard) product offered to Settlement Class Members in this case has many of the features of pre-paid digital payment cards offered outside the class action context, but also includes certain additional consumer-friendly features designed specifically for class action usage, including:

   a.     No activation or load fees;

   b.     The ability of the cardholder to transfer balances at any time and at no cost to the cardholder;

   c.     No inactivity fees to the cardholder until after 12 consecutive months of inactivity;

   d.     Proactive email reminder to cardholders at 11 months to encourage use; and,

   a.     Refund of inactivity fees based on Blackhawk's periodic review if the

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

cardholder re-engages through a use of value on the card following service fee assessment.

21.     According to the 2025 Annual Report on Digital Payments in Class Actions and Mass Torts, pre-paid digital payment card products like the one offered to Settlement Class Members were the most popular digital payment methods chosen by class members across class actions and mass torts in 2024.[4]

**C.      Inactivity and Other Fees Were Disclosed to Class Members, Once Loaded the Funds Belong to Class Members and Angeion Receives No Portion of Inactivity Fees or Unused Card Balances**

22.     Angeion directs the distribution of funds from the Settlement Account to Settlement Class Members via digital payment options through enterprise-wide agreements with two vendors: Digital Disbursements[5] and Blackhawk.

23.     Digital Disbursements is responsible for establishing and implementing the payment election feature on the Settlement Website that allows Settlement Class Members to select their preferred payment method from the menu of digital payment options. Digital Disbursements facilitates digital payments to Settlement Class Members through Venmo and Direct Deposit.

24.     Blackhawk is the digital payment solutions vendor engaged to facilitate and manage pre-paid digital payment cards issued by the bank to Class Members.

25.     Angeion does not receive any portion of unused digital payment card balances from the digital payment card issuer or any other source.

26.     It is my understanding that, under the current distribution plan approved by the Court, once funds are withdrawn from the class Settlement Fund and the cardholder is successfully notified that a pre-paid digital payment card in the name of that cardholder is available for use, the funds belong to the cardholder. Upon receipt, Settlement Class Members can use their digital payment card to complete purchases wherever virtual Mastercard is accepted. Settlement Class Members also can choose to transfer the existing balance loaded to their digital payment card to

---

[4]      https://www.westernalliancebancorporation.com/sites/default/files/2025-04/2025-digital-payments-research-report.pdf, at 18.

[5]      https://www.digitaldisbursements.com/.

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

another account at any time (via Zelle, ACH, Venmo, or PayPal) for no fee.

27.     It is my further understanding that Settlement Class Members retain the full value of their balances at all times, apart from the potential imposition of certain fully disclosed fees and the state-law-required escheatment process described below.

28.     The Settlement Website disclosed to Class Members that after a 12-month period of inactivity on a digital payment card, the digital payment card will incur inactivity service fees from the card issuer on any remaining balance until activity resumes.

29.     The Settlement Website described information relating to the E-Mastercard, including the following information concerning inactivity and other fees:



30.     Settlement Class Members who received a digital payment card can avoid inactivity service fees simply by using the value of the card at least once every twelve months or by transferring all or part of the value of the card to another account via Zelle, ACH, Venmo, or PayPal.

31.     A "Card Replacement Fee" only would be incurred by Settlement Class Members

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

who choose to request a physical card as opposed to using the virtual card provided by email. A "Foreign Transaction Fee" only would be incurred by Settlement Class Members who choose to use the card for foreign transactions.

32.     It is also my understanding that any inactivity service fees charged against the balance on a dormant pre-paid digital payment card will be restored and added back to the value of the card if Blackhawk determines, through a periodic review of account activity, that the Settlement Class Member re-engages through a use of value on the card following service fee assessment. This will be done automatically by Blackhawk. This feature, in addition to those noted above, makes the pre-paid digital card offered as a payment option to Settlement Class Members more consumer-friendly than other types of payment or gift cards available on the market.

33.     In any case, no portion of any inactivity or other service fee applied to any Settlement Class Member's card is paid to Angeion.

34.      Blackhawk is responsible for managing any unspent balances at the conclusion of any applicable dormancy period under state law. It is my understanding that any such balances escheat to the applicable state to the extent required under the state's unclaimed property laws, in the name of the cardholder (and thus subject to recovery from the state by that cardholder) and are not retained by Blackhawk.

35.     In other words, it is my understanding that unused funds remaining on any digital payment card will always remain the property of the cardholder and will at no time revert to the Settlement Fund, to Blackhawk, or to Angeion. The Settlement Class Members thus have access to the full value of their pre-paid digital payment card subject to the disclosed inactivity and other fees.

36.     Moreover, because the funds on the pre-paid digital payment cards remain the property of the receiving Settlement Class Member, there is no unused balance to revert to a *cy pres* recipient.

37.     The timing and/or extent to which Settlement Class Members use their funds received on a prepaid card or by any other payment method has no impact on Angeion's revenue

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

or the compensation from the Settlement Fund in this Settlement.

**D.    Angeion Accurately Disclosed All Charges to the Settlement Fund**

38.    Following a competitive bidding process among numerous potential administrators, Class Counsel proposed Angeion as the Settlement Administrator. ECF No. 241 at 36.

39.    In the Motion for Preliminary Approval (ECF No. 241), Class Counsel stated that they "selected Angeion as the best suited to administer the settlement here, including because its proposal preserved as much of the settlement fund as practicable for class members, while also engaging robust and comprehensive fraud-prevention techniques that will assist in distributing as much of the fund as possible to class members here." *Id.*

40.    As part of the bid process, Angeion provided various Schedules of Fees and Charges reflecting its estimates of the approximate cost to the Settlement Fund to provide notice and administration services for the Settlement based on certain core assumptions.

41.    In my Notice Plan Declaration, I addressed the anticipated charges for the cost of administration, stating: "the cost to provide notice and administration services as described herein will be approximately $469,000." ECF No. 241-2 at 14.

42.    As further stated therein, the pricing details comprising this estimate are competitively sensitive. *Id.* I am attaching these details to this Declaration as Exhibit 1. Because it contains extremely sensitive proprietary, financial, and business information, the disclosure of which would create a substantial risk of serious harm that could not be avoided by less restrictive means, Angeion is designating the documents and information as "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" under the terms of the Stipulated Protective Order in this matter, ECF No. 70, and providing them for the Court's review *in camera*.

43.    In the Motion for Preliminary Approval (ECF No. 241), Class Counsel stated that the anticipated charges for issuing notice and administering the settlement were "reasonable in relation to the value of the settlement . . . ." ECF No. 241 at 36.

**E.    Blackhawk Background and Angeion's Preexisting Contract with Blackhawk**

44.    Blackhawk is a California-based distributor of third-party branded payment cards,

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

gift cards, and other payment solutions. Its website reports that Blackhawk processes annual transactions in excess of $28 billion.[6]

45.    During the November 4 Post-Distribution Status Conference, the Court requested that Angeion address why Angeion selected Blackhawk over other distributors of third-party branded e-payment cards. Angeion has found Blackhawk to be a proven, established, and reliable vendor for large, complex class distributions. Using established companies with strong operational abilities like Blackhawk is important to maximize the privacy and safeguarding of financial information of Class Members and for the smooth distribution of settlement funds.

46.    Angeion continuously surveys the market to identify alternative providers for its vendor needs, including digital payment cards. This includes assessment of potential vendors' reliability in, among other things, meeting settlement deadlines, making successful distributions to class members, safeguarding class member data, and providing competitive pricing. Angeion has not identified another provider that offers a similarly reliable and consumer-friendly product on terms that are as competitive as those offered by Blackhawk. For these reasons, we have recommended and continue to recommend using Blackhawk in settlements we administer.

47.    Prior to Angeion's engagement as Settlement Administrator for this case, Angeion and Blackhawk negotiated an arm's length master service contract intended to set out the general terms for future engagements in which Angeion subcontracts with Blackhawk to provide a pre-paid digital payment card option. Blackhawk and Angeion have since executed amendments to the master services agreement (the agreement, as amended, the "Statement of Work").

48.    Among other terms, the Statement of Work includes a representation by Blackhawk warranting that it is responsible for compliance with all applicable statutes, rules, laws, and regulations governing: (i) the assessment of fees associated with such pre-paid digital payment cards; and (ii) any unclaimed property laws applicable to balances remaining on such cards.

49.    Without Angeion's enterprise-level arrangements with Blackhawk and other vendors, Angeion would incur higher costs and enjoy less flexibility to offer competitive pricing

CASE NO. 3:21-CV-01418-EMC-KAW

for its services and tailored solutions meeting the unique needs of a given settlement (including this Settlement), to the detriment of settlement class members. Angeion would also not be able to negotiate for more pro-consumer pre-paid card features. These types of master service contracts are common in the financial-services industry.

50.    Because Angeion and Blackhawk deal with each other at arm's length, I do not have personal knowledge of the details of Blackhawk's underlying business model. However, Angeion's ongoing business relationship with Blackhawk and the volume of repeat business between them has allowed Angeion to negotiate favorable terms to provide efficient and cost-effective distribution services. In particular, pursuant to its preexisting Statement of Work with Angeion, Blackhawk makes its sophisticated digital payment card option available to Settlement Class Members at no charge to the Settlement Fund, and without charging for certain other costs and services Blackhawk would potentially otherwise charge.

51.    Under certain circumstances, Angeion may generate additional revenue in connection with its administration of class settlements from other sources, including via pre-existing enterprise level agreements with vendors like Blackhawk.  These additional revenues are not charged to the class settlement fund and do not reduce the amount of funds available to be paid to class members.

52.    Pursuant to the Statement of Work, Angeion generates revenue in connection with the settlements for which Blackhawk acts as Angeion's subcontractor.  That agreement applies to the Settlement in this case. The revenue generated by Angeion does not result in any increased cost to the Settlement Account and does not reduce the funds available to be distributed to the Settlement Class Members.

53.    The revenue generated by Angeion from Blackhawk does not depend on the extent to which class members in this case use or do not use their cards and does not reduce the funds available to be distributed to Settlement Class Members in this case.

54.    The applicable agreement between Angeion and Blackhawk for this Settlement is one in a series of successive agreements that have been amended over time.

11

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

55.    I discuss below for the Court's information relevant provisions from Angeion's agreements with Blackhawk.  The settlement administration industry is very competitive, and the agreements between Angeion and Blackhawk being submitted for *in camera* review constitute competitively sensitive business information, the public disclosure of which would harm Angeion's ability to compete in the marketplace and thus they have been marked "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY."

56.

A.

57.

58.

59.

60.

61.

CASE NO. 3:21-CV-01418-EMC-KAW

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

**B.**

62.

63.

64.

65.

66.

67.



13

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

68. █████████████████████████████████████████
██████████████

69. █████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████

C.   ████████████████████████████████

70. █████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████

71. █████████████████████████████████████████
█████████████

72. █████████████████████████████████████████
██████████████████████████████████████████

73. █████████████████████████████████████████
███████████████████████████████████████████████



CASE NO. 3:21-CV-01418-EMC-KAW

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY



CASE NO. 3:21-CV-01418-EMC-KAW

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

78. ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████

79. ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

80. ██████████████████████████████████████████
████████████████████████████████████████████████████

**F.**    **Angeion's Bids for This Settlement**

81.    Angeion's initial bid to provide settlement administration services for this Settlement was submitted in August 2024.  In response to questions from the Court, Angeion supplemented its bid to include additional notice related activities (September 2024 estimate). This subsequent estimate reflects the scope of work undertaken by Angeion for this administration.

82.    One of the assumptions underlying Angeion's bid and pricing model was that its estimates and pricing were premised upon proceeding with the current specified menu of payment options.

83.    One of the reasons for this is that Angeion is able to offer many of its highly labor and cost-intensive administration services in this Settlement (such as the comprehensive notice program that the Court approved and the management of all claims) at a more competitive or discounted price based on Angeion's expectation that the Settlement would be approved and that some percentage of class members would elect the pre-paid MasterCard, at which point Angeion's business relationship with Blackhawk would allow it to generate additional revenue from Blackhawk at no additional cost to the Settlement Account.

84. ██████████████████████████████████████████
██████████████████████████████████

HIGHLY CONFIDENTIAL
*IN CAMERA* REVIEW
ATTORNEYS' EYES ONLY

85.     Anticipated revenue to Angeion from Blackhawk thus enabled Angeion to offer and deliver administrative services for the charges Angeion has described in its bid and other communications regarding charges to the Settlement Fund.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Steven Weisbrot, Esq.

Dated: November 12, 2025

CASE NO. 3:21-CV-01418-EMC-KAW